UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOVANA N. MOUKENGESCHAIE, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ELTMAN, ELTMAN & COOPER, P.C., LVNV FUNDING LLC, RESURGENT CAPITAL SERVICES L.P., SHERMAN ORIGINATOR LLC, ALEGIS GROUP LLC, SHERMAN FINANCIAL GROUP LLC, SHERMAN CAPITAL MARKETS LLC, SHERMAN ACQUISITION LIMITED PARTNERSHIP, SHERMAN ACQUISITION LLC, SHERMAN ACQUISITION II LIMITED PARTNERSHIP, SHERMAN ACQUISITION II GENERAL PARTNER LLC, SHERMAN CAPITAL, L.L.C., SHERMAN ORIGINATOR III LLC, SHERMAN CAPITAL GROUP INC., HUGER STREET LLC, MOULTRIE STREET LLC, WOOLFE STREET LLC, FULTON STREET LLC, AVONDALE STREET LLC, JASPER STREET LLC, CONCORD STREET LLC, HAGOOD STREET LLC, CHARLOTTE STREET LLC, ARCHDALE STREET LLC, JACOBS ALLEY LLC, PEACHTREE STREET LLC, GREENHILL STREET LLC, CHALMERS STREET LLC, PRINCESS STREET LLC, UNKNOWN SHERMAN ENTITIES 1-50, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

No.   14-CV-7539

**CLASS ACTION
JURY DEMANDED**

### *Introduction*

1.     Plaintiff brings this class action on behalf of herself  and consumers

subjected to Defendants' violations of the Fair Debt Collection Practices Act

(FDCPA), 15 U.S.C. § 1692, *et seq.* The FDCPA prohibits debt collectors from

engaging in abusive, deceptive, unfair, and illegal collection practices. In brief, Plaintiff received a letter, a copy of which is attached as **Exhibit A** ("the Collection Letter"), that threatened to seize real estate, cars, and other personal property, even though Defendants were not legally permitted to seize those things and, in fact, never intended to seize those things. The letter falsely implied that any real estate, cars, and personal property owned by Plaintiff were not exempt from seizure by Defendants. And the letter falsely represented that Plaintiff's alleged account would be referred to what Defendants called their "Asset Investigation Department" in an effort to locate Plaintiff's property – when, in fact, no such "Asset Investigation Department" existed, and Defendants had no intention of referring Plaintiff's alleged account to any such department.

2.      The Collection Letter was sent to Plaintiff by Defendant Eltman, Eltman & Cooper, P.C. ("EEC").

3.      In the Collection Letter, EEC purported to be collecting a debt on behalf of Defendant LVNV Funding, LLC ("LVNV"). The sole purpose of LVNV is to purchase defaulted consumer debts and then to collect on those debts, often by suing on them. LVNV – a debt collector that is covered by the FDCPA – is vicariously liable for EEC's FDCPA violations.

4.      Defendant Resurgent Capital Services, L.P. ("Resurgent") is a debt collector that, among other things, services all of the consumer debts owned by LVNV. Resurgent has the same grandparent corporation as LVNV, and is ultimately controlled by the same individuals that control LVNV. Among other

things, it retains law firms such as EEC on behalf of LVNV. On information and belief, it also closely controls the activities of law firms like EEC, including by reviewing the collection letters mailed to consumers by EEC. It is both vicariously liable for the actions of its agent EEC and primarily liable for its own participation in sending the Collection Letter.

5.     Defendants Sherman Originator LLC ("SO"), Alegis Group LLC ("Alegis"), Sherman Financial Group LLC ("SFG"), Sherman Capital Markets LLC ("SCM"), Sherman Acquisition Limited Partnership ("SALP"), Sherman Acquisition LLC ("SA"), Sherman Acquisition II Limited Partnership. ("SAIILP"), Sherman Acquisition II General Partner LLC ("SAIIGP"), Sherman Capital, L.L.C. ("SC"), Sherman Originator III LLC ("SOIII"), and Sherman Capital Group Inc. ("SCG"), along with LVNV and Resurgent and other Unknown Sherman Entities, together comprise a single, integrated debt-collection enterprise ("the Sherman Companies"). The Sherman Companies' operations are so tightly interwoven and so closely controlled by their common owners that, in effect, they operate as mere departments of a single economic enterprise. While this single enterprise does own at least one division that originates new credit card accounts (Credit One Bank, N.A., which is not a party to this case), the vast majority of the Sherman Companies' business involves purchasing defaulted consumer debts for the purposes of collecting those debts. The Sherman Companies, operating in lock-step under the control of a few individuals, is the largest purchaser and collector of defaulted consumer credit-card debts in the world. Because, among other reasons, their

operations are so interrelated and under such close central control, each and every one of the Sherman Companies is a debt collector that is covered by the FDCPA. Moreover, each one is vicariously liable for the FDCPA violations of their agents EEC and Resurgent.

6.      In an effort to avoid FDCPA liability – both by obscuring certain individuals' roles in the Sherman Companies, and by facilitating the transfer of assets and liabilities between the Sherman Companies to artificially deplete their net worth[1] – the Sherman Companies and the individuals who direct them have created a number of shell entities that are named after streets in Charleston, South Carolina. These shell entities include Defendants Huger Street LLC, Moultrie Street LLC, Woolfe Street LLC, Fulton Street LLC, Avondale Street LLC, Jasper Street LLC, Concord Street LLC, Hagood Street LLC, Charlotte Street LLC, Archdale Street LLC, Jacobs Alley LLC, Peachtree Street LLC, Greenhill Street LLC, Chalmers Street LLC, and Princess Street LLC (collectively referred to as the "Street Name Entities") They are debt collectors covered by the FDCPA and are vicariously liable for the FDCPA violations of their agents EEC and Resurgent.

7.      Defendant EEC mailed letters identical to the Collection to hundreds, if not thousands, of New York consumers who allegedly owed debts to LVNV.

### Jurisdiction and Venue

---

[1] In class actions brought under the FDCPA, statutory damages are capped at either one percent of a defendant's net worth or $500,000, whichever is less. *See* 15 U.S.C. § 1692k(a)(2)(B).

8.     This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

9.     Venue is proper in this district under 28 U.S.C. § 1391(b), because the plaintiff resides in this district, and the acts and transactions that give rise to this action occurred, in substantial part, in this district.

*Parties*

10.     Plaintiff Jovana N. Moukengeschaie, is a natural person residing in the County of Queens in the State of New York and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

11.     Defendant EEC is a professional corporation organized and existing under the laws of the State of New York, with a principal place of business at 140 Broadway, 26th Floor, New York, New York 10005. EEC is regularly engaged in the collection of debts allegedly owed by consumers through correspondence and telephone calls, and thus is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

12.     EEC is not related to any of the other Defendants through common ownership and control. The Sherman Companies and the Street Name Entities, however, *are* related to each other through common ownership and control. In fact, as described below, the operations of the Sherman Companies and the Street Name Entities are so tightly interwoven and so dominated by centralized control that they constitute a single, unified debt-collection enterprise.

13.     Beginning at the bottom of the Sherman Companies' organizational structure,[2] Defendant LVNV is a limited liability company organized and existing under the laws of the State of Delaware. Its principal place of business is at 625 Pilot Road, Suite 3, Las Vegas, Nevada 89119.

14.     LVNV's business consists solely of purchasing, owning, and facilitating collection of consumer debts. Each consumer debt LVNV purchases, owns, and collects upon is in default at the time LVNV purchases the debt; thus, LVNV is not a creditor as that term is defined by 15 U.S.C. § 1692a(4).

15.     LVNV facilitates the collection of the defaulted consumer debts it owns in several ways. For instance, LVNV was the plaintiff in nearly 400 debt-collection lawsuits in 2014 in the New York City Civil Court, Kings County. LVNV also filed nearly 500 debt-collection lawsuits in 2014 in the New York City Civil Court, Queens County.

16.     LVNV has also granted a power of attorney to Resurgent, enabling Resurgent to collect LVNV-owned debts or to hire other debt collectors on LVNV's behalf.

---

[2] The structure of the Sherman Companies is intentionally labyrinthine. Two exhibits attached to this Complaint may be helpful in understanding their structure. The first, attached as **Exhibit B**, is a portion of a chart prepared by the Sherman Companies that illustrates part of their structure. This chart was filed as an exhibit in the unrelated case of *Cox v. Sherman Capital LLC*, Southern District of Indiana, Case No. 1:12-cv-01654(TWP)(MJD), and was recently unsealed. The second, attached as **Exhibit C**, is a letter containing discovery responses that was also attached as an exhibit in the *Cox* case; it, too, was recently unsealed.

17.    Because of its direct and indirect attempts to collect debts owed or due to another, as described in paragraphs 15 and 16, LVNV is a "debt collector" as that term is defined in 15 U.S.C. § 1692a(6).

18.    LVNV has no paid employees. Rather, all activities done in LVNV's name are performed by Resurgent or by other of the Sherman Companies. In the course of conducting LVNV's business, corporate formalities are rarely, if ever, observed. Its purpose within that enterprise is to serve as a "holding tank" for defaulted consumer debts – including debts allegedly owed by New York State consumers, including Plaintiff and members of the class. Other of the Sherman Companies purchase the defaulted consumer debts, then transfer the defaulted consumer debts to LVNV, which holds title to the defaulted consumer debts while other of the Sherman Companies collect on the debts. Strategic decisions as to which portfolios of defaulted consumer debts are purchased, and how those defaulted debts are to be collected, are made by still other of the Sherman Companies. In sum, LVNV is a mere department of the Sherman Companies' single debt-collection enterprise.

19.    Because LVNV is a mere department of a single economic enterprise that uses instrumentalities of interstate commerce for principle purpose of collection of debt, and that regularly collects, directly and indirectly, debts owed or due to another, LVNV is a debt collector as that term is defined in 15 U.S.C. § 1692a(6).

20.     Moving up one level in the Sherman Companies' organizational structure, LVNV is a wholly-owned subsidiary of Defendant SO.

21.     SO is a limited liability company organized and existing under the laws of the State of Delaware. Its business address is c/o Sherman Capital Markets LLC, 200 Meeting Street, Suite 206, Charleston, South Carolina  29401.

22.     The purpose of SO – other than to own LVNV – is to purchase portfolios of defaulted consumer debt. SO then indirectly facilitates collection of those debts by selling them to LVNV, with the knowledge that LVNV will employ the direct and indirect methods of debt collection described in paragraphs 6 and 7. For these reasons, SO is a debt collector as that term is defined in 15 U.S.C. § 1692a(6).

23.     On information and belief, among the defaulted consumer debts purchased and collected by SO are debts allegedly owed by New York State consumers, including members of the class.

24.     SO has no employees. Strategic decisions as to which portfolios of defaulted consumer debts are purchased are made by other of the Sherman Companies. In other words, SO is another mere department of the single debt-collection enterprise described in paragraph 18.

25.     Because SO is a mere department of a single economic enterprise that uses instrumentalities of interstate commerce for principle purpose of collection of debt, and that regularly collects, directly and indirectly, debts owed or due to another, SO is a debt collector as that term is defined in 15 U.S.C. § 1692a(6).

26.     Moving up one level further in the Sherman Companies' organizational structure, SO is a wholly-owned subsidiary of Defendant SFG.

27.     SFG is a limited liability company organized and existing under the laws of the State of Delaware. Its corporate headquarters is at 335 Madison Avenue, Floor 19, New York, NY 10017.

28.     The purpose of SFG is to own and operate the vast debt-collection enterprise described in this Complaint, particularly in paragraph 18. It also owns and operates entities that engage in other debt collection activities and in originating sub-prime credit card accounts, none of which are relevant to this case.

29.     The finances of many of the other Sherman Companies – including, but not limited to, SO, SALP, SA, SAIILP, SAIIGP, SOIII, Alegis, Resurgent and LVNV – are consolidated into the finances of SFG, such that the audited financial statements prepared for SFG include the financial results of these Sherman Companies.

30.     The finances of the Sherman Companies noted in paragraph 29 are consolidated into the finances of SFG because the individuals who ultimately control SFG believe that SFG has the sole power to direct the activities of those Sherman Companies, and because the individuals believe that SFG has the obligation to absorb those Sherman Companies' losses as well as the right to benefit from those Sherman Companies' profits.

31.     On information and belief, SFG has no paid employees. Rather, it and its subsidiaries are managed and operated by the employees of Defendant SCM

under a "management services agreement." This agreement calls for SCM to provide essentially all management services for SFG.

32.     SCM is a limited liability company organized and existing under the laws of the State of Delaware. Its business address is 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.

33.     SCM has a total of approximately 30 employees, who manage, supervise, and operate the vast debt-collection enterprise described in paragraph 18 as well as SFG's other business operations.

34.     Among its other activities, SCM originates securities backed by the defaulted consumer debts owned by LVNV. The income generated by the sale of these securities is a major source of funding for the Sherman Companies' vast debt-collection enterprise.

35.     Because they indirectly collect defaulted consumer debts owed or due another – including debts owed by New York State consumers, Plaintiff, and members of the class –  SFG and SCM are both debt collectors as that term is defined in 15 U.S.C. § 1692a(6).

36.     Moreover, SFG and SCM are mere departments of a single economic enterprise that uses instrumentalities of interstate commerce for principle purpose of collection of debt, and that regularly collects, directly and indirectly, debts owed or due to another. SFG and SCM are therefore debt collectors as that term is defined in 15 U.S.C. § 1692a(6).

37.     Moving up another level of the Sherman Companies' organizational structure, SFG is a wholly-owned subsidiary of Defendant SC. Put another way, SC is the sole member of SFG, and all profits and losses of SFG are allocated to SC.

38.     SC is a limited liability company organized and existing under the laws of the state of Delaware. Its business address is 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.

39.     In the past, SC has listed its address as "c/o Sherman Capital Markets LLC."

40.     On information and belief, SC has no employees. SC's sole purpose is to own SFG, as part of a labyrinthine structure designed by the Sherman Companies and the individual Defendants to obscure the identities of the Sherman Companies' owners and operators and to avoid liability under the FDCPA.

41.     All of the taxable income or loss of SFG and the taxable income or loss of most or all of SFG's subsidiaries pass through SFG and other intermediate entities to SC, such that the taxable income or loss of SFG and most or all of its subsidiaries is reported on the tax returns prepared by SC.

42.     SC indirectly collects consumer debts – including debts allegedly owed by New York State consumers, including Plaintiff and members of the class – by owning and profiting from the vast debt-collection enterprise described in this complaint. It also facilitates the Sherman Companies' debt collection activities in New York and elsewhere by serving as a screen that deflects FDCPA liability and that hides the identities of the individuals – including the individual Defendants –

11

who manage and supervise those debt collection activities. It is therefore a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

43.     Moreover, because SC is a mere department of a single economic enterprise that uses instrumentalities of interstate commerce for principle purpose of collection of debt, and that regularly collects, directly and indirectly, debts owed or due to another, SC is a debt collector as that term is defined in 15 U.S.C. § 1692a(6).

44.     SCM is a wholly-owned subsidiary of Defendant SCG.

45.     SCG is a corporation organized and existing under the laws of the state of Delaware. Its principal place of business is unknown.

46.     On information and belief, SCG has no employees. SCG's sole purpose is to own SCM, as part of a labyrinthine structure designed by the Sherman Companies and the individual Defendants to obscure the identities of the Sherman Companies' owners and operators and to avoid liability under the FDCPA.

47.     SCG indirectly collects consumer debts – including debts allegedly owed by New York State consumers, including Plaintiff and members of the class – by owning the entity that operates the vast debt-collection enterprise described in this Complaint. It also facilitates the Sherman Companies' debt collection activities by serving as a screen that deflects FDCPA liability and that hides the identities of the individuals – including the individual Defendants – who manage and supervise those debt collection activities. It is therefore a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

12

48.     Moreover, because SCG is a mere department of a single economic enterprise that uses instrumentalities of interstate commerce for principle purpose of collection of debt, and that regularly collects, directly and indirectly, debts owed or due to another. SCG is therefore a debt collector as that term is defined in 15 U.S.C. § 1692a(6).

49.     SFG wholly owns several other subsidiaries in addition to SO. SFG's wholly-owned subsidiaries include Defendant SA, Defendant SOIII, and Defendant Alegis. SFG's other subsidiaries, which may or may not be wholly-owned, include SALP, SAIILP, and SAIIGP.

50.     SA, SOIII, and SAIIGP are all limited liability companies organized and existing under the laws of the State of Delaware. SALP and SAIILP are limited partnerships organized and existing under the laws of the State of Delaware. All serve essentially the same function as SO as described above: to purchase portfolios of defaulted consumer debt. These portfolios include debts allegedly owed by New York State consumers and, on information and belief, by members of the class. SA, SOIII, SAIIGP, SALP and SAIILP then indirectly facilitate collection of those debts by selling them to LVNV, with the knowledge that LVNV will employ the direct and indirect methods of debt collection described in paragraphs 15 and 16. For these reasons, SA, SOIII, SAIIGP, SALP and SAIILP are debt collectors as that term is defined in 15 U.S.C. § 1692a(6).

51.     On information and belief, SA, SOIII, SAIIGP, SALP and SAIILP have no employees. Strategic decisions as to which portfolios of defaulted consumer debts

are purchased are made by other of the Sherman Companies and by the individual Defendants. In other words, SA, SOIII, SAIIGP, SALP and SAIILP are mere departments of the single debt-collection enterprise described in paragraph 18.

52.     Because SA, SOIII, SAIIGP, SALP and SAIILP are mere departments of a single economic enterprise that uses instrumentalities of interstate commerce for principle purpose of collection of debt, and that regularly collects, directly and indirectly, debts owed or due to another, SA, SOIII, SAIIGP, SALP and SAIILP are debt collectors as that term is defined in 15 U.S.C. § 1692a(6).

53.     As noted above, Alegis is a wholly-owned subsidiary of SFG. Alegis is a limited liability companies organized and existing under the laws of the State of Delaware, with a principal business address of 15 S. Main Street, Suite 600, Greenville South Carolina 29601.

54.     Alegis has no employees. Its sole business purpose is to hold a one-percent general-partnership ownership interest in Defendant Resurgent.

55.     SFG holds a 99-percent limited-partnership interest in Resurgent.

56.     In other words, the limited partnership (Resurgent) and its general partner (Alegis) are both subsidiaries of the limited partner (SFG). The purpose of this arrangement is to shield SFG from FDCPA liability, particularly in class actions.

57.     Resurgent is organized and exists under the laws of the State of Delaware, with a principal business address of 15 S. Main Street, Suite 600, Greenville, South Carolina 29601.

58.     Among other things, Resurgent acts as the "master servicer" of all defaulted consumer debts owned by LVNV. This includes debts allegedly owed by New York State consumers, including Plaintiff and members of the class.

59.     It is impossible to distinguish Resurgent as a discrete business apart from the rest of the Sherman Companies. The following facts show that Resurgent is a mere department of the single economic enterprise that is the Sherman Companies:

- The majority of Resurgent's revenue is paid by SFG or SFG's subsidiaries.

- There are significant cash transaction in both directions between Resurgent and SFG, and between Resurgent and SFG's other subsidiaries. These intercompany balances do not bear interest and most are settled within 30 days.

- Resurgent regularly receives cash from SFG to fund operations conducted on behalf of SFG's other subsidiaries.

- Resurgent regularly provides various management services – in addition to debt collection services – to other of SFG's subsidiaries.

60.     Resurgent uses instrumentalities of interstate commerce and the mails to collect the debts owed or due to LVNV. In addition, it indirectly collects debt owed or due to LVNV by retaining law firms like EEC and other third-party debt collectors to collect LVNV's accounts. Resurgent is therefore a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

61.     Moreover, Resurgent is a mere department of a single economic enterprise that uses instrumentalities of interstate commerce for the principle purpose of collecting debts, and that regularly collects, directly and indirectly, debts

owed or due to another. For this reason, Resurgent is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

62.    Alegis indirectly collects consumer debts – including debts allegedly owed by New York State consumers, including Plaintiff and members of the class – by owning Resurgent, which acts as the hands and feet of the vast debt-collection enterprise described in this Complaint. It also facilitates the Sherman Companies' debt collection activities by serving as a screen that deflects FDCPA liability and that hides the identities of the individuals who manage and supervise those debt collection activities. Alegis is therefore a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

63.    Moreover, Alegis is a mere department of a single economic enterprise that uses instrumentalities of interstate commerce for principle purpose of collection of debt, and that regularly collects, directly and indirectly, debts owed or due to another. Alegis is therefore a debt collector as that term is defined in 15 U.S.C. § 1692a(6).

64.    Defendants Huger Street LLC, Moultrie Street LLC, Woolfe Street LLC, Fulton Street LLC, Avondale Street LLC, Jasper Street LLC, Concord Street LLC, Hagood Street LLC, Charlotte Street LLC, Archdale Street LLC, Jacobs Alley LLC, Peachtree Street LLC, Greenhill Street LLC, Chalmers Street LLC, and Princess Street LLC (collectively referred to as the "Street Name Entities") all possess fractional ownership interests in SC, which sits atop SFG at the top of the Sherman Companies' organizational structure.

65.     All of the Street Name Entities except Avondale Street LLC are organized and exist under the laws of the State of Delaware. It is not known in which state Avondale Street LLC is organized. The principal business addresses for the Street Name Entities are unknown.

66.     The Street Name Entities were formed in late 2012 by certain of the Sherman Companies and/or certain individuals who own and control the Sherman Companies. The Street Name Entities were formed around the time that non-party Meeting Street Partners II, Inc. – the previous ownership vehicle for SC and SCM – was dissolved.

67.     On information and belief, the Street Name Entities have no employees, and their sole purpose is to own SC and, on information and belief, to own SCG. The Street Name Entities exist to obscure the identities of the individuals who own them and who ultimately control the Sherman Companies. They also exist to facilitate transfer of assets and liabilities between the Sherman Companies and themselves, to artificially deflate the Sherman Companies' net worth to avoid liability in FDCPA class actions.

68.     The Street Name Entities indirectly collect consumer debts – including debts allegedly owed by New York State consumers, including Plaintiff and members of the class – by owning and profiting from the vast debt-collection enterprise described in this Complaint. It also facilitates the Sherman Companies' debt collection activities by serving as a screen that deflects FDCPA liability and that hides the identities of the individuals who manage and supervise those debt

collection activities. They are therefore debt collectors as that term is defined by 15

U.S.C. § 1692a(6).

69.     Moreover, because the Street Name Entities are mere departments of a

single economic enterprise that uses instrumentalities of interstate commerce for

principle purpose of collection of debt, and that regularly collects, directly and

indirectly, debts owed or due to another, they are all debt collectors as that term is

defined in 15 U.S.C. § 1692a(6).

### *Overlapping Staff and Operations of the Sherman Companies*

70.     The fact that the Sherman Companies and Street Name Entities

together constitute a single, unified debt collection enterprise is further

demonstrated by the fact that they are all ultimately owned and closely controlled

by the same individuals.

71.     On information and belief, as of the date of this Complaint, no publicly-

traded company has any interest, direct or indirect, in any of the Street Name

Entities nor SCG, which sit at the pinnacle of the single debt-collection enterprise

described in this Complaint.

72.     Non-party Meeting Street Partners II, Inc. – the previous ownership

vehicle for SC and SCM – was ultimately owned by five individuals who are not

personally named as defendants in this action: Benjamin W. Navarro, Leslie

Gutierrez, Scott E. Silver, Kevin P. Branigan, and Robert A. Roderick.

73.     On information and belief, Navarro, Silver, Branigan and Roderick, along with Kennett R. "Rusty" Kendall, possess all of the ownership interest in the Street Name Entities and/or SCG.

74.     Except for SCM and Resurgent, none of the Sherman Companies have any employees.

75.     Resurgent has between 500 and 1000 employees and is actively engaged in using instrumentalities  of interstate commerce and the mails to collect on defaulted consumer debts purchased and owned by the Sherman Companies. Resurgent also hires other third-party debt collectors to collect on the defaulted consumer debts owned by the Sherman Companies.

76.     SCM has approximately 30 employees. These employees, together with select senior employees of Resurgent, direct and manage the Sherman Companies' entire unified debt-collection enterprise. They do so in the form of amorphous, ad-hoc "working groups" formed to work on specific issues related to raising capital, purchase of portfolios of defaulted debt, collection strategies and tactics, and overall business development.

77.     Except for Resurgent's staff of on-the-ground debt collectors and Resurgent's other support staff (information technology, human resources, etc.) SCM's approximately 30 employees are the *only* people who direct, manage, or operate the Sherman Company's vast debt-collection enterprise. The working groups described in paragraph 76, which run the Sherman Companies' entire debt

collection business, utterly ignore each of the individual Sherman Companies' corporate formalities.

78.     The five individuals who own the Street Name Entities and/or SCG – Navarro, Silver, Branigan, Roderick, and Kendall – occupy a number of senior positions within the various Sherman Companies.

79.     Navarro, in addition to ultimately owning a substantial share of the Street Name Entities and/or SCG, is or has been: the acting President and CEO of SFG; a Manager at Alegis; a General Manager at LVNV; an employee of SCM, as well as the President and CEO of SCM; and President and CEO, as well as a past member, of SC. In addition, all of the Sherman companies are named after Navarro's childhood dog.

80.     Silver, in addition to ultimately owning a substantial share of the Street Name Entities and/or SCG, is or has been: Secretary of LVNV; acting General Counsel of SFG; an employee of SCM; a director and the Secretary of SCM; the Secretary and General Counsel, as well as a vice president, of SC; the general counsel for all of the Sherman Companies except Resurgent; and a supervisor of legal affairs at Resurgent.

81.     Branigan, in addition to ultimately owning a substantial share of the Street Name Entities and/or SCG,  is or has been: the President of LVNV; an employee, a director, and the Vice President of SCM; a vice president of SFG; the president and CEO of SOIII; the President and CEO of SO; the President and CEO

of SA; a Vice President of SC. He has signed legally binding contracts on behalf of SO.

82.     Roderick, in addition to ultimately owning a substantial share of the Street Name Entities and/or SCG, is or has been: an individual owner of SC; the CEO and a manager of Alegis; an employee of SCM; and a director SCM.

83.     In addition to the positions listed above, Navarro, Silver, Branigan, and Roderick have also served as directors, managers, and offices of various other subsidiaries of SFG in varying capacities.

84.     Kendall, in addition to ultimately owning a substantial share of the Street Name Entities and/or SCG, is or has been: a director of SCM; the Chief Financial Officer of SCM; the CFO and Treasurer and a Vice President of SO; the CFO and Treasurer and a Vice President of SA; the CFO and Treasurer and a Vice President of SOIII; the acting CFO of SFG; and the CFO of LVNV. Kendall manages the financial reporting for all of the Sherman Companies.

85.     Navarro, Silver, Branigan, Roderick, and Kendall all regularly supervise and participate in the "working groups" that direct the Sherman Companies' single debt-collection enterprise described in paragraphs 76 and 77.

86.     In addition to the 15 Street Name Entities, 12 individuals and one trust own fractional interests in SC. Those 12 individuals are: Roderick; Robert Banasik; Scott Kester; Daniel Picciano III; Amanda Smith; James Wagner; Philip T. Thurmond III; Michael Keaton; Gregory Hammond; Jon Mazzoli; Terry O'Connell;

and Dennis Grady. The trust that owns a fractional interest in SC is the "R Roderick Trust."

87.     Kester, in addition to possessing a fractional interest in SC, is the Director of Finance for SFG and Treasurer and an Executive Vice President of Resurgent. He is also the Secretary and a Vice President of SO; the Secretary and a Vice President of SA; and the Secretary and a Vice President of SOIII. On information and belief, he is a director and employee of SCM.

88.     Picciano, in addition to possessing a fractional interest in SC, is a division president at Resurgent.

89.     Smith, in addition to possessing a fractional interest in SC, holds a senior legal position at Resurgent, and has also presented on compliance topics at meetings of the National Association of Retail Collection Attorneys ("NARCA").

90.     Thurmond, in addition to possessing a fractional interest in SC, is a division president of Resurgent.

91.     Keaton, in addition to possessing a fractional interest in SC, is an Executive Vice President of Resurgent.

92.     Hammond, in addition to possessing a fractional interest in SC, identifies himself as a Director of SFG.

93.     Mazzoli, in addition to possessing a fractional interest in SC, is a director and employee of SCM. He is a Vice President of SO, a Vice President of SA, and a Vice President of SOIII. He has signed legally binding contracts on behalf of SA and SOIII.

94.     On information and belief, Basanik, Wagner, O'Connell, and Grady also hold senior positions within the Sherman Companies' debt-collection enterprise.

95.     Apart from Navarro, Silver, Roderick, Branigan, and Kendall, and the 12 fractional owners of SC, a small number of other individuals hold multiple senior positions in the various entities that form the Sherman Companies' debt-collection enterprise.

96.     Bryan Faliero, who is a director and employee of SCM, is also the president of SFG. Faliero has also been described as the "Director of Acquisitions" for SFG.

97.     Todd Kuhl is a director and/or employee of SCM, as well as a managing director of SFG. He has been a speaker at conferences organized by a national trade association for the debt-buying industry.

98.     Michael Bahner has identified himself both as Managing Counsel for Resurgent and Managing Counsel for SFG.

99.     Laura Schaible has identified herself as a director of SFG, and also signed legally binding documents on behalf of SO. On information and belief, she is a director and employee of SCM.

100.    Sue Shuler, in addition to being a director and an employee of SCM, is the CFO, Treasurer, and a Vice President of SC.

101.   Brett Hildebrand is a Vice President of SC. He has also identified himself as an "authorized representative" of SFG and SA and, on information and belief, is both a director and an employee of SCM.

102.   Tim Grant is the CEO of Resurgent. He has also identified himself as a "senior partner" and a "director" of SFG. On information and belief, he is a director and employee of SCM.

### Purpose of Sherman Companies' Structure Is to Fraudulently Avoid Liability in FDCPA Class Actions

103.   The hidden and labyrinthine structure of SFG and its subsidiaries is intentional. The main reason the individuals who control SFG created this labyrinthine structure is to avoid FDCPA liability, particularly in class actions.

104.   In cases brought under the FDCPA, a successful class may be awarded statutory damages in addition to actual damages.

105.   Under 15 U.S.C. § 1692k(a)(2)(B)(ii), the amount of statutory damages to which a successful class is entitled is limited to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . . ."

106.   When the Sherman Companies' single debt-collection enterprise communicates with consumers, it reveals only the name of LVNV and, sometimes, the name of Resurgent. It intentionally conceals the existence of the rest of the Sherman Companies that, among other things, purchased the consumer debts after default; funded those debt purchases; and directed the entire enterprise.

107.   When consumers file FDCPA actions against LVNV, it is the regular practice of LVNV – at the direction of the other Sherman Companies – to stonewall,

denying that it is a "debt collector" covered by the FDCPA and refusing to produce any discovery that would show that LVNV is part of the Sherman Companies' single debt-collection enterprise.

108.   Moreover, when consumers file FDCPA class actions against LVNV and/or Resurgent, it is the regular practice of LVNV and Resurgent – at the direction of the other Sherman Companies – to stonewall, refusing to produce any discovery into the net worth of LVNV and Resurgent. When forced to produce net worth discovery, LVNV and Resurgent – again, at the direction of the other Sherman Companies – produce spreadsheets purporting to show that the net worth of each company is substantially lower than $50 million. Copies of these spreadsheets, which were recently unsealed in the case of *Cox v. Sherman Capital LLC*, Southern District of Indiana, Case No. 1:12-cv-01654(TWP)(MJD), are attached as **Exhibit D** (LVNV) and **Exhibit E** (Resurgent).

109.   In the course of net-worth discovery, LVNV and Resurgent – at the direction of the other Sherman Companies – always conceal the Sherman Companies' vast, single debt-collection enterprise explained in this Complaint. LVNV and Resurgent – again, at the direction of the other Sherman Companies – also conceal that SFG and the Sherman Companies collectively have a much higher net worth than the alleged net worth of either LVNV or Resurgent.

110.   As late as June 2008, SFG's balance sheet showed total shareholders' equity of over $471 million. Because, in the wake of the 2008 financial crisis, the rate of defaults on consumer credit-card accounts spiked, it is likely that the

Sherman Companies' purchase of charged-off receivables – and, correspondingly, the Sherman Companies' collection revenues – have only increased since 2008.

111.   A balance sheet demonstrating that SFG's total shareholders' equity was $471 million in June 2008 is attached as **Exhibit F**. This balance sheet is part of a 10-Q form filed by non-party MGIC Investment Corporation ("MGIC"), and which is publically available on the Security and Exchange Commission's EDGAR database. (No publicly traded corporation has held any ownership interest in SFG since at least 2010.)

112.   It follows that, if SFG were to be found liable in an FDCPA class action, the class would almost certainly be entitled to the maximum statutory damages allowed by § 1692k(a)(2)(B)(ii). However, because LVNV and Resurgent conceal the other Sherman Companies' active participation both during the collections process and during any FDCPA litigation, the other Sherman Companies – including SFG, SCM, and SC – have thus far been able to avoid FDCPA liability.

113.   Because each of the Sherman Companies and each of the Street Name Entities is an integral part of a single debt-collection enterprise, each one is a debt collector as that term is defined in 15 U.S.C. § 1692a(6).

### *Single Economic Enterprise/Alter Ego/Veil-Piercing*

114.   Each of the Sherman Companies and Street Name Entities are part of a single economic enterprise and all are alter egos of each other. Moreover, each of the Street Name Entities and each of the Sherman Companies uses each of the other Sherman Companies to indirectly collect debts – including Plaintiff's alleged

debt and the alleged debts of the class members. Therefore, each Sherman Company and each Sherman Company is vicariously liable and primarily liable for the FDCPA violations of any one of the Sherman Companies. Moreover, each one is vicariously liable for any FDCPA violation committed by any third-party debt collector (such as EEC) retained by the Sherman Companies.

115.   SO, Alegis, SFG, SCM, SALP, SA, SAIILP, SAIIGP, SC, SOIII, SCG, LVNV, Resurgent, Unknown Sherman Entities 1-50, Huger Street LLC, Moultrie Street LLC, Woolfe Street LLC, Fulton Street LLC, Avondale Street LLC, Jasper Street LLC, Concord Street LLC, Hagood Street LLC, Charlotte Street LLC, Archdale Street LLC, Jacobs Alley LLC, Peachtree Street LLC, Greenhill Street LLC, Chalmers Street LLC, and Princess Street LLC are each liable for the FDCPA violations described in the Complaint. As such, each one is liable to the class for statutory damages in the amount of one percent of the net worth of each respective entity.

116.   Alternatively, the corporate veil between and among the Sherman Companies and Street Name Entities should be pierced, because those entities: (a) conceal and/or misrepresent the identity of their members; (b) fail to maintain arm's length relationships with related entities; (c) fail to observe corporate formalities in terms of both behavior and documentation; (d) intermingle assets of parent and subsidiary companies;  (e) manipulate assets and liabilities to concentrate them in certain entities; (f) treat the assets of subsidiary companies as the assets of parent companies; (g) siphon the funds of subsidiary corporations for the purposes of

parent corporations; (h) use subsidiary companies as mere facades for parent companies; and (i) because LVNV and Resurgent are significantly undercapitalized. As such, any calculation of net worth for purposes of the class's statutory damages should be based on the collective net worth of all the Sherman Companies and Street Name Entities combined.

### *Factual Allegations*

117.    On December 31, 2013, EEC sent to Plaintiff a letter, a copy of which is attached as **Exhibit A** ("the Collection Letter").

118.    The Collection Letter purported to be collecting a debt allegedly owed to LVNV ("the subject debt"). The Collection Letter also alleged that the subject debt arose from a consumer credit card issued by non-party Capital One Bank (USA), N.A. The subject debt allegedly arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes. As such, the subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

119.    The Sherman Companies purchased the subject debt after it entered default.

120.    Upon information and belief, Resurgent arranged to retain EEC to represent LVNV to collect the subject debt.

121.    Upon information and belief, an employee of Resurgent reviewed and approved the Collection Letter before EEC sent it to Plaintiff.

122.   The Collection Letter stated that Plaintiff's "judgment account ha[d] been referred to [EEC's] . . . asset investigation department."

123.   From that statement, in combination with the rest of the letter, the least sophisticated consumer would infer that EEC had an entire department dedicated to tracking down real estate, cars, sports utility vehicles, trucks, boats, motorcycles, and other personal property.

124.   In fact, EEC has no such department and no such referral was made.

125.   On information and belief, EEC does not regularly identify or seize consumers' personal property. Moreover, EEC had no intention of identifying or seizing Plaintiff's personal property.

126.   Despite the fact that no EEC attorney had reviewed the particular circumstances of Plaintiff's account, the Collection Letter threatened that EEC's "client may consider the availability of additional remedies to recover the balance due."

127.   The Collection Letter falsely stated that it "ha[d] been instructed to find any assets available to help [EEC] . . . collect on the judgment," when in fact EEC had received no such instruction.

128.   The Collection Letter then stated that the non-exempt assets EEC would seek to seize "may include real estate and/or personal property, including cars, sports utility vehicles, trucks boats, and motorcycles, as well as other personal property you may own."

129.   Based on that statement, the least sophisticated consumer would have believed that, under New York State law, real estate, personal property, cars, sports utility vehicles, trucks, boats, motorcycles, and other personal property are non-exempt, when in fact, depending on circumstances, those types of property are quite often exempt from attachment by creditors.

130.   The Collection Letter concluded by warning Plaintiff that "[t]o prevent further collection action and efforts by our office to locate your assets," she was required to call a telephone number.

131.   In fact, EEC had no intention of trying to locate Plaintiff's real estate or personal property.

132.   Plaintiff never opened a Capital One Bank (USA), N.A. credit-card account, and was never sued by LVNV. Therefore, Plaintiff did not owe the subject debt.

133.   EEC, on behalf of LVNV and with the approval of Resurgent – and in furtherance of the Sherman Companies' debt-collection enterprise – sent letters substantially similar to the Collection Letter to hundreds, if not thousands, of consumers in New York State.

### *Class Action Allegations*

134.   Under Federal Rules of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    a.   Based on the fact that the Collection Letter at the heart of this litigation is a mass mailed form letter, the class is so numerous that joinder of all members is impractical.

b.      There are questions of law and fact common to the class that predominate over any individual questions affecting only individual class members. The principal questions presented by this case are whether the letter sent by Defendants (**Exhibit A**) violated various provisions of the FDCPA, including, but not limited to 15 U.S.C. § 1692e, § 1692e(4), § 1692e(5), § 1692e(10), and § 1692f(6).

c.      The only individual issues is the identification of the consumers who received the Collection Letter (i.e. the class members). This issue is a matter capable of ministerial determination from Defendants' records.

d.      Plaintiff's claims are typical of those of the class members, as they are based on the same facts and legal theories.

e.      Plaintiff will fairly and adequately represent the class members' interests and has retained counsel experienced in bringing class actions and collection abuse claims.

135.    A class action is superior for the fair and efficient adjudication of the class members' claims as Congress specifically envisioned class actions as a principal means of enforcing the FDCPA. *See* 15 U.S.C. §1692k.

136.    The members of the class are generally unsophisticated consumers, whose rights will not be vindicated in the absence of a class action.

137.    Prosecution of separate actions by individual members of the class would also create the risk of inconsistent and varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interests of judicial economy.

## COUNT I
### Violations of Sections 1692e, e(4) e(5), e(10), and f(6) of the Fair Debt Collection Practices Act

138.   Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

139.   This Count is brought by Plaintiff, individually and on behalf of a class consisting of consumers with New York State addresses, as follows:

> All consumers with New York State addresses, who: (a) within one year of December 29, 2014; and (b) who Defendant EEC claimed owed a debt to Defendant LVNV or Defendant Resurgent; (b) were sent a debt collection letter by Defendant EEC in a form materially identical or substantially similar to the letter attached to Plaintiff's Complaint as **Exhibit A** sent to the Plaintiff; or (c) were sent a debt collection letter threatening to refer the recipient's account to an "asset investigation department; or (d) were sent a debt collection letter implying that real estate, cars, sports utility vehicles, trucks, boats, motorcycles, and other personal property are non-exempt assets that are subject to attachment by creditors; and (e) the letter was not returned by the postal service as undelivered.

140.   Collection letters, such as those sent by Defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

141.   Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representations in connection with the collection of any debt.

142.   Specifically, FDCPA § 1692e(4) prohibits a collector from "represent[ing] or impl[ying] that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person

unless such action is lawful and the debt collector or creditor intends to take such action."

143.    Moreover, FDCPA § 1692e(5) prohibits a collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken."

144.    Furthermore, FDCPA § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

145.    Specifically, Section 1692f(6) of the FDCPA prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

146.    By sending the Collection Letter, Defendants violated numerous provisions of the FDCPA, including 15 U.S.C. §§ 1692e, e(4), e(5), e(10), and f(6).

147.    The Collection Letter violates 15 U.S.C. § 1692e, e(4), and e(10) by

- Falsely representing that EEC has an "asset investigation department that identifies and seizes consumers' real estate, cars, sports utility vehicles, trucks, boats, motorcycles, and other personal property.

- Falsely representing that LVNV and/or Resurgent had instructed to locate consumers' real estate, cars, sports utility vehicles, trucks, boats, motorcycles, and other personal property.

- Falsely representing that real estate, cars, sports utility vehicles, trucks, boats, motorcycles, and other property are non-exempt

assets that may be seized by creditors, regardless of circumstances.

148.    The letter also violates 15 U.S.C. § 1692e(5) by:

- Threatening to identify and seize consumers' real estate, cars, sports utility vehicles, trucks, boats, motorcycles, and other personal property when it did not intend to identify or seize those assets.

- Threatening to seize assets that were exempt from attachment by creditors under New York State law.

149.    The Collection Letter also violates 15 U.S.C. § 1692f(6), by threatening nonjudicial dispossession of real estate, cars, sports utility vehicles, trucks, boats, motorcycles, and other personal property when there was neither a present right to possession nor a present intention to take possession, and when the property was exempt by law from dispossession.

150.    EEC's violations of 15 U.S.C. §1692, *et seq.*, render it liable to Plaintiff and to members of the class.

151.    By reviewing and approving the language of the form Collection Letter before it was sent to Plaintiff and to members of the class, Resurgent directly participated in the violations of 15 U.S.C. § 1692, *et seq.*, rendering it liable to Plaintiff and to members of the class.

152.    Because EEC was acting as the agent of Resurgent when it violated 15 U.S.C. § 1692, *et seq.*, and because EEC was acting under the control of Resurgent when it violated 15 U.S.C. § 1692, *et seq.*, Resurgent is vicariously liable for the acts of EEC and, as such, is liable to Plaintiff and to members of the class.

153.    Because EEC and Resurgent were acting as the agent of LVNV when they violated 15 U.S.C. § 1692, *et seq.*, and because EEC and Resurgent were acting under the control of LVNV when they violated 15 U.S.C. § 1692, *et seq.*, LVNV is vicariously liable for the acts of EEC and Resurgent and, as such, is liable to Plaintiff and to members of the class.

154.    Because EEC and Resurgent were acting as the agent of each and every of the Sherman Companies and each and every of the Street Name Entities when they violated 15 U.S.C. § 1692, *et seq.*, and because EEC and Resurgent were acting under the control of the Sherman Companies and of the Street Name Entities when they violated 15 U.S.C. § 1692, *et seq.*, the Sherman Companies and Street Name Entities, and each of them, are vicariously liable for the acts of EEC and Resurgent and, as such, are liable to Plaintiff and to members of the class.

## COUNT II
### Violations of Sections 1692e and e(2)(A)
### of the Fair Debt Collection Practices Act

155.    Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

156.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representations in connection with the collection of any debt.

157.    Specifically, FDCPA § 1692e(2)(A) states that a debt collector cannot make a "false representation of the character, amount, or legal status of any debt."

158.     The Collection Letter misrepresented the character and legal status of the subject debt by falsely stating that Plaintiff owed a debt arising from a Capital One Bank (USA), N.A. account, and that LVNV had obtained a judgment against Plaintiff in connection with that debt.

159.     EEC's violations of 15 U.S.C. §1692, *et seq.*, render it liable to Plaintiff.

160.     Because EEC was acting as the agent of the Sherman Companies and the Street Name Entities when it violated 15 U.S.C. § 1692, *et seq.*, and because EEC was acting under the control of the Sherman Companies and the Street Name Entities when it violated 15 U.S.C. § 1692, *et seq.*, the Sherman Companies and Street Name Entities, and each of them, are vicariously liable for the acts of EEC and, as such, are liable to Plaintiff.

### *Demand for Jury Trial*

161.     Plaintiff demands a trial by Jury.

### *Prayer for Relief*

WHEREFORE, Plaintiff prays that this Court grant the following relief in her favor, and on behalf of the class, and that judgment be entered against the Defendants, and each of them, for the following:

(A)    Statutory damages as provided by § 1692k of the FDCPA;

(B)    Attorneys' fees, litigation expenses and costs;

(C)    A declaration that Defendant EEC's form letters, represented by the forms sent to the Plaintiff on or about December 31, 2013 violate the FDCPA; and

(D)    Any other relief that this Court deems appropriate under the circumstances.

Dated: New York, New York
            December 29, 2014

Respectfully submitted,

By: _____

Brian L. Bromberg
One of Plaintiff's Attorneys

**Attorneys for Plaintiff**
Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906