UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

JOVANA N. MOUKENGESCHAIE,
*on behalf of herself and all others similarly
situated*,

Plaintiff,

v.

ELTMAN, ELTMAN & COOPER, P.C., LVNV
FUNDING LLC and RESURGENT CAPITAL
SERVICES, L.P.,

Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
14-CV-7539 (MKB)

MARGO K. BRODIE, United States District Judge:

On May 8, 2015, Plaintiff Jovana Moukengeschaie filed an Amended Complaint in the

above-captioned putative class action against Defendants Eltman, Eltman & Cooper, P.C.

("Eltman"), LVNV Funding LLC ("LVNV") and Resurgent Capital Services ("Resurgent"),

alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

("FDCPA"), and seeking statutory damages.[1]  Plaintiff alleges that Eltman sent a debt collection

letter (the "Collection Letter") to her and hundreds of other consumers containing language that

constitutes false, deceptive, misleading and unfair collection practices under the FDCPA.  (Am.

Compl. ¶¶ 1–4, Docket Entry No. 47)  Defendants move to dismiss the Amended Complaint for

failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1]  Plaintiff commenced this action on December 29, 2014 on behalf of herself and all
others similarly situated.  (Compl., Docket Entry No. 1.)  At a conference on April 24, 2015, the
Court directed Plaintiff to file an Amended Complaint on or before May 8, 2015.  (Apr. 24, 2015
Min. Entry.)  In the Amended Complaint, Plaintiff did not assert claims against twenty-six
entities that were named as defendants in the initial Complaint.  (*See* Notices of Voluntary
Dismissal, Docket Entry Nos. 48–73.)

Defendants further move to strike allegations on behalf of a putative sub-class. (Defs. Mot. to Dismiss, Docket Entry No. 80.) For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss. The Court also denies Defendants' motion to strike the sub-class allegations.

## I. Background

The facts alleged in the Amended Complaint are assumed to be true for the purposes of this motion. Eltman mailed the Collection Letter to Plaintiff on December 31, 2013, notifying Plaintiff that a judgment against her had been referred to Eltman's asset investigation department for purposes of collection. (Am. Compl. ¶¶ 1–4; Collection Letter 1, annexed to Am. Compl. as Ex. A.) In the Collection Letter, Eltman states that it is acting on behalf of its client, LVNV, and that it "has been instructed to find any assets available to help us collect on the judgment."[2] (Am. Compl. ¶ 156; Collection Letter 1.) The Collection Letter also states that, "[i]n certain circumstances, the law allows creditors to seek seizure . . . of certain non-exempt assets owned by you to pay the judgment that you owe," and then lists various types of property that may be non-exempt assets. (Am. Compl. ¶ 157; Collection Letter 1.) Plaintiff asserts that Eltman had not in fact been given any instruction by LVNV to identify Plaintiff's assets and did not intend to seize Plaintiff's assets. (Am. Compl. ¶¶ 154, 156.)

The Collection Letter further states that the judgment arises from a debt originally owed to Capital One Bank (USA), N.A. ("Capital One") and that LVNV purchased the debt after the

---

[2] Plaintiff alleges that Eltman, LVNV and Resurgent are debt collectors and that Resurgent services debts owned by LVNV and retains firms such as Eltman to collect debts on behalf of LVNV. (Am. Compl. ¶¶ 15, 19–20.) Plaintiff further alleges extensive facts as to the conduct of each Defendant and the manner in which such conduct renders each Defendant a debt collector for the purposes of the FDCPA. (*See, e.g.*, *id.* ¶ 21 (stating that Resurgent acted as LVNV's agent); *id.* ¶ 22 (alleging that Eltman acted as LVNV's agent).) Because Defendants do not appear to dispute that they are debt collectors, the Court does not address these allegations.

account entered default.  (*Id*. ¶¶ 136–38; Collection Letter 1.)  Plaintiff notes that the Collection Letter fails to explain that LVNV did not purchase the debt directly from Capital One, but rather from North Star Capital Acquisitions LLC ("North Star"), after the debt had been reduced to judgment.  (Am. Compl. ¶ 139.)  Plaintiff states that neither LVNV nor North Star "took the steps required" under state law to assign the debt.  (*Id*. ¶ 141.)  Plaintiff also states that she was not made aware of the 2009 proceeding in which North Star obtained a default judgment against her, "apparently because the process server hired by North Star's attorneys engaged in 'sewer service.'"  (*Id*. ¶ 148.)  She also "does not recall defaulting on a Capital One credit card."  (*Id*.)

According to Plaintiff, Eltman mailed "letters identical" to the Collection Letter "to hundreds, if not thousands, of New York consumers who allegedly owed debts to LVNV" and, in "many" of those instances, Defendants were "seeking to collect [on] judgments that had not been properly assigned" under state law.  (*Id*. ¶¶ 6–7; *see also id*. ¶ 161 (stating that the letters mailed to other consumers were "substantially similar" to the Collection Letter).)

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

When deciding a motion to dismiss, a court's review is limited to the four corners of the complaint but a court may also review (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) documents deemed integral to the complaint and (4) public records. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (documents attached to the complaint, those incorporated by reference, and those integral to the complaint); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (documents integral to the complaint); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records).

### b. Plaintiff's FDCPA claims

Plaintiff asserts that the Collection Letter is false, deceptive and unfair and violates the FDCPA for four main reasons. Plaintiff claims that the Collection Letter: (1) threatens to collect assets that Eltman had no intention of collecting; (2) threatens to enforce judgments despite Eltman's lack of standing to do so, due to a failure to file the assignment of judgment and provide notice to the consumer; (3) makes false and deceptive statements regarding asset investigation and non-exempt assets; and (4) misrepresents the involvement of attorneys, in

violation of various provisions of the FDCPA.[3] (Am. Compl. ¶¶ 166–215.) For these reasons,

Plaintiff asserts that the Collection Letter misleads the least sophisticated consumer and violates

the FDCPA. Defendants argue that the Collection Letter was not deceptive or unfair within the

meaning of the FDCPA because the Collection Letter: (1) merely informed consumers of the

rights of the creditor and made no threats; (2) correctly stated that Defendants, who have no duty

under state law to file assignments of judgment or to notify Plaintiff or other consumers of

assignments of judgment, are entitled to collect on judgments assigned to them; (3) expressly

disclaimed the involvement of any attorneys in drafting the letter or reviewing the consumers'

accounts; and (4) did not include misrepresentations with respect to asset investigation or

non-exempt assets. (Defs. Mem. of Law in Supp. of Defs. Mot. to Dismiss ("Defs. Mem.") 1–2,

Docket Entry No. 80.)

The FDCPA was enacted to protect consumers from abusive debt collection practices by

third-party debt collectors, to create parity in the debt collection industry and to standardize

governmental intervention in the debt collection market. 15 U.S.C. § 1692(e); *see also*

*Benzemann v. Citibank, N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) ("The purpose of the FDCPA is to

'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors

who refrain from using abusive debt collection practices are not competitively disadvantaged,

and to promote consistent State action to protect consumers against debt collection abuses.'"

(quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002))); *Vincent v. The Money Store*,

---

[3] The Collection Letter is attached to the Amended Complaint and relied on by Plaintiff throughout the Amended Complaint, therefore the Court considers it as a document incorporated by reference and integral to the Amended Complaint. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991))).

736 F.3d 88, 96 (2d Cir. 2013) ("Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" (quoting 15 U.S.C. § 1692(e))). "To accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices." *Benzemann*, 806 F.3d at 100 (citing 15 U.S.C. § 1692k).

The FDCPA prohibits debt collectors from, among other things, making false or misleading representations. 15 U.S.C. § 1692e. Section 1692e specifies certain categories of conduct that are prohibited, including making false representations about the amount or legal status of any debt, threatening to take any action that cannot legally be taken or that the debt collector does not intend to take, and using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.*; *see Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) ("The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within [the ban on false, deceptive, or misleading representations or means in connection with the collection of any debt].").  The statute also prohibits "the use of any false, deceptive, or misleading representation in a collection letter . . . regardless of whether the representation in question violates a particular subsection of that provision." *Clomon*, 988 F.2d at 1320 (citing 15 U.S.C. § 1692e(10)).  A collection letter will be considered deceptive if it "could mislead a putative-debtor as to the nature and legal status of the underlying debt, or [if it] could impede a consumer's ability to respond to or dispute collection." *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (citing *Easterling v. Collecto, Inc.*, 692 F.3d 229, 235 (2d Cir. 2012)).  This includes practices

that are "contradictory, vague, or threatening." *Id*. at 96 (first citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996); then citing *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25–26 (2d Cir. 1989)).  A collection letter may also violate the FDCPA when its language is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Easterling*, 692 F.3d at 232 (quoting *Clomon*, 988 F.2d at 1319).

"Section 1692f, for its part, prohibits a debt collector from 'us[ing] unfair or unconscionable means to collect or attempt to collect any debt.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 83 (2d Cir. 2015) (citing 15 U.S.C. § 1692f).  This has been described as a "catchall provision." *Rogers v. Capital One Servs. LLC*, 447 F. App'x 246, 249 (2d Cir. 2011) (citing *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 236 n.2 (2d Cir. 1998)).  "Courts analyzing claims under 1692f have acknowledged that the phrase 'unfair or unconscionable' is as vague as they come." *Rojas v. Forster & Garbus LLP*, No. 13-CV-02825, 2014 WL 3810124, at *5 (E.D.N.Y. July 31, 2014) (internal quotation marks, alteration and citations omitted).

In determining whether a collection letter violates the FDCPA, courts utilize an objective standard based on the "least sophisticated consumer." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008); *Clomon*, 988 F.2d at 1318.  This standard "serves [a] dual purpose: it (1) ensures the protection of all consumers, even the naïve and trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1320.  Even the "least sophisticated consumer" possesses "a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quoting *Clomon*, 988 F.2d at 1319); *see Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (noting that the least sophisticated consumer

standard is "an objective analysis that seeks to protect the naïve from abusive practices, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of collection letters" (internal citations omitted)). Thus, a plaintiff whose FDCPA claim is based on "bizarre or idiosyncratic interpretations of collection notices" will not prevail. *Clomon*, 988 F.2d at 1320; *Jacobson*, 516 F.3d at 90.

"Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss." *Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10-CV-4864, 2011 WL 891320, at *2 n.18 (S.D.N.Y. Mar. 14, 2011); *see Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) ("[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law" that the court may resolve on a motion to dismiss. (internal quotation marks omitted)); *Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 642 (S.D.N.Y. 2014) (same).

Liability under the FDCPA does not require intent, as the statute imposes a standard of strict liability. *Russell*, 74 F.3d at 33 ("Because the [FDCPA] imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."); *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993) ("The FDCPA is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages." (citations omitted)).

The Court now considers Plaintiff's claims by grouping them into three main categories: (1) threats in violation of section 1692e(4), e(5) and f(6); (2) false representations in violations of section 1692e, e(2)(A) and e(10); and (3), false representations of attorney involvement in

violation of section 1692e(3).

### i. Threats in violation of section 1692e(4), e(5) and f(6)

Plaintiff alleges that the Collection Letter makes three threats in violation of the FDCPA: (1) to investigate and seize consumers assets, without the intent to do so; (2) to seize assets that are precluded from attachment by creditors under to state law; and (3) to seize assets to enforce judgments without legal authority, due to failure to comply with state law procedural requirements for the filing of assignments of judgment.

The FDCPA makes it illegal to represent or imply that the "nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(4). Section 1692e(5) similarly prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." *Id*. § 1692e(5). In addition, pursuant to section 1692f(6)(B), it is unfair or unconscionable for a debt collector to take or threaten "to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present intention to take possession of the property." *Id*. § 1692f(6)(B).

To determine whether a debt collector made false threats in violation of these subsections, which are often asserted in tandem, courts consider two elements: (1) whether, from the perspective of the least sophisticated consumer, the debt collector threatened to take action and (2) whether the allegedly threatened action could not legally be taken or was not intended to be taken. *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 258–59 (E.D.N.Y. 2012) (internal quotation marks and citation omitted) (resolving motion for summary judgment and considering whether section 1692e(4) and e(5) were violated), *order amended on reconsideration*, No. 10-CV-3983, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013); *Twarozek v.*

*Midpoint Resolution Grp., LLC*, No. 09-CV-731, 2011 WL 3440096, at *3 (W.D.N.Y. Aug. 8, 2011) (resolving motion for default judgment and considering under section 1692e, e(4), e(5), e(7) and e(10) as to alleged threats to commence legal proceedings); *Herzlinger v. Nichter*, No. 09-CV-00192, 2011 WL 1434609, at *5 (S.D.N.Y. Feb. 9, 2011) (resolving motion for summary judgment and considering an alleged violation of section 1692e(5)), *reconsidered in part*, No. 09-CV-00192, 2011 WL 1408180 (S.D.N.Y. Apr. 5, 2011); *Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 302 (E.D.N.Y. 2008) (resolving motion for summary judgment and considering allegations pursuant to section 1692e(5) and e(10)).

A communication from a debt collector may be a threat if the least sophisticated consumer "would interpret th[e] language to mean that legal action was authorized, likely, and imminent." *Bentley*, 6 F.3d at 62 (finding that a letter "implied that the commencement of legal proceedings was imminent" by falsely stating that a debt collection agency was authorized to commence legal proceedings). The communication, "'taken as a whole,' must leave the least sophisticated reader with the impression that '*some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment.'" *Avila v. Riexinger & Assocs., LLC*, No. 13-CV-4349, 2015 WL 1731542, at *4 (E.D.N.Y. Apr. 14, 2015) (quoting *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25 (2d Cir. 1989)), *aff'd in relevant part, vacated in part*, --- F. App'x ---, --- 2016 WL 1104797 (2d Cir. Mar. 22, 2016); *see also Avila* --- F. App'x at ---, 2016 WL 1104797, at * 2 (explaining that, as the collection letter stated that the debt collector "*may* consider additional remedies" or "such action as necessary," "[s]uch equivocal statements do not give rise to liability under [s]ection 1692e"). In *Pipiles*, the Second Circuit determined that the "vagueness of the language" rendered a collection letter impermissibly threatening. *Pipiles*, 886 F.2d at 25.

Courts have found that "an explicit threat of litigation or an implication that legal action is inevitable, when such is not the case," constitutes a threat of action. *Larsen*, 533 F. Supp. 2d at 302 (internal quotation marks and citation omitted) (finding that a collection letter signed by an attorney, which stated that the consumer "may be sued" after failure to pay the debt within thirty days, "could reasonably be construed . . . as advancing a threat"); *Wiener v. Bloomfield*, 901 F. Supp. 771, 775–76 (S.D.N.Y. 1995) (finding that a collector defendant "clearly threatened" legal action against the plaintiff in a manner prohibited by section 1692e(5), by stating that it would file a lawsuit in a venue other than the one in which the consumer lived, as required by another provision of the FDCPA); *see also Tsenes v. Trans-Cont'l Credit & Collection Corp.*, 892 F. Supp. 461, 465 (E.D.N.Y. 1995) (denying motion to dismiss because the language "to withhold further action, return this statement with payment in full," despite "impos[ing] no deadline," could be construed as a threat of legal action because it was "just as vague" as the language in *Pipiles*); *but see Sorel v. Capital One Servs., LLC*, No. 11-CV-703, 2012 WL 3596487, at *6 (D. Conn. Aug. 20, 2012) ("[E]ven where communications specifically refer to legal action, a threat does not exist where the references are couched in terms of mere possibility.").

However, a collection letter that "only advises a debtor that the collection agency has several options with which to pursue the debt" will generally be found insufficient to constitute a threat even in the eyes of the least sophisticated consumer. *Larsen*, 533 F. Supp. 2d at 302 (internal quotation marks omitted) (citing *Spira v. Ashwood Fin. Inc.*, 358 F. Supp. 2d 150, 157 (E.D.N.Y. 2005)); *see Avila*, 2015 WL 1731542, at *5 ("A letter that merely advises that the creditor has various options to pursue if the debtor fails to make a payment does not constitute a threat." (internal quotation marks omitted) (citing *Nichols v. Frederick J. Hanna & Assocs., PC*,

760 F. Supp. 2d 275, 280 (N.D.N.Y. 2011))); *Baptist v. Glob. Holding & Inv. Co.*,

No. 04-CV-2365, 2007 WL 1989450, at *3 (E.D.N.Y. July 9, 2007) ("A communication that

only advises a debtor that the collection agency has several options with which to pursue the debt

will generally not be found to constitute a threat." (citing *Spira*, 358 F. Supp. 2d at 157));

*Jackson v. Immediate Credit Recovery, Inc.*, No. 05-CV-5697, 2006 WL 3453180, at *6

(E.D.N.Y. Nov. 28, 2006) ("Factors courts consider include . . . whether the letter specifically

states legal action will be taken or merely describes available alternatives including possible

legal action . . . .").

　　Where a threat of legal action has been made, in order to state a claim the consumer must

also allege that the action could not be lawfully taken or that the collection agency or creditor

had no intention of taking the action. *Stein v. Valentine & Kebartas, Inc.*, No. 10-CV-2465,

2012 WL 1416924, at *3 (E.D.N.Y. Mar. 15, 2012), *report and recommendation adopted*,

No. 10-CV-2465, 2012 WL 1416901 (E.D.N.Y. Apr. 24, 2012); *Twarozek*, 2011 WL 3440096,

at *3 (denying plaintiff's motion for a default judgment based on violations of section 1692e(4)

and e(5) because the complaint did not allege that the debt collector "would not or did not

commence legal proceedings" against the consumer); *Failla v. Cohen*, No. 03-CV-1262, 2005

WL 3032560, at *2 (E.D.N.Y. March 10, 2005) (denying a motion to dismiss because the

plaintiff plausibly alleged that the collector had no intention of commencing threatened

litigation); *Sluys v. Hand*, 831 F. Supp. 321, 326–27 (S.D.N.Y. 1993) ("If a step threatened by a

debt collector 'is not intended to be taken [by the creditor],' 15 U.S.C. § 1692e(5) may be

violated.").

　　To show an absence of intent on the part of the debt collector, a plaintiff may

"demonstrat[e] that the possibility of the threatened lawsuit could be 'ruled out.'" *Larsen*, 533

F. Supp. 2d at 303 (quoting *Tsenes*, 892 F. Supp. at 465) (granting summary judgment to a consumer on claims pursuant to section 1692e(5) and e(10) arising from a collection letter that threatened to sue on a time-barred debt); *see also Bentley*, 6 F.3d at 63 (reversing summary judgment because the "likelihood" of commencing a lawsuit to collect a debt of under $500 was "almost nonexistent"); *Spira*, 358 F. Supp. 2d at 160 (denying summary judgment to plaintiff on claims pursuant to section 1692 e(5) and e(10) because, at the time of the letter, the defendant "was considering the full range of options" for collecting the unpaid debt); *Failla*, 2005 WL 3032560, at *2 (stating that the absence of intent "may be established, for example, where a creditor had a fixed practice of not bringing suits against customers" (internal quotation marks and citation omitted)).

Whether a collector or creditor intended to take action presents a fact issue that may not be resolved at the motion to dismiss phase and is often a disputed question of fact which precludes summary judgment. On a motion to dismiss, a plaintiff is only required to allege facts from which the court can infer such intent. *See Douyon*, 894 F. Supp. 2d at 259 (denying summary judgment to a consumer plaintiff asserting claims pursuant to section 1692e(4) and e(5), given a factual dispute as to the collector's intent); *Berger v. Suburban Credit Corp.*, No. 04-CV-4006, 2006 WL 2570915, at *7 (E.D.N.Y. Sept. 5, 2006) (granting summary judgment to a consumer plaintiff where the collector defendant failed to present evidence as to intent, such as: (1) that "it had not yet decided whether to pursue legal action;" (2) that "despite its stated practice, it has pursued legal action to collect debts of this kind at times in the past;" (3) or, that it "ever used litigation to collect a debt of this size"); *Khon v. Paul Michael Mktg. Serv., Inc.*, No. 05-CV-2771, 2006 WL 3065588, at *3 (E.D.N.Y. Oct. 27, 2006) (denying a

defendant's motion for judgment on the pleadings as to a consumer plaintiff's section 1692e(5) claim where the defendant "failed to provide . . . proof of prior legal action on similar amounts").

The Court considers the three threats alleged by Plaintiff: (1) to investigate and seize consumers' assets, without the intent to do so; (2) to seize assets that are precluded from attachment by creditors pursuant to state law; and (3) to seize assets to enforce judgments without legal authority, due to failure to comply with state law procedural requirements for the filing of assignments of judgment.

### 1. Asset investigation and non-exempt assets[4]

Plaintiff alleges that the Collection Letter violates section 1692e(4), e(5) and f(6) by threatening "to identify and seize" consumers' assets and personal property, when Defendants did not intend to identify or seize those assets and when some of the threatened assets were "exempt from attachment by creditors" under state law. (Am. Compl. ¶¶ 174–77.) Plaintiff asserts that the least sophisticated consumer would infer from the Collection Letter's language — including its headline, "Your judgment account has been referred to our asset investigation department" — that Eltman "had an entire department dedicated to tracking down" consumers' assets and had already begun taking actions towards seizing those assets, when in fact Eltman "had no intention to identify or seize" the assets of Plaintiff or other consumers as it does not "regularly identify or seize consumers' personal property." (*Id.* ¶¶ 152, 154; *see also id.* ¶¶ 175–76.) Plaintiff also alleges that the least sophisticated consumer could understand the Collection Letter's description of non-exempt assets to threaten seizure of assets that are legally exempt from attachment. (*Id.* ¶ 176.)

---

[4] The Court considers Plaintiff's allegations that the Collection Letter threatens to seize assets without intent and that the Collection Letter threatens to seize exempt assets together.

Defendants argue that Plaintiff fails to state a claim that the Collection Letter threatens to seize assets because even the least sophisticated consumer could not read the language as a threat, as the letter "merely advised Plaintiff of Eltman's various options to pursue her debt," which does not constitute a "threat[] of imminent or inevitable legal action." (Defs. Mem. 8; Defs. Reply 3, Docket Entry No. 82.) Defendants note that the Collection Letter does not reference litigation, includes no deadline for the consumer to respond, and directs Plaintiff to contact Eltman — rather than to make a payment on the debt — to prevent further collection action. (Defs. Reply 3–4.) Defendants argue that the Collection Letter's language is similar to the advisory language in *Avila*, *Herzlinger* and *Ford v. Principal Recovery Group., Inc.*, No. 09-CV-627, 2012 WL 930334 (W.D.N.Y. Mar. 19, 2012), which the court found did not constitute a threat. (Defs. Mem. 8.)

### A. Threat to seize assets

Plaintiff contends that the language of the Collection Letter, as a whole, gives the impression that Eltman has already begun the process of investigating and seizing assets, and does not merely advise the consumer of Defendants' rights. (Pl. Mem. of Law in Opp'n to Def. Mot. to Dismiss ("Pl. Opp'n") 11–12, Docket Entry No. 81.) Plaintiff argues that the Collection Letter is similar to the letter at issue in *Leone v. Ashwood Financial, Inc.*, 257 F.R.D. 343 (E.D.N.Y. 2009), where the court found that, despite the use of a conditional phrase, the language constituted a threat because the letter "implied a present ability by the debt collector itself to move forward with litigation." *Leone*, 257 F.R.D. at 348–49. Plaintiff also argues that the Court should follow the decision in *Baptist*, where the collection letter stated that the consumer's file had been transferred to the sender's legal department "for the collection of your debts," and the court found that such language implied all future actions would be of a legal

15

nature and "suggest[ed] that the only way to avoid such legal action would be to voluntarily pay the debts." *Baptist*, 2007 WL 1989450, at *4.

The Collection Letter includes no "explicit threat of litigation" or other imminent legal action, nor does it include a deadline or other demand for immediate payment to prevent legal or other collection action by Defendants. *Larsen*, 533 F. Supp. 2d at 302; (*see also* Collection Letter 1 (advising the language should not be taken as "a threat of legal action").) However, the Collection Letter does state that Eltman has "been instructed to find any assets available to help us collect on the judgment" for the creditor, LVNV, and that the recipient's judgment has already been "referred" to an Eltman department responsible for investigating assets. (Collection Letter 1.) This language could be understood by the least sophisticated consumer as a threat of action. Moreover, the Collection Letter concludes by warning that the consumer can "prevent further collection action and efforts by our office to locate your assets" by contacting Eltman. (*Id.*) This provision of the Collection Letter implies that the account is already in the hands of investigators and that Eltman has the authority to move forward with the seizure of assets, which could reasonably create the impression that asset seizure is imminent. *See Leone*, 257 F.R.D. at 348–49. Taken as a whole, the least sophisticated consumer could read the Collection Letter not as an advisory regarding the creditor's right to permissibly seize assets to collect on a judgment, but as a threat of likely and impending consequences of a failure to pay the debt. As such, the Collection Letter implies the threat of an "authorized, likely, and imminent" seizure of a consumer's assets.[5] *See Bentley*, 6 F.3d at 62.

---

[5] The cases cited by Defendants are factually distinguishable and do not support Defendants' argument that the least sophisticated consumer could not read the Collection Letter as a threat to seize assets. In *Ford*, the consumer placed a telephone call to the debt collector to solicit information as to the collector's planned actions if the consumer failed to pay on the debt.

In addition to sufficiently pleading that the Collection Letter threatens to investigate or seize assets, Plaintiff also pleads that Defendants had no intent to investigate or seize assets belonging to Plaintiff or any other consumers, as it is not Defendants' practice to seize assets to enforce on small judgments. (Am. Compl. ¶ 156.) Accepting this allegation as true, Plaintiff has stated a claim that the Collection Letter violates section 1692e(4), e(5) and f(6) by making false threats about the seizure of assets. *See Failla*, 2005 WL 3032560, at *2 (denying a motion to dismiss where the plaintiff sufficiently pled a lack of intent by alleging that the collection agency had never commenced legal action over such a debt as small as that at issue). For the foregoing reasons, Defendants' motion to dismiss Plaintiff's claims pursuant to section 1692e(4), e(5) and f(6) is denied as to the allegations that the Collection Letter threatens to seize assets.

---

*Ford*, 2012 WL 930334, at *6. The district court explained that the collector's employee "merely responded to [the] plaintiff's inquiries and provided a general overview of the legal options available to the creditor," which was not an impermissible threat of action. *Id.* (granting the defendant's motion for summary judgment as to claims pursuant to section 1692e(4) and e(5)). By contrast, Plaintiff did not initiate the communication with Eltman and did not seek information regarding Defendants' possible collection actions, either of which would make it far less likely that even the least sophisticated consumer would perceive the response as a threat of action.

In *Avila*, a collection letter stated that the law firm collector would take "such action as necessary to protect our client, [the creditor]," and that the creditor "may consider additional remedies." *Avila*, 2015 WL 1731542, at *5 (considering a violation of section 1692e(5)). The district court determined that "nothing" in this language "indicates that legal action is likely or imminent," as it was both general and advisory. *Id.* The Second Circuit approved of this conclusion because "[s]uch equivocal statements do not give rise to liability under [s]ection 1692e." *Avila*, --- F. App'x at ---, 2016 WL 1104797, at *2. In *Herzlinger*, the collector warned that failure to call "within the allotted time" would leave "few alternatives but to proceed with further action." *Herzlinger*, 2011 WL 1434609, at *5 (considering a violation of section 1692e(5)). Despite the stated time sensitivity, the district court found the language did not constitute a threat and instead merely advised the consumer "that this letter is just one of the many escalating steps in the debt collection process." *Id.* In contrast to the letters in *Avila* and *Herzlinger*, which generally reference "such actions," "additional remedies" and "further action," the Collection Letter warns that Defendants would take specific, detailed actions to investigate or seize assets if Plaintiff did not contact Eltman.

## B. Threat to seize exempt assets

Plaintiff's allegation that the Collection Letter threatens to seize assets that are exempt from attachment by state law is not based on a reasonable interpretation of the language in the Collection Letter, even by the least sophisticated consumer. The Collection Letter explains that a creditor's rights to seize assets to enforce a judgment are limited to "non-exempt" assets and includes a detailed list of the types of property that "may" be available for seizure. (Collection Letter 1.) These sentences are couched within multiple conditional phrases and include no language that threatens action against exempt assets or otherwise indicates that Defendants will attempt to take action against any property in violation of state law. Rather, these sentences represent the type of advisory language found to be permissible by other courts. *See Avila*, 2015 WL 1731542, at *5; *Herzlinger*, 2011 WL 1434609, at *5. Defendants' motion to dismiss Plaintiff's claims pursuant to section 1692e(4), e(5) and f(6) is granted as to the allegations that the Collection Letter threatens to seize exempt assets.

## 2. Assignment of judgments

Plaintiff claims that the Collection Letter also violates section 1692e(4), e(5) and f(6) because it threatens to seize assets although LVNV "lacked the legal right to collect upon or enforce the judgments." (SAC ¶ 208.) Plaintiff relies on *Chase Bank USA, N.A. v. Cardello*, 896 N.Y.S.2d 856 (Civ. Ct. 2010) to argue that only "the named plaintiff may enforce a judgment unless and until the requirements of [section] 5019(c) have been met" — including filing the assigned instrument with the relevant court — and until "the judgment debtor has received notice of the assignment from the assignor." (Pl. Opp'n 23–24.) Plaintiff alleges that "[n]either LVNV nor its predecessor in interest . . . took the steps required by New York State Law to take assignment of or enforce the judgment." (SAC ¶ 141.) Plaintiff asserts that the

Collection Letter's threats to enforce judgments by attaching personal and real property and garnishing wages violate section 1692e(4), e(5) and f(6) because Defendants "could not legally take those actions." (*Id.* ¶ 211.)

Because the Court has already determined that the Collection Letter threatens to seize Plaintiff's assets, the only issue as to these claims is whether Defendants lacked the legal ability to take the threatened actions. The Court separately considers Plaintiff's arguments that the Collection Letter violates the FDCPA based on Defendants' alleged lack of legal authority to enforce Plaintiff's judgment because (1) Defendants failed to file an assignment of Plaintiff's judgment with the relevant court, and (2) Plaintiff did not receive the required notice of the assignment of the judgment.

### A. Filing of assignments of judgment

Plaintiff alleges, on information and belief, that no "instruments on which LVNV's authority to enforce those assigned judgments were based" were publically filed in a court. (SAC ¶¶ 206–07.) Plaintiff argues that LVNV's alleged failure to "ensure that the assignments were filed" in state court prevents Defendants from seeking post-judgment remedies, including the threatened seizure of assets to enforce Plaintiff's judgment.[6] (Pl. Opp'n 23.) Defendants argue that, under state law, an assignment of judgment is valid even without a filing of the assignment with the relevant clerk of court, and thus any failure to file the assignment of

---

[6] Plaintiff acknowledges that LVNV's alleged failure to file the assignment of the judgment against Plaintiff — and the alleged similarly unfiled assigned judgments of other consumers — does not render the assignment invalid under state law or prevent LVNV from demanding payment on the judgment. (Pl. Opp'n 23.)

Plaintiff's judgment in court does not affect their legal authority to enforce the judgment.[7] (Defs. Mem. 12.) Defendants further argue that because they have not yet acted to undertake any post-judgment enforcement, any failure to comply with state procedural requirements cannot render them liable under the FDCPA. (Defs. Reply 5.)

New York Civil Practice Law and Rules section 5019(c) states that, in the instance of a change in judgment creditor, "[a] person other than the party recovering a judgment who becomes entitled to enforce it, shall file . . . a copy of the instrument on which his authority is based." N.Y. C.P.L.R. § 5019(c).[8] Whether or not the failure to comply with section 5019(c)'s directive to file an assignment with the clerk of court affects FDCPA liability appears to have only been addressed by one district court in this circuit. *See Musah v. Houslanger & Assocs., PLLC*, No. 12-CV-3207, 2012 WL 5835293, at *3 (S.D.N.Y. Nov. 16, 2012) ("*Musah I*"). In

---

[7] Defendants also argue that they are not liable under the FDCPA for a state law procedural deficiency. (Defs. Mem. 12.) "[V]iolations of state and local debt collection statutes are not per se actionable under the FDCPA." *Gallego v. Northland Grp. Inc.*, --- F.3d ---, ---, 2016 WL 697383, at *3 (2d Cir. Feb. 22, 2016) (citations omitted) (upholding dismissal of a complaint for failure to state a claim because "there is no indication that Congress intended for §§ 1692e(10) and 1692f to incorporate state-or local-law standards of conduct"). Plaintiff agrees with this argument but states that her theory of liability is not that "failure to file assignments or failure to notify judgment debtors" alone violate the FDCPA. (Pl. Opp'n 22–23.)

[8] In full, section 5019(c) states:

> Change in judgment creditor. A person other than the party recovering a judgment who becomes entitled to enforce it, shall file in the office of the clerk of the court in which the judgment was entered or, in the case of a judgment of a court other than the supreme, county or a family court which has been docketed by the clerk of the county in which it was entered, in the office of such county clerk, a copy of the instrument on which his authority is based, acknowledged in the form required to entitle a deed to be recorded, or, if his authority is based on a court order, a certified copy of the order. Upon such filing the clerk shall make an appropriate entry on his docket of the judgment.

N.Y. C.P.L.R. § 5019(c).

*Musah I*, the plaintiff claimed that the defendant's attempt to collect on an assigned judgment violated provisions of the FDCPA, including section 1692e(5) and f(6), because the assignment had not been filed with a court pursuant to section 5019(c). *Id*. at *1. The court disagreed with the plaintiff and found that failure to file an assignment with the relevant court does not render an assignment invalid. *Id*. The court held that the assignee was not liable under the FDCPA for threatening to collect on the assigned judgment by serving the plaintiff with an information subpoena and restraining notice. *Id*.

The *Musah* plaintiff asserted that section 5019(c) "not only requires that any assignment of judgment be filed with the relevant court, but also mandates that, absent such filing, the assignment does not take effect." *Id*. at *2. The court rejected this reading of section 5019(c) and held that it "does not require that an assignment be filed with the court in order for the assignee to be entitled to enforce the judgment," explaining that the provision "'is clearly intended for the benefit of the assignee, being designed to protect him against payment of the judgment to the wrong party.'" *Id*. (quoting *Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc.*, 498 F.2d 836, 840 (2d Cir. 1974)); *see also Eckhaus v. Blauner*, No, 94-CV-5635, 1997 WL 362166, at *4 (S.D.N.Y. June 26, 1997) (stating that section 5019(c) is "not meant to benefit the debtor, should the assignment not be recorded"); *Schubert v. Ostano*, No. 91-CV-7423, 1992 WL 112351, at *5 (S.D.N.Y. May 13, 1992) ("[S]ection 5019(c) does not require assignments to be recorded" in order for those assignments to be deemed valid.). The court explained that a judgment assignee "may attempt to enforce that judgment and collect" from the consumer, even without satisfying the filing requirement of section 5019(c), although "invok[ing] the court's process to assist in collecting" requires a filing of the assignment. *Musah I*, 2012 WL 5835293, at *3 n.2 (citing *Law Research*, 498 F.2d at 839). In reaching its

decision, the *Musah I* court explicitly determined it was unnecessary to consider *Cardello* as to this issue, in light of the Second Circuit holding in *Law Research*, which "unequivocally states that an assignment of judgment is effective even without a 5019(c) filing." *Musah I*, 2012 WL 5835293, at *3 (citing *Law Research*, 498 F.2d at 839).

Plaintiff contends that *Musah I* was "wrongly decided" and that the court in *Musah I* should have relied on *Cardello* rather than *Law Research*'s holding that compliance with section 5019(c) is unnecessary prior to efforts to enforce an assigned judgment. (Pl. Opp'n 24.) Plaintiff relies on *Cardello* to argue that the assignee cannot enforce the judgment until an assignment of judgment is filed in court. (*Id.* at 23.) However, contrary to Plaintiff's contention, *Cardello* did not address or hold that failure to comply with the requirements of section 5019(c) renders a judgment unenforceable by an assignee. *Cardello*, 896 N.Y.S.2d at 856. Nor can Plaintiff identify any other decisions that support such a contention.[9] Rather, in *Cardello*, the court considered an assignment of a judgment, filed in an attempt to comply with section 5019(c), and found it deficient in two ways: first, because it "lack[ed] an acknowledgment" and, second, because it had been signed by an individual who was not counsel for the assignor. *Id*. The court held that both of these deficiencies made the assignment "ineffective." *Id*. As such, the *Cardello* court addressed the enforcement of an assignment of judgment that had been deficiently filed, and not whether an assignee may enforce an assignment that has not been filed.

Plaintiff further argues that *Law Research* is inapposite, because it decided whether an assignee's perfection of its rights affected its interests against a creditor in a bankruptcy proceeding. (*Id.*) The Court is unpersuaded by this argument. In *Law Research*, the Second

---

[9] Plaintiff argues that *Cardello* is "the only reported" state court case on the issue "and thus represents the policy of the New York State judiciary." (Pl. Opp'n 24.)

Circuit held that an assignment of a judgment was "valid when executed," although the assignment was not filed at that time, and also held that "filing [pursuant to section 5019(c)] was not in any event necessary to perfect the assignment of the judgment." *Law Research*, 498 F.2d at 839. The Court concludes that, pursuant to *Law Research*, even without complying with section 5019(c)'s directive to file the assignment of the judgment with the relevant court, Defendants are entitled to attempt to collect on a valid assignment of judgment. Filing of the assignment is not necessary for the assignment to be valid, and the absence of a filing does not affect Defendants' legal authority to enforce the judgment against Plaintiff. Because their alleged failure to comply with section 5019(c) does not affect their legal authority to collect on the judgment, Defendants' threats do not violate section 1692e(4), e(5) and f(6). The Court therefore dismisses Plaintiff's claim that the Collection Letter violates section 1692e(4), e(5) and f(6) by threatening actions that Defendants cannot legally take based on a failure to file the assignment with the relevant court pursuant to section 5019(c).

### B. Notice to consumer of the assignment of judgment

Plaintiff alleges that "[n]either LVNV nor its predecessor in interest . . . took the steps required by New York State law to take assignment of or enforce the judgment." (SAC ¶ 141.) Plaintiff argues that failure to comply with the obligation to notify the judgment debtor of an assignment prevents an assignee from enforcing a judgment. (Pl. Opp'n 22 (citing *Cardello*, 896 N.Y.S.2d at 794).) Plaintiff alleges that neither LVNV, the assignee, nor NorthStar, the assignor, notified Plaintiff of the assignment of the judgment to LVNV. (*See* SAC ¶¶ 206–07.) Defendants argue that it is the obligation of the assignor not the assignee to notify the consumer of an assignment. (Defs. Mem. 12.) Defendants argue that, as such, they cannot be liable under the FDCPA for the assignor's failure to comply with this obligation. (*Id.*)

New York law requires an assignor, not an assignee, to provide a consumer with notice that a judgment has been assigned. *Strobel v. RJM Acquisitions LLC*, No. 13-CV-2467, 2014 WL 507510, at *4 (E.D.N.Y. Feb. 6, 2014) (citing *Cardello*, 896 N.Y.S.2d at 858); *In re Pinpoint Techs., LLC*, 5 N.Y.S.3d 329, 329 (Civ. Ct. 2014) ("This court has held that in consumer credit litigation, the assignor of the debt or in this case of a judgment has an obligation to serve a notice of the assignment of the debt on the defendant."). One court in this Circuit has held that an attempt to enforce a judgment without notice to the consumer of its assignment may violate the FDCPA. *See Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 638 (S.D.N.Y. 2013) ("*Musah II*").[10] *Musah II*, 962 F. Supp. 2d at 638. The court held that the claim based on a failure to provide notice of an assignment of judgment "provides a suitable basis for Plaintiff's FDCPA claims" because the New York Court of Appeals has held that, "in order to be charged with a duty to pay a debt to an assignee, [a consumer] must first have actual notice of the assignment." *Id.* (quoting *Tri City Roofers, Inc. v. Nw. Indus. Park*, 61 N.Y.2d 779, 781 (1984)); *see also TPZ Corp. v. Dabbs*, 808 N.Y.S.2d 746 (App. Div. 2006) (holding that a consumer becomes obligated to an assignee only when "the . . . debtor receives notification that the amount due or to become due has been assigned"). In *Musah II*, the court explained that the plaintiff had sufficiently alleged that the defendant was not legally entitled to take steps to enforce the judgment at the time it undertook collection efforts, "thereby rendering such attempts in violation of the FDCPA."[11] *Musah II*, 962 F. Supp. 2d at 638.

---

[10] After dismissing the plaintiff's claims in *Musah I*, the plaintiff filed an amended complaint that asserted that the plaintiff had "never received notice of the assignment, which is a prerequisite to an assignee's ability to enforce a judgment." *Musah II*, 962 F. Supp. 2d at 638.

[11] Defendants note that one court in this circuit has stated that, "at least in [the] context" of the case before that court, "there is no valid cause of action under the FDCPA for any

The civil court judge in *Cardello* also relied on *Tri City Roofers* to hold that "[t]he failure to establish that notice of the assignment [of judgment] was given to the debtor makes the assignment ineffective." *Cardello*, 896 N.Y.S.2d at 858 ("The rules of this court also require the judgment debtor to receive notice of the assignment." (citing *Tri City Roofers*, 61 N.Y.2d at 781)); *see Tri City Roofers*, 61 N.Y.2d at 781 ("A judgment debtor is not called upon to search the county's records every time he is served with an execution or desires to make a payment on his debt."). The court in *Cardello* found that "due process requires that notice of the assignment be given to the [consumer] by the assignor and not by the assignee." *Cardello*, 896 N.Y.S.2d at 858 (explaining that notice should come from the party with whom the consumer had an agreement, and not from "the unknown third-party" because notice from the assignees would "enable dishonest debt collectors to search the court records, obtain the names of judgment debtors" and attempt to collect on their debts); *see also S. Shore Adjustment Co. v. Pierre*, 936 N.Y.S.2d 61, 61 (Civ. Ct. 2011) (dismissing the complaint of a creditor attempting to reduce a

---

purported failure by [the d]efendant to provide the notice of assignment to Plaintiff." *Strobel v. RJM Acquisitions LLC*, No. 13-CV-2467, 2014 WL 507510, at *4 (E.D.N.Y. Feb. 6, 2014). Defendants argue that this Court should read *Strobel* for the proposition that an assignment of judgment is enforceable even absent notice to the consumer, and that a failure to provide such notice cannot create FDCPA liability. (Defs. Mem. 12.) Plaintiff argues that *Strobel* merely held that the obligation to provide notice of assignment "applies only to assignments of *judgments*, not to assignments of accounts and debts." (Pl. Opp'n 24 n.95.) In *Strobel*, the plaintiff argued that a collection letter was deceptive because the defendant had not provided the plaintiff with a notice of assignment of a debt. *Strobel*, 2014 WL 507510, at *5. The court explained that, unlike in *Musah II*, plaintiff made "no allegations that [the d]efendant has received a judgment or even attempted to bring suit." *Id.* The court in *Strobel* explained that the plaintiff's allegations of deceptive conduct related to false claims of an assignment, rather than failure to provide notice of an actual assignment. *Id.* at *4 ("[A] notice of assignment becomes relevant in the context of either a debt that has been reduced to judgment or — at the very least — a creditor's attempt to reduce the debt to judgment . . . ."). As such, the Court does not read *Strobel*, as Defendants argue, to preclude FDCPA claims based on a failure to provide notice of an assignment of judgment.

credit card debt to judgment where the creditor "failed to submit any admissible proof of the multiple assignments" and thus could not "establish the validity of the assignments").

As held by the courts in *Tri City Roofers* and *Musah II*, under New York law, an assignee may not attempt to collect on an assigned judgment until the consumer has actual notice of the assignment, and it is the assignor's obligation to provide such notice. Here, Plaintiff alleges she never received notice of the assignment. The Court has already determined that the Collection Letter threatens actions to collect on this judgment. As in *Musah II*, because LVNV is an assignee to Plaintiff's judgment and threatened to collect on the assigned judgment allegedly before Plaintiff received notices of the assignment, Plaintiff has sufficiently pled violations of section 1692e(4), e(5) and f(6), all of which prohibit threats to take action that is not legally authorized. The Court therefore denies Defendants' motion to dismiss Plaintiff's claim that the Collection Letter violates section 1692e(4), e(5) and f(6) by threatening actions that Defendants cannot legally take based on the allegation that Plaintiff did not receive notice of the assignment of judgment.

### ii.    False representations in violation of section 1692e and e(10)

Plaintiff alleges that the Collection Letter violates section 1692e and e(10) of the FDCPA by making misrepresentations: (1) as to Eltman's investigation and seizure of Plaintiff's assets; (2) as to seizing assets that are exempt from attachment under state law; and (3) as to LVNV's legal right to enforce Plaintiff's judgment despite failure to comply with state law procedural requirements for assignments of judgment. Defendants argue that there are no factually false statements in the Collection Letter as to any of these topics. (Defs. Mem. 7.)

The FDCPA "prohibit[s] a debt collector from using 'any false, deceptive, or misleading representation . . . in connection with the collection of any debt.'" *Benzemann*, 806 F.3d at 100

(quoting 15 U.S.C. § 1692e).  Section 1962e(10) "is a 'catch-all' provision that prohibits '[t]he

use of any false representation or deceptive means to collect or attempt to collect any debt or to

obtain information concerning a consumer.'"  *Avila*, 2015 WL 1731542, at *5 (quoting *Gutierrez*

*v. GC Servs. Ltd. P'ship*, No. 09-CV-4606, 2010 WL 3417842, at *3 (E.D.N.Y. Aug. 27, 2010),

*aff'd*, 430 F. App'x 8 (2d Cir. 2011)).

     "Although '[i]t is clear that Congress painted with a broad brush in the FDCPA,' . . . not

every technically false representation by a debt collector amounts to a violation" of the statute.

*Gabriele*, 503 F. App'x at 94 (quoting *Pipiles*, 886 F.2d at 27).  Rather, a communication will be

considered deceptive for the purposes of violating section 1962e or e(10) if it "could mislead a

[consumer] as to the nature and legal status of the underlying debt, or [if it] could impede a

consumer's ability to respond to or dispute collection" or if it is "contradictory, vague, or

threatening."  *Id.* at 94; *see Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (stating that

"[a] notice is . . . contradictory if it would make the least sophisticated consumer uncertain as to

her rights" and affirming a finding of liability under section 1692e(10) for a contradictory

notice).  In *Gabriele*, the Second Circuit held that statements that are "mere technical

falsehoods" are not prohibited by the statute.  *Gabriele*, 503 F. App'x at 95 (citation omitted).

The statements in *Gabriele* were made in the context of a legal action against a consumer

represented by counsel and the consumer had knowledge of the relevant facts that could prevent

him from being misled.  *Id.* (explaining that the consumer would not be misled about

misstatements including that defendants had sent an exhibit to plaintiff, when they had not, and

that plaintiff had asserted counterclaims, when he had not).

     "[C]ollection communications can be deceptive if they are open to more than one

reasonable interpretation, at least one of which is inaccurate."  *DiMatteo v. Sweeney, Gallo,*

*Reich & Bolz, L.L.P.*, 619 F. App'x 7, 9 (2d Cir. 2015) (internal quotation marks omitted) (citing

*Clomon*, 988 F.2d at 1319); *see Russell*, 74 F.3d at 35 (holding that collection notices that "can

be reasonably read to have two or more different meanings, one of which is inaccurate," have

also been determined to be deceptive (citing *Clomon*, 988 F.2d at 1319)).  "When a statement is

susceptible [to] only *one* reasonable interpretation, the court should determine whether that

interpretation is false in violation of section 1692e(10), ignoring any unreasonable

interpretations."  *Ghulyani v. Stephens & Michaels Assocs., Inc.*, No. 15-CV-5191, 2015 WL

6503849, at *2 (S.D.N.Y. Oct. 26, 2015) (citation omitted); *see also Rogers v. Capital One

Servs., LLC*, 447 F. App'x 246, 248 (2d Cir. 2011) (finding that plaintiff failed to state a claim

pursuant to section 1692e(10) where the letter allegedly "used attractive repayment terms to

'lure' consumers into negotiations" because plaintiff did not allege that "the repayment offer was

not as represented"); *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 191 (S.D.N.Y.

2009) (finding that a plaintiff failed to state a claim under section 1692e where the facts were

"too speculative to infer" that a statement was false).  The Court discusses each of Plaintiff's

misrepresentation claims below.

### 1.    Asset investigation and seizure

Plaintiff asserts that Defendants' representation that Eltman had an asset investigation

department that identifies and seizes consumers' assets is false because Eltman "does not

regularly identify or seize consumers' personal property" and, thus, has misrepresented that

Eltman has a department actually identifying and seizing assets.  (Am. Compl. ¶¶ 151–54).

Plaintiff also asserts that Eltman's representation that Plaintiff's judgment "had been referred" to

that asset investigation department, and that Eltman had been "instructed to find any [of

Plaintiff's] assets," is false because LVNV did not refer Plaintiff's judgment and Eltman had no intention to locate Plaintiff's assets for seizure.[12]  (*Id.* ¶¶ 151, 153, 175.)

Plaintiff asserts that these statements could deceive the least sophisticated consumer into "infer[ring] that [Eltman] had an entire department dedicated to tracking down" assets and personal property for collection purposes.  (*Id.* ¶¶ 152, 175).  Plaintiff argues that, "consider[ing] the disputed language in the context of the entire letter," the least sophisticated consumer would understand that LVNV instructed Eltman to locate assets to be seized and that a department at Eltman was already conducting such an investigation.  (Pl. Opp'n 4–6; *see also id.* at 7 ("[T]he gravamen of Plaintiff's allegation has to do with whether Eltman has a department that actively tracks down and confiscates consumers' real estate, vehicles, and personal property.").)  Plaintiff also argues that whether Eltman maintains a department that tracks down assets, and whether

---

[12]  Plaintiff argues that "[i]t is common knowledge among consumer protection attorneys who work in New York City that, while debt collectors frequently attempt to garnish . . . wages and bank accounts, as a rule they do not seize . . . homes, vehicles, or personal property."  (Pl. Opp'n 6.)  To support this allegation, Plaintiff attaches to her papers in opposition to Defendants' motion the declaration of a consumer attorney.  (Coffey Decl., annexed to Pl. Opp'n.)  The Coffey Declaration is presented to the Court for the first time in response to the Defendants' motion.  Because its factual allegations were neither asserted in the Complaint nor incorporated in the Complaint by reference, the Court will not consider the declaration in determining the sufficiency of Plaintiff's pleadings. *See Wilson v. Kellogg Co.*, --- F. App'x ---, ---, 2016 WL 143454, at *1 (2d Cir. Jan. 13, 2016) ("In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991))); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) ("To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003))).  Moreover, to the extent Plaintiff presents the declaration to counter Defendants' factual argument as to whether Defendants intended to seize Plaintiff's assets, the Court only determines the plausibility of Plaintiff's allegations on a motion to dismiss and will not determine factual disputes.  *Matson*, 631 F.3d at 63.

Eltman was instructed by LVNV to locate Plaintiff's assets, are both factual issues that cannot be resolved on a motion to dismiss. (*Id.* at 6.)

Defendants do not address Plaintiff's arguments that the least sophisticated consumer could believe that the Collection Letter suggests that Eltman was actively searching for assets to seize. Rather, Defendants argue that, as a factual matter, the Collection Letter does not contain any misrepresentation because Eltman does have an asset investigation unit and Eltman, as the Collection Letter states, is a debt collection firm hired to "find any assets available to help . . . collect on the judgment" and it was instructed to locate Plaintiff's assets.[13] (Defs. Mem. 7 (quoting Collection Letter 1).)

Plaintiff contends that Eltman never searches for, or seizes, consumers' assets and that her account had not actually been referred to Eltman for such purposes. Accepting Plaintiff's allegations as true, the Collection Letter "may mislead the least sophisticated consumer about

_____

[13] Defendants argue that Eltman's website provides an analysis of how accounts and asset searches are conducted. (Defs. Mem. 6.) Defendants further argue that the Court may take judicial notice of the website for the fact that Eltman has an "asset investigation department." (*Id.* (citing *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'")).) *Doron* is inapposite. In *Doron*, the court took judicial notice of representations on the plaintiff's website for the purpose of considering the plausibility of the plaintiff's own contradictory factual allegations. *Doron*, 423 F. Supp. 2d at 179. Thus, *Doron* does not support Defendants' contention that the Court can consider Eltman's website to weigh the plausibility of Plaintiff's allegations. Moreover, even if the Court took judicial notice of the website, the Court could only take notice of the fact that Eltman's website states it has an asset investigation department, as opposed to the fact that such a department actually exists, which Plaintiff disputes. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (explaining that, on a motion to dismiss, the court may only take judicial notice "to establish the existence of the [statements in the document], not for the truth of the facts asserted" therein (citations omitted)); *see also Turkmen v. Hasty*, 789 F.3d 218, 226 n.6 (2d Cir. 2015) (citations omitted) (stating, with respect to consideration of a report annexed to a complaint, that "at the pleading stage, although we must consider the words on the page . . . , we need not consider the truth of those words to the extent disputed by [the plaintiff]").

[Defendants'] debt collection practices," and, as such, it contains misrepresentations. *Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10-CV-4864, 2011 WL 891320, at *2–3 (S.D.N.Y. Mar. 14, 2011) (finding that plaintiff stated a claim pursuant to section 1692e(10) because the letter at issue "suggests, contrary to [defendant's] actual practice, that interest or other charges may be added to the consumer's stated balance" and "[b]ecause it is plausible . . . that [the] debt collection practices differ from the representations"). Unlike in *Gabriele*, these statements are not mere technicalities, as Plaintiff had no independent ability to deduce whether Eltman was already searching for assets to seize. *See Gabriele*, 503 F. App'x at 94.

Moreover, even if Eltman has an "asset investigation department," as Defendants contend, but at the time it sent the Collection Letter it had not yet begun such an asset search, the Collection Letter's statement that the account has been "referred" to such a department is "reasonably susceptible to an inaccurate reading" and thus is "deceptive" in the manner prohibited by section 1692e and e(10). *Russell*, 74 F.3d at 35. A misrepresentation of this kind could "impede" the least sophisticated consumer's "ability to respond to or dispute collection." *Gabriele*, 503 F. App'x at 94; *see also Marino v. Hoganwillig, PLLC*, 910 F. Supp. 2d 492, 498 (W.D.N.Y. 2012) (finding that "objectively false" language stating that multiple communications from a debt collector were each a "final letter" stated a claim for a violation of section 1692e because the language would lead "the least sophisticated consumer to conclude that this was his last opportunity to pay the debt"). For these reasons, Plaintiff has adequately pled violations of section 1692e and e(10) based on the allegations that the Collection Letter misrepresents that Eltman had an asset investigation department tasked with identifying and seizing consumers' assets, that Plaintiff's judgment "had been referred" to that department, and that LVNV had instructed Eltman to "find any [of Plaintiff's] assets."

## 2. Non-exempt assets

Plaintiff alleges that the Collection Letter falsely represents that "real estate, cars, sports utility vehicles, trucks, boats, motorcycles, and other property are non-exempt assets that may be seized by creditors, regardless of circumstances."[14]  (Am. Compl. ¶ 175.)  Plaintiff contends that the Collection Letter's assertion that the listed assets are non-exempt "in certain circumstances" is vague and would not provide sufficient assistance to a consumer in reaching the conclusion that the described assets may not always be subject to seizure.  (Pl. Opp'n 15.)  Plaintiff asserts that the least sophisticated consumer could believe that such assets "are non-exempt, when in fact, depending on the circumstances, those types of property are quite often exempt from attachment by creditors" under New York State law.  (Am. Compl. ¶ 158.)

Defendants contend that the Collection Letter "specifically references only the seizure of 'non-exempt' property and advises Plaintiff about what that 'non-exempt' property could include" and that such representations are not false.  (Defs. Mem. 7.)  Defendants argue that the Collection Letter only states that the listed assets are non-exempt "in certain circumstances," and does not, as Plaintiff argues, state that the enumerated types of property are non-exempt "regardless of circumstances."  (Defs. Reply 2.)  Defendants also argue that the phrase "in certain circumstances" adds meaning to the sentence and would be read by even the least

---

[14]  The relevant portion of the Collection Letter states:

> Our firm has been instructed to find any assets available to help us collect on the judgment in this matter on behalf of our client LVNV Funding LLC.  In certain circumstances, the law allows creditors to seek seizure by a Sheriff or other officer of certain non-exempt assets owned by you to pay the judgment that you owe.  These non-exempt assets may include real estate and/or personal property, including cars, sports utility vehicles, trucks, boats, and motorcycles, as well as other personal property you may own.

(Collection Letter 1.)

sophisticated consumer to mean that "the described property *may or may not* be identified and seized to enforce a debt," a meaning that is not false. (*Id.*)

Even the least sophisticated consumer would not interpret "in certain circumstances" to mean "regardless of circumstances," as Plaintiff appears to argue. Such a reading would be exactly the kind of "bizarre or idiosyncratic interpretation" that is outside the scope of the FDCPA. *Jacobson*, 516 F.3d at 90. Rather, the Collection Letter can only be read to explain that the listed property types "may" be "non-exempt assets," and the conditional language, "in certain circumstances," does not render the sentence vague or false with respect to the fact that these assets may at times be exempt from seizure. *Gabriele*, 503 F. App'x at 94. Defendants did not make a false representation or engage in deceptive practices by stating that "in certain circumstances, the law allows creditors to seek seizure . . . of certain non-exempt assets" or by explaining that "[t]hese non-exempt assets may include" the items on a list of certain types of property, even if, at times, state law exempts these assets from seizure.

Plaintiff also argues that, even if the statements defining non-exempt assets may be "literally correct," the Collection Letter's references to ownership of such assets by Plaintiff or other consumer recipients render the statements "ambiguous," in that a consumer could interpret the Collection Letter to describe either assets that hypothetically *could* be identified by Eltman or assets that *already* have been identified by Eltman for seizure. (Pl. Opp'n 14.) Plaintiff argues that, by reading the phrases "certain non-exempt assets owned by you" and "other personal property you may own" in the context of the entire Collection Letter, the least sophisticated consumer could be deceived into believing that "Eltman had already determined that [the consumer] owns non-exempt assets." (*Id*. at 15, 18.) However, Plaintiff fails to identify any vague or contradictory language that could be the basis for such an interpretation. *See Gabriele*,

503 F. App'x at 94; *see also Pifko v. CCB Credit Servs., Inc.*, No. 09-CV-3057, 2010 WL 2771832, at *4 (E.D.N.Y. July 7, 2010) (dismissing section 1692e(10) claims where "the letters' meanings are not ambiguous" in that the allegedly false representation is "clearly state[d] . . . . without any additional language that would imply a different meaning, even for the least sophisticated consumer"). Accordingly, Defendants' motion as to Plaintiff's section 1692e and e(10) claims with respect to these representations is granted and the claims are dismissed.

### 3. Legal status of assigned judgments

Plaintiff alleges that the Collection Letter falsely represents that "LVNV had the legal right to collect upon and enforce the assigned judgments," including Plaintiff's judgment, "when in fact it had no such legal right" because Defendants failed to comply with the procedural requirements of state law to file the assignment with the relevant court and to provide notice of the assignment to the consumer. (SAC ¶ 210.) Plaintiff argues that because the Collection Letter threatens post-judgment remedies, "it represented that LVNV had standing to seek those remedies," a false representation of the legal status of the debts pursuant to section 1692e and e(2)(A).[15] (Pl. Opp'n 23.) Plaintiff argues this representation is false because, as discussed above, according to Plaintiff, LVNV cannot seek post-judgment remedies on judgments that have been assigned but not filed with a court and on assigned judgments when the consumer has not received notice. (*Id.*) Defendants argue that the Collection Letter does not include any false statement regarding the legal status of the underlying debt because, under state law, Defendants had no obligation to file the assignment of a judgment with the relevant court or to notify the consumer of such an assignment. (Defs. Mem. 11.)

---

[15]  Section 1692e(A)(2) prohibits the "false representation of . . .  the character, amount, or legal status of any debt[.]"  15 U.S.C. § 1692e(A)(2).

As discussed above, Defendants' alleged failure to file the assignment of the judgment in court does not affect the legal status of Plaintiff's judgment or Defendants' entitlement to collect on that judgment. Therefore, the Collection Letter did not make any misrepresentation as to the legal status of the judgment on the basis of Defendants' failure to file the assignment with the relevant court. Accordingly, Defendants' motion to dismiss Plaintiff's section 1692e and e(A)(2) claims is granted as to Plaintiff's allegation that Defendants failed to file the assignment of Plaintiff's judgment with the relevant court.

However, as also explained above, Plaintiff's allegation that she did not receive notice of the assignment of her judgment to LVNV does preclude collection efforts by Defendants. Therefore, any representation that Defendants may collect on the judgment could violate section 1692e and e(A)(2). *Gabriele*, 503 F. App'x at 93 (Section 1692e may be violated by "mislead[ing] a putative-debtor as to the nature and legal status of the underlying debt.") Accordingly, Defendants' motion to dismiss Plaintiff's section 1692e and e(A)(2) claims as to Plaintiff's allegation that she received no notice of the assignment of her judgment, and therefore that the Collection Letter misrepresented the legal status of the judgment by implying that Defendants could undertake collection efforts despite the absence of notice, is denied.

### iii.  False representation of attorney involvement in violation of section 1692e(3)

Plaintiff contends that the Collection Letter violates section 1692e(3) because the least sophisticated consumer could be deceived into believing that attorneys are involved in the collection process and "no attorney [at Eltman] meaningfully reviews or authorizes any particular letter" or the "circumstances of any particular consumer."  (Am. Compl. ¶ 184; *see also id.* ¶¶ 179–193.)  Plaintiff further contends that Eltman is "a collection agency masquerading as a law firm, which uses clerical workers, not attorneys, to collect debts using the

power and leverage of a law license." (*Id.* ¶ 193.)  Plaintiff also argues that the Collection Letter

also states that the "judgment account has been referred" to Eltman's "asset investigation

department" and that the firm "has been instructed to find any assets" and further describes

actions related to seizing assets.  (Pl. Mem. 20.)  Plaintiff contends that the Collection Letter

could give the least sophisticated consumer the impression that attorneys have "already begun"

the legal work of hunting for assets, contradicting the disclaimer of attorney involvement

included in the Collection Letter.  (*Id.* at 20; *see also* Am. Compl. ¶ 191.)  Plaintiff

acknowledges that the Collection Letter includes a disclaimer that no attorney has reviewed

Plaintiff's file, but argues that contradictory language in the Collection Letter could mislead a

consumer into a false impression of legal involvement by Eltman's lawyers.  (Am. Compl.

¶¶ 191–92; Pl. Mem. 20–21.)

Defendants argue that the Collection Letter incudes a "clear and unequivocal" disclaimer

that no attorney has reviewed Plaintiff's file, similar to a disclaimer approved by the Second

Circuit.  (Defs. Mem. 10 (citing *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364

(2d Cir. 2005)).)   As a result, Defendants argue that the Collection Letter could not deceive the

least sophisticated consumer as to the extent of attorney involvement.  (*Id.*)

Section 1692e(3) prohibits "[t]he false representation or implication that any individual is

an attorney or that any communication is from an attorney."  15 U.S.C. § 1692e(3).  The Second

Circuit has recognized that "the use of [an attorney's] letterhead and signature on [a] collection

letter [is] sufficient to give the least sophisticated consumer the impression" that the letter is

"from" the attorney.  *Clomon*, 988 F.2d at 1320.  Such a letter may violate section 1692e(3)

where "the attorney or firm had not, in fact, engaged in [the] implied level of involvement."

*Greco*, 412 F.3d at 364; *see also Clomon*, 988 F.2d at 1320 (finding "unpersuasive" the

attorney's argument that the "overstatement of the degree of an attorney's involvement in individual debtors' cases does not violate" section 1692e(3)).  To avoid violating section 1692e(3), a debt collection letter that appears with an attorney's signature must reflect "meaningful attorney involvement."  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir. 2003); *see also Clomon*, 988 F.2d at 1320 (upholding liability under section 1692e(3) based on mass-produced collection letters bearing the facsimile signature and letterhead of an attorney who "played virtually no day-to-day role in the debt collection process," including reviewing neither the consumers' files nor the collection letters).  As such, "there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply" with section 1692e(3).  *Clomon*, 988 F.2d at 1320.

Nevertheless, attorneys "can participate in debt collection . . . without contravening the FDCPA, so long as their status as attorneys is *not misleading*" to a consumer "regarding meaningful attorney involvement in the debt collection process."  *Greco*, 412 F.3d at 364.  An attorney may send a debt collection letter "without being meaningfully involved as an attorney," provided a "clear disclaimer" explains "that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney."  *Id*.  In *Greco*, the collection letter stated that "no attorney with this firm has personally reviewed the particular circumstances of your account."  *Id*.  The Second Circuit found that "the least sophisticated consumer" would objectively "understand that no attorney had yet evaluated his or her case" because the letter expressly stated "the limited extent of [attorney] involvement in the collection of [plaintiff's] debt" and "[n]othing else in the letter confused or contravened [the] disclaimer of involvement." *Id.* (upholding determination that, as a matter of law, the letter did not violate misrepresent the level of attorney involvement in violation of section 1692e(3)).

Since *Greco*, the Second Circuit has reaffirmed the dismissal of section 1692e(3) claims based on collection letters containing similar disclaimer language. *See Avila*, --- F. App'x at ---, 2016 WL 1104797, at *2 (upholding the district court's finding that, as a matter of law, letters containing a disclaimer "identical" to that in *Greco* did not violate section 1692e(3) because the letters "contained . . . the same disclaimers that we approved in *Greco*"); *see also Nichols*, 760 F. Supp. 2d at 280 n.1 (noting that, while the plaintiff did not assert a claim for misrepresentation of attorney involvement, "such a claim would fail" because the letter included a disclaimer containing the "exact language" the Second Circuit determined would not mislead the least sophisticated consumer); *Liantonio v. Lavintman*, No. 11-CV-1292, 2012 WL 4483040, at *5 (E.D.N.Y. Sept. 27, 2012) (dismissing a section 1692e(3) claim based on a letter, which disclaimed that the attorneys had "not independently verified this claim, but rather relied on the information provided to us by our client").

However, consideration of the disclaimer alone is not sufficient to determine whether the least sophisticated consumer could be misled into believing that Eltman was, "at the time of the letter's transmission, acting as an attorney." *Id*. Rather, the Second Circuit's determination in *Greco* was also premised on the finding that "[n]othing else in the letter confused or contravened [the] disclaimer of involvement" by an attorney. *Id.*; *see also Avila*, 2015 WL 1731542, at *4 (dismissing a section 1962e(3) claim and noting that the letter contained no language that contradicted or overshadowed a disclaimer of attorney involvement); *see Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 301 (E.D.N.Y. 2005) (holding that a collection letter with a disclaimer of attorney involvement nevertheless violated section 1692e(3) because of "contradictory information about the level of attorney involvement"). In *Sparkman*, a case relied on by Plaintiff, the collection letter stated that the attorneys' office "will conduct a review of

your account," after the recipient failed to arrange for full payment, implying that "as of the date of the letter, no [attorney] had reviewed plaintiff's account." *Id.* at 301. The court noted contradictory language, which stated that "the computerized process" that generated the letter was "designed and tested by an office attorney in order to determine the appropriateness of the correspondence to the recipient" and that a "review" of the underlying data was "made by an attorney and an attorney did authorize the sending of the letter." *Id.* at 302. The court found that the letter was deceptive as a matter of law because, with respect to the level of attorney involvement, the letter "may reasonably be read to have two different meanings, only one of which can be accurate." *Id.* (concluding that plaintiff was entitled to summary judgment on her section 1692e(3) claim).

Here, the Collection Letter is from Eltman, a law firm, and is signed by an individual, without any signature block indicating he is an attorney. (Collection Letter 1.) The disclaimer specifies that "no attorney with the firm has personally reviewed the particular circumstances of your account," language approved of by the Second Circuit in *Greco*. (*Id.*) The Collection Letter further states that "this letter should not be taken as a representation of any such review nor as a threat of legal action." (*Id.*) Standing alone, the disclaimer language in the Collection Letter could not mislead the least sophisticated consumer into believing that an attorney had evaluated her case.

Nor would the least sophisticated consumer, having read the language that Plaintiff identifies as contradictory to Eltman's disclaimer, have been "confused or contravened [by the] disclaimer." *Greco*, 412 F.3d at 364. Plaintiff argues that the statement that "[o]ur firm has been instructed to find any assets available to help us collect on the judgment" conveys that "Eltman's attorneys have already begun searching" for assets and have "a duty to their client to continue

that search." (Pl. Mem. 20 (quoting Collection Letter 1).) However, unlike the *Sparkman* letter, which expressly stated that the letter generation process was "designed and tested" by an attorney, that an attorney had "review[ed]" the consumer's data and that "an attorney did authorize the sending of the letter," the language of the Collection Letter does not ascribe conduct to any individual, or to Eltman as a firm, acting as an attorney "at the time of the letter's transmission."[16] *Sparkman*, 374 F. Supp. 2d at 302; *see also Greco*, 412 F.3d at 364. Rather, the Collection Letter generally describes the identification of assets in a manner that could not reasonably be read to have two meanings with respect to the involvement of an attorney at the time the Collection Letter was generated.

Looking at the Collection Letter in its entirety, the least sophisticated consumer could not be misled into believing that there was already "meaningful attorney involvement in the debt collection process." *Miller*, 321 F.3d at 301. The disclaimer is sufficient to overcome the implication that the Collection Letter should be read as being "from" an attorney, and it is not contradicted by other language of the Collection Letter. *Greco*, 412 F.3d at 364. Plaintiff has failed to state a claim for false representation of attorney involvement in violation of section 1693e(3). Defendants' motion as to this claim is therefore granted.

---

[16] Plaintiff also cites to *Nepomuceno v. Legal Recovery Law Offices, Inc.*, No. 13-CV-1802, 2014 WL 2711828 (S.D. Cal. June 16, 2014), where the district court determined that a disclaimer was contradicted by language that "could give the least sophisticated consumer the impression of impending litigation" and thus "mislead the least sophisticated consumer as to attorney involvement." *Nepomuceno*, 2014 WL 2711828, at *3–4; (Pl. Mem. 21). In *Nepomuceno*, the district court specifically noted that *Greco* was not controlling law. *Id*. at *4. Moreover, the *Nepomuceno* letter is factually distinguishable from the Collection Letter, in that it described what would happen "[i]n the event that legal action is pursued and judgment is ultimately obtained," stating that such a judgment could "include court costs, local attorney fees*,* and interest in addition to the principal amount currently owed," suggesting attorney involvement. *Id*. at *3. In contrast, the Collection Letter makes no reference to litigation.

### c. Motion to strike sub-class allegations

Plaintiff seeks to bring claims on behalf of a sub-class, comprised of consumers who received letters "materially identical or substantially similar" to the Collection Letter and for whom the "alleged debts sought to be collected were purchased by LVNV after such debts had already been reduced to judgment." (Am. Compl. ¶ 199.) Plaintiff asserts that, as to this sub-class, the Collection Letter misrepresents that "LVNV had the legal right to collect upon and enforce the assigned judgments . . . when in fact it had no such legal right" and that the Collection Letter falsely represents that LVNV could seize the sub-class members' assets when it could not do so legally. (*Id*. ¶ 210.)

Defendants move to strike Plaintiff's sub-class allegations on the ground that Plaintiff cannot satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure with respect to the sub-class. (Defs. Mem. 13.) Defendants argue that Plaintiff's claims are not typical of the sub-class because Plaintiff's allegations of typicality are conclusory and Defendants would have defenses to the claims of the members of the sub-class that would require individualized inquiries. (*Id*. at 13–14.) Plaintiff argues that Defendants' motion to strike is premature because it pre-dates both discovery and a motion by Plaintiff for class certification. (Pl. Opp'n 25.)

"Motions to strike are generally looked upon with disfavor" and motions to strike class allegations are "even more disfavored" as such motions "require[] a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (internal quotation marks omitted) (collecting cases); *see also DeJesus v. BAC Home Loans Servicing, LP*, No. 13-CV-2864, 2014 WL

4804999, at *5 (E.D.N.Y. Sept. 26, 2014) (explaining that the issues asserted in a motion to strike are "premature and properly dealt with on a motion for class certification"); *Chen–Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (denying a motion to strike as "procedurally premature"); *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 388 (E.D.N.Y. 2012) ("[D]efendants attempt to have this Court . . . conduct the rigorous Rule 23(a) class certification analysis at the pleading stage before the plaintiffs have been given an opportunity to set forth their proof . . . .").

Defendants rely on *Tongo v. Derwinski*, No. 09-CV-4986, 1991 WL 243421 (S.D.N.Y. Nov. 14, 1991) to argue that a court should "strike that part of the complaint that seeks to assert an action on behalf of a class," prior to discovery or prior to the plaintiff moving for class certification. *Tongo*, 1991 WL 243421, at *2. *Tongo* is inapposite. In that case, the plaintiff *had* moved for class certification and the district court determined that the complaint failed "to satisfy any of the four prerequisites of Rule 23(a)," which are necessary to maintain a class action. *Id*. Because the court also denied a motion to dismiss by the defendant as to the individual plaintiff's claims, having denied class certification, the district court struck the class allegations from the complaint. *Id*. at *3.

Plaintiff has not moved for class certification. It is therefore "premature to undertake a complete analysis" of Plaintiff's typicality as a member of the sub-class before class certification is properly before the Court. *See Mayfield*, 95 F. Supp. 3d at 697. The Court denies Defendants' motion to strike the sub-class allegations.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. The Court denies Defendants' motion to dismiss as to Plaintiff's claims that (1) the

Collection Letter violates 1692e(4), e(5) and f(6) by threatening to seize assets without any intention of doing so; the Collection Letter violates section 1692e(4), e(5) and f(6) by threatening to collect on Plaintiff's judgment before Plaintiff received notice of the assignment of judgment; (3) the Collection Letter violates section 1692e and e(10) by misrepresenting that Eltman had an asset investigation department that identifies and seizes consumers' assets, that Plaintiff's judgment "had been referred" to that asset investigation department, and that Eltman had been "instructed to find any assets" of Plaintiff's by LVNV; and (4) the Collection Letter violates section 1692e and e(A)(2) by misrepresenting the legal status of Plaintiff's assigned judgment by implying that Defendants were entitled to undertake collection efforts despite the absence of notice to Plaintiff of the assignment. The Court also denies Defendants' motion to strike the sub-class allegations.

The Court grants Defendants' motion to dismiss as to Plaintiff's claims that (1) the Collection Letter violates 1692e(4), e(5) and f(6) by threatening to seize assets that are exempt from attachment under state law; (2) the Collection Letter violates section 1692e(4), e(5) and f(6) by threatening actions that Defendants cannot legally take based on a failure to comply with section 5019(c) by filing the assignment with the relevant court; (3) the Collection Letter violates

section 1692e and e(10) by misrepresenting whether certain property is exempt from seizure;

(4) the Collection Letter violates section 1692e and e(A)(2) by misrepresenting the legal status of

Plaintiff's assigned judgment because Defendants failed to file the assignment with the relevant

court; and (5) the Collection Letter violates section 1693e(3) by making a false representation of

attorney involvement.

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  March 31, 2016
        Brooklyn, New York