UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOVANA N. MOUKENGESCHAIE,

                        Plaintiff,

            -against-

ELTMAN, ELTMAN & COOPER, P.C. *et al.*,

                      Defendants.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
14 CV 7539 (MKB) (CLP)

**POLLAK**, United States Magistrate Judge:

       On December 29, 2014, plaintiff Jovana N. Moukengeschaie filed this putative class

action on behalf of herself and all other similarly situated consumers against defendants Eltman,

Eltman & Cooper, P.C., LVNV Funding LLC, and Resurgent Capital Services L.P., alleging

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  By

Notice of Motion dated October 17, 2016, plaintiff moves to amend the Complaint to add a

demand for actual damages on behalf of a Sub-Class defined in the proposed Second Amended

Complaint, along with two paragraphs explaining why the alleged injuries suffered by the Sub-

Class are concrete and particularized.

       For the reasons set forth below, the Court grants plaintiff's motion to amend the

Complaint.

FACTUAL BACKGROUND

Plaintiff alleges that she is a resident of Queens, N.Y. and a "consumer" as defined by Section 1692a(3) of the FDCPA.  (Sec. Am. Compl.[1] ¶ 10).  According to the plaintiff's proposed Second Amended Complaint ("Complaint"), defendant Eltman, Eltman & Cooper P.C. ("EEC") is a professional corporation, organized under the laws of the State of New York, and located at 140 Broadway, New York, N.Y.  (Id. ¶ 11).  Plaintiff alleges that EEC is a "debt collector" as defined by the FDCPA, in that it is regularly engaged in the business of collecting debts owed by consumers through telephone calls and correspondence.  (Id.)  Plaintiff further alleges that defendant LVNV Funding LLC ("LVNV") is a limited liability company, organized under Delaware law, with a principal place of business located in Las Vegas, Nevada.  (Id. ¶ 25).  According to plaintiff, LVNV is a debt collector as defined by 15 U.S.C. §§ 1692a(4) and (6) because its business consists solely of purchasing, owning, and facilitating the collection of consumer debts.  (Id. ¶¶ 26-29).

Plaintiff alleges that defendant Resurgent Capital Services L.P. ("Resurgent") is a limited partnership organized under the laws of Delaware, with its principal place of business in Greenville, S.C.  (Id. ¶ 14).  Plaintiff further alleges that Resurgent acts as the "master servicer" of all defaulted consumer debt owned by LVNV.  (Id. ¶ 15).  According to the Complaint, defendant Resurgent services, manages, and collects every charged-off consumer debt purchased by LVNV (id. ¶¶ 16-17), and Resurgent has been designated by LVNV as its "attorney-in-fact," retained by LVNV to service, liquidate, and manage accounts receivable on behalf of LVNV. (Id. ¶ 18).

---

[1]Citations to "Sec. Am. Compl." refer to plaintiff's proposed Second Amended Complaint, attached to plaintiff's Notice of Motion, dated October 17, 2016.

The Complaint alleges that on December 31, 2013, EEC sent plaintiff a letter purporting to collect a debt owed to its client, LVNV (the "subject debt").  (Id. ¶ 135, Ex. A).  The letter stated that the subject debt arose from a consumer credit card issued by Capital One Bank (USA), N.A. ("Capital One").  The Complaint alleges that EEC's collection letter failed to disclose that LVNV, which had purchased the debt after it went into default, had purchased the debt not from Capital One, but rather from North Star Capital Acquisitions LLC ("North Star"). (Id. ¶¶ 137-39).  The collection letter also allegedly failed to disclose that LVNV had purchased the debt from North Star after the subject debt had been reduced to judgment by the Queens County Civil Court.  See North Star Capital Acquisitions LLC v. Moukengeschaie, CV-16952-09/QU (N.Y. Civ. Ct.).  (Sec. Am. Compl. ¶ 139).  The letter states that EEC "ha[d] been instructed to find any assets available to help us collect on the judgment," including the seizure of "certain non-exempt assets owned by you to pay the judgment that you owe."  (Sec. Am. Compl., Ex. A).

Plaintiff alleges that EEC was retained by Resurgent to represent LVNV to collect the debt, but that neither LVNV nor its predecessor, North Star, ever took the necessary steps required by New York Law to take assignment of the debt or enforce the judgment.  (Id. ¶ 141). Plaintiff claims that she never received notice of the 2009 State court proceeding because the "process server hired by North Star's attorneys engaged in 'sewer service.'"  (Id. ¶ 148). Plaintiff also claims that she has no recollection of ever defaulting on a Capital One credit card. (Id.)

In her first Amended Complaint, filed on May 8, 2015, plaintiff asserted claims on behalf of a class of New York consumers who allegedly owed debts to LVNV, alleging that in many instances, defendants were seeking to collect on judgments that had not been properly assigned

under state law.  In moving to amend her Complaint again, plaintiff seeks to add a demand for actual damages on behalf of a sub-class comprised of consumers who received letters that were "materially identical or substantially similar" to the collection letter sent to plaintiff and for whom the alleged debts were purchased by LVNV after the debts had already been reduced to judgment (the "Sub-Class").  (Id. ¶ 199).  In relation to this demand for actual damages, plaintiff seeks to add allegations that she and all of the putative class members have suffered concrete and particularized injuries as a result of defendants' collection attempts, "which contained material misrepresentations that Defendants had the right to collect on the alleged debts and that Defendants intended to conduct extensive and invasive asset searches to collect on relatively small judgments."  (Id. ¶ 161).  Plaintiff asserts that, as a result, many class members "paid funds to Defendants as a result of being subject to threats and collection attempts from Defendants."  (Id. ¶ 162).  Finally, plaintiff seeks to add the allegation that "without proper notice of assignment of the debts allegedly owed by Plaintiff and the class members, Defendants did not have the right to collect" and therefore, any sums collected are actual damages, which must be returned to the class members.  (Id. ¶ 218).

Following the filing of the Amended Complaint on May 8, 2015, the defendants moved to dismiss plaintiff's claims on June 15, 2015.  The district court granted defendants' motion in part, but allowed plaintiff to pursue her claims that: 1) the EEC collection letter violated Sections 1692e(4), e(5), and f(6) of the FDCPA by threatening to investigate and seize assets with no intention of following through on the threats; 2) the collection letter violated Sections 1692e(4), e(5), and f(6) by threatening to execute on judgments defendants claimed to have purchased even though defendants lacked the legal authority to do so because the original creditors had failed to notify the consumers of the assignments of the judgments; 3) the collection letter violated

Sections 1692e and e(2)(A) by falsely representing that defendants were legally entitled to collect on the judgments when they were not because the consumers had not been notified of the assignment; 4) the collection letter violated Sections 1692e and e(10) by falsely stating that EEC maintains an "asset investigation department" that identifies and seizes the types of assets listed in the collection letter, that plaintiff's debt had been referred to this department, and that LVNV had instructed EEC to find plaintiff's assets.  (See Order[2] at 31).

In the Complaint and Amended Complaint, plaintiff sought only statutory damages under 15 U.S.C. § 1692k(a)(2)(B).  In moving to amend her Complaint a second time, plaintiff seeks to add a claim for actual damages on behalf of the members of the Sub-Class.  Plaintiff contends that class members who experienced collection efforts by defendant LVNV prior to the class members' receiving notice that their judgments had been assigned to LVNV are entitled to judgment on the sums collected as actual damages for LVNV's violation of the FDCPA. Defendants contend that the motion to amend should be denied because: 1) plaintiff lacks standing to bring such a claim; 2) amounts paid by Sub-Class members to reduce their state court judgments are not actual damages; and 3) the claim for damages is too individualized to survive class certification and the amendment would therefore be futile.

---

[2]Citations to "Order" refer to the Memorandum and Order of the Honorable Margo K. Brodie, dated March 31, 2016, granting in part and denying in part defendants' motion to dismiss the Complaint.

<u>DISCUSSION</u>

A. <u>Motion to Amend - Standards</u>

As a general matter, Rule 15(a) of the Federal Rules of Civil Procedure provides that an amendment as of right may be made at any time prior to the service of a responsive pleading. Otherwise, a party may amend a pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule also states, however, that "the court shall freely give leave when justice so requires," <u>id.</u>, and the Rule has been liberally construed. <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). As the court in <u>Monahan v. New York City Dep't of Corrections</u> noted: "The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated . . . and 'mere technicalities' should not prevent cases from being decided on the merits." 214 F.3d 275, 283 (2d Cir. 2000) (internal citations omitted), <u>cert. denied</u>, 531 U.S. 1035 (2000); <u>see also</u> <u>Kirkland v. City of New York</u>, No. 06 CV 331, 2007 WL 1541367, at *2 (E.D.N.Y. May 25, 2007) (quoting <u>Chapman v. YMCA of Greater Buffalo</u>, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)) (noting that "[t]he stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim").

Although leave to amend "should [be] freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a), the decision to grant a motion to file an amended pleading remains "within the sound discretion of the district court," <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007), and an amendment should not be allowed where there has been bad faith or dilatory motives or where the amendment would be futile or would cause undue delay or undue prejudice to the opposing party. <u>See</u> <u>Foman v. Davis</u>, 371 U.S. at 182; <u>Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel</u>, 145 F.3d 85, 89 (2d Cir. 1998); <u>Zahra v.</u>

Town of Southhold, 48 F.3d 674, 685 (2d Cir. 1995); John Hancock Mut. Life Ins. Co. v.

Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994); Block v. First Blood Assocs., 988 F.2d

344, 350 (2d Cir. 1993).  It is clear that "the grant or denial of an opportunity to amend [remains]

within the discretion of the District Court," Foman v. Davis, 371 U.S. at 182, "but outright

refusal to grant the leave without any justifying reason appearing for the denial is not an exercise

of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal

Rules," id.  "The party opposing the motion for leave to amend has the burden of establishing

that an amendment would be prejudicial."  Arnold v. Research Found. for State Univ. of N.Y.,

No. 15 CV 5971, 2016 WL 6126314, at *4 (E.D.N.Y. Oct. 20, 2016) (quoting Fariello v.

Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994)).  "The opposing party likewise bears the burden

of establishing that an amendment would be futile."  Gurrieri v. County of Nassau, No. 16 CV

6983, 2017 WL 3432208, at *3 (E.D.N.Y. Aug. 9, 2017).  "Proposed amendments are futile if

they 'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal

Rules of Civil Procedure.'"  IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v.

Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015) (quoting Panther Partners

Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012)).


B.  Plaintiff's Proposed Amendments

Plaintiff's proposed class is defined as consumers with New York addresses who, within

one year of December 29, 2014: 1) were sent a debt collection letter by defendant EEC in a form

"materially identical or substantially similar to the letter" plaintiff received, claiming that the

recipient owed a debt to LVNV or Resurgent; or 2) "were sent a debt collection letter [from

defendant EEC] threatening to refer the recipient's account to an 'asset investigation

department;'" or 3) "were sent a debt collection letter [from defendant EEC] implying that real

estate, cars, sports utility vehicles, trucks, boats, motorcycles, and other personal property are non-exempt assets that are subject to attachment by creditors," and for whom the letter was not returned by the postal service as undeliverable.  (Sec. Am. Compl. ¶ 169).  Plaintiff proposes adding a paragraph near the end of the Amended Complaint and a line in the *ad damnum* clause that would seek actual damages on behalf of members of a proposed sub-class.  She defines that proposed Sub-Class as consumers whose debts were purchased by LVNV after such debts had already been reduced to judgment (Sec. Am. Compl. ¶ 201), and alleges that this Sub-Class consists of consumers who did not receive notice of assignment of their judgment to LVNV. (Id. ¶ 209).  Thus, the members of the Sub-Class are also necessarily members of the larger class already pleaded in the first amended complaint.

Plaintiff contends that defendants violated the FDCPA through their collection efforts instituted before class members received notice that their judgments had been assigned to LVNV.  (Pl.'s Mem.[3] at 4).  Plaintiff argues that the Sub-Class members are therefore entitled to receive as damages any amounts collected by defendants before they received notice of the assignment.  (Id. at 5).

In analyzing the Second Amended Complaint and plaintiff's proposed additions under the standards of Rule 15(a), it appears that plaintiff has stated a plausible claim under FDCPA Sections 1692e(2)(A), e(4), e(5) and f(6) on behalf of the proposed Sub-Class.  The FDCPA prohibits threatening or harassing conduct on the part of debt collectors, 15 U.S.C. § 1692e, and it explicitly makes it illegal to imply that the "nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such

---

[3]Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum in Support of Her Motion for Leave to Amend, filed on October 17, 2016.

action is lawful and the debt collector or creditor intends to take such action." Id. §§ 1692e(4), 1692f; Ehrich v. Credit Prot. Ass'n, L.P., 891 F. Supp. 2d 414, 415 (E.D.N.Y. 2012); (see also Order at 9). The collection letters at issue here state that EEC had "been instructed to find any assets available to help us collect on a judgment" and the judgment had been "referred" to the collection department to find assets. (Sec. Am. Compl., Ex. A).  As the district court found in its March 31, 2016 Order, "[t]his language could be understood by the least sophisticated consumer as a threat of action," and "implies the threat of an 'authorized, likely, and imminent' seizure of a consumer's assets." (Order at 16 (quoting Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993))).  The district court also found that plaintiff's allegations that the collection letter threatened to seize assets even though LVNV "lacked the legal right to collect upon or enforce judgments" stated a claim to the extent that the defendant failed to give actual notice of the assignment of the judgment prior to attempting to collect on that judgment.  (Order at 18, 23-26).

In seeking to amend her complaint, plaintiff alleges that members of the Sub-Class received collection letters substantially similar to the one plaintiff received, in that these letters threatened to refer the account to an asset investigation department, or informed the recipient that certain personal property was subject to attachment.  (Sec. Am. Compl. ¶ 169).  The Sub-Class members who did not receive notice of the assignment of the judgment before the attempt to collect on the judgment was made are also similarly situated in that LVNV is alleged to be in violation of the FDCPA for attempting to collect on plaintiff's debt when it had no legal right to do so. (Id. ¶ 209).

In light of the holding of the district court in its March 2016 Order, the Court finds that the claims alleged on behalf of the Sub-Class state plausible claims of violations of FDCPA

Sections 1692e(4), e(5), and f(6). Similarly, accepting plaintiff's allegations as true, the Court finds that plaintiff's proposed amendments do not substantially alter the factual allegations already found by the district court to state claims that are plausible on their face. See Annunziato v. Collecto, Inc., 293 F.R.D. 329, 333 (E.D.N.Y. 2013).

C. Plaintiff's Standing

Defendants argue that plaintiff's proposed amendments on behalf of the class are futile because plaintiff lacks Article III standing under Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Specifically, the defendants argue that plaintiff has no standing to seek relief on these claims on behalf of herself or the class because: 1) plaintiff never made a payment towards her debt and never will make a payment because the judgment on the debt has been vacated (Defs.' Mem.[4] at 12); 2) plaintiff received notice of the assignment of the state court judgment before receiving a debt collection letter (id. at 9), and 3) even if she had not, she did not suffer a "compensable actual injury" sufficient to have standing to bring these claims. (Id. at 13).

Defendants argue that plaintiff has failed to establish the necessary elements of: 1) "an injury in fact, 2) that is fairly traceable to the challenged conduct of the defendant, and 3) that is likely to be redressed by a favorable judicial decision." (Id.) Since plaintiff's state court judgment was vacated and she never made a payment, defendants contend that she has not shown the requisite case and controversy with defendants and thus, the claim for actual damages should be denied as futile.

In order to establish that she has suffered an injury in fact, plaintiff must demonstrate that

---

[4]Citations to "Defs.' Mem." refer to Defendants' Memorandum of Law in Opposition to Plaintiff Jovana Moukengeschaie's Motion to Amend Pursuant to Federal Rule 15(a), filed on December 19, 2016.

she suffered "an invasion of a legally protected interest" that is both "concrete and particularized." Spokeo, Inc. v. Robins, 136 S. Ct. at 1548 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  In Strubel v. Comenity Bank, 842 F.3d 181, 194 (2d Cir. 2016), the Second Circuit held that in light of Spokeo, a plaintiff who shows merely a procedural violation that presents no risk of harm fails to demonstrate a concrete injury.

Plaintiff alleges that defendants violated FDCPA Sections 1692e and 1692f by engaging in collection efforts before she had been provided with appropriate notice of the assignment of her debt, resulting in a false or misleading representation of the debt.  (Sec Am. Compl. ¶¶ 212-18).  Such allegations have been recognized to constitute an Article III "injury in fact" sufficient to establish standing.  See Bautz v. ARS Nat'l Servs., Inc., 226 F. Supp. 3d 131, 147 (E.D.N.Y. 2016) (holding "that plaintiff has pled a concrete interest for the purpose of Article III standing based on her receipt of the IRS Language in the Letter because a material violation of FDCPA Section 1692e infringes plaintiff's substantive statutory right to be free from abusive debt practices") (citing Bernal v. NRA Grp., LLC, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that, where plaintiff alleged violations of Sections 1692e and 1692f, "[t]he type of injury alleged here, receiving a debt collection letter that, it is alleged, wrongly assesses percentage-based collection costs, is concrete . . . [a]nd because the letter was sent individually to [plaintiff] his injury was 'particularized,' as it 'affect[ed] [him] in a personal and individual way'")); Delmoral v. Credit Prot. Ass'n, LP, 13 No. CV 242, 2015 WL 5793311, at *8 (E.D.N.Y. Sept. 30, 2015) (holding that "[a] consumer who receives communications in violation of the FDCPA has standing to seek statutory damages without the need to point to an actual injury").

As the court in Ehrich v. Credit Protection Ass'n, L.P. explained: "Congress may 'define new legal rights which in turn will confer standing to vindicate an injury caused to the

claimant.'" 891 F. Supp. 2d at 417 (quoting <u>Vermont Agency of Natural Resources v. United</u>

<u>States</u>, 529 U.S. 765, 773 (2000)).  Thus, under the FDCPA, conduct by a debt collector that may

not cause the consumer to suffer an actual monetary loss may still subject him to abusive,

harassing behavior, thus constituting a violation of the FDCPA and an injury sufficient to confer

standing.[5]

      Here, plaintiff has alleged that she received the collection letter at issue threatening to

seize assets and that she never received notice of the judgment or its assignment to LVNV prior

to receiving the letter.  Therefore, the Court finds that plaintiff has Article III standing to raise a

claim that she was not provided sufficient notice of the assignment of her debt under New York

law before defendants attempted to collect on the debt, and therefore has standing to raise

FDCPA claims on behalf of a sub-class of individuals who received similar threatening letters

without prior notice of assignment before defendants attempted to collect on any judgments.

D.  <u>Rule 23 Considerations</u>

      Defendants argue that plaintiff's proposed amendment is futile and should be denied

because it substantially changes the definition of the putative class beyond simply adding a claim

for actual damages and that plaintiff, who never made payments toward her debt, cannot

represent the Sub-Class who did make such payments.  (Defs.' Mem. at 7-8).  Specifically,

---

[5]Some courts considering violations of the FDCPA have dismissed claims on standing grounds where the consumer did not allege actual harm stemming from the alleged violation. <u>See, e.g.</u>, <u>Jackson v. Abendroth & Russell, P.C.</u>, No. 16 CV 00113, 2016 WL 4942074, at *7 (S.D. Iowa Sept. 12, 2016) (dismissing for lack of standing claims under Section 1692g where the collection letter demanded payment within the 30-day validation period and failed to disclose that a request for the creditor's name had to be in writing, but where the plaintiff failed to allege actual harm stemming from either violation).

defendants contend that the addition of the allegations of payments to defendants changes the claim from one that merely arises from the receipt of the collection letter to a claim based on actual payments toward a judgment, and is based on a different set of facts.  (Id.)  Defendants further argue that because the amendment adding a claim for actual damages predominates over the original claim, the only way to recover actual damages is for plaintiff to propose an entirely separate class consisting of those individuals who actually made payments toward a judgment. Defendants argue that since plaintiff herself did not make any payments toward the judgment in response to the collection letter, she is not a member of the Sub-Class and thus cannot be a proper class representative.  See Butto v. Collecto Inc., 290 F.R.D. 372 (E.D.N.Y. 2013).

### 1)  Rules 15(a) and 23:  Differing Standards

As an initial matter, the Court notes that different standards apply when analyzing whether the requirements for amending a pleading have been met under Rule 15(a) and whether the requirements of Rule 23 have been met in order to certify a class.  "Rule 23 does not set forth a mere pleading standard."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). Rather, the party seeking class certification under Rule 23 must "affirmatively demonstrate" that the requirements of the Rule have been met.  Id.; see also Massey v. On-Site Manager, Inc., 285 F.R.D. 239, 244 (E.D.N.Y. 2012) (holding that in certifying a class, the court must perform a "rigorous analysis" but that "[d]espite this Court's obligation to carefully analyze each prong of Rule 23 before granting class certification, [t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction") (citation and quotations marks omitted).  When presented with a motion to certify a class, the Court must determine whether plaintiff has met her burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met.  See Butto v. Collecto, Inc., 290 F.R.D. 372, 380 (E.D.N.Y.

2013) (quoting Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010)).

By contrast, a court confronted with a motion to dismiss considers whether the plaintiff has alleged sufficient facts to state a plausible claim on its face, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether an amendment to a pleading would be futile, the court applies the same standard, accepting as true the facts alleged by the moving party. Konrad v. Epley, No. 12 CV 4021, 2013 WL 6200009, at *20 (E.D.N.Y. Nov. 25, 2013), aff'd, 586 F. App'x 72 (2d Cir. 2014). The defendants bear the burden, as the parties opposing amendment, "of establishing that an amendment would be futile." Gurrieri v. County of Nassau, No. 16 CV 6983, 2017 WL 3432208, at *3 (E.D.N.Y. Aug. 9, 2017).

Here, defendants attempt to meet that burden by offering evidence outside the pleadings in support of their argument that plaintiff is an unsuitable class representative. (See discussion, infra at 22). However, by relying on decisions that analyze the sufficiency of a class representative in the context of a motion for class certification, defendants are in essence asking the Court to undertake the "rigorous analysis" required to certify a Rule 23 class rather than to review the allegations on their face under the plausibility pleading standard.

Leave to amend should be denied as futile if the allegations in the proposed amended complaint, when viewed in the light most favorable to the plaintiff, demonstrate that "the proposed class *cannot* be certified under Rule 23." Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 105 (S.D.N.Y. 2010) (emphasis in original) (quoting Pierre v. JC Penney Co., 03 CV 4782, 2006 WL 407553, at *6 (E.D.N.Y. Feb. 21, 2006)); accord Presser v. Key Food Stores Co-op., Inc., 218 F.R.D. 53, 56 (E.D.N.Y. 2003). "Where, as here, the defendant's opposition to the amendment involves not-yet-certified classes, allowing the amendment is appropriate and defendant's arguments against certification are 'more appropriately addressed in the context of

14

motions to certify the proposed classes.'" Presser v. Key Food Stores Co-op., Inc., 218 F.R.D. at

56 (quoting Academy of Ambulatory Foot Surgery (AAFS) v. American Podiatry Ass'n, 516 F.

Supp. 378, 383 (S.D.N.Y. 1981)); see also Johnson v. Bryson, 851 F. Supp. 2d 668, 712-13

(S.D.N.Y. 2012) (concluding that "when a defendant's opposition to a motion to amend involves

not-yet-certified classes, it is appropriate to allow the amendment and address the defendant's

arguments against certification" when presented with a motion for class certification).

Rule 15 is primarily concerned with pleadings, "[b]ut Rule 23 presents plaintiffs with

more than 'a mere pleading standard'" and requires the court to "conduct a rigorous analysis."

In re Air Cargo Shipping Servs. Antitrust Litig., No. 06 MD 1175, 2014 WL 7882100, at *29

(E.D.N.Y. Oct. 15, 2014), report and recommendation adopted by 2015 WL 5093503 (E.D.N.Y.

July 10, 2015) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).  As

Judge Brodie previously explained, it is "premature to undertake a complete analysis" under

Rule 23 because the plaintiff has not yet moved for class certification.  (Order at 42 (quoting

Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685, 697 (S.D.N.Y. 2015)).  Thus, in reviewing

plaintiff's proposed amendment, this Court applies the more lenient standard of Rule 15,

considering the Rule's twin goals of providing "maximum opportunity for each claim to be

decided on its merits rather than procedural technicalities" and ensuring that the pleadings serve

"the limited role of providing the parties with notice of the nature of the pleader's claim or

defense and the transaction, event, or occurrence that has been called into question[.]"  6 Charles

Alan Wright et al., Federal Practice and Procedure § 1471 (3d ed.).  However, because the

defendants have argued futility, the Court has examined the class allegations in the proposed

Second Amended Complaint to determine whether, as defendants argue, there are no

circumstances under which plaintiff could meet her burden under Rule 23.

2)   Typicality and Adequacy As a Class Representative

a)   Failure to Make Payment Towards the Debt

Defendants argue that plaintiff is not an adequate class representative of the proposed Sub-Class for several reasons.  They rely on the decision in Butto v. Collecto Inc., in which the court denied plaintiff's motion to certify a sub-class of consumers "from whom Defendant collected unauthorized 'collection fees'" because the court found that plaintiff was not a member of that sub-class and thus, not a proper class representative.  Butto v. Collecto, Inc., 290 F.R.D. at 391.  The court held that "[s]ince it seems that Defendant never collected a fee from her, [plaintiff] cannot be a member of Class B.  As noted, under the relevant precedents, a determination that the named plaintiff is not a member of the class is dispositive."  Id.  The court found that the sub-class at issue in Butto differed from the sub-class in Keele v. Wexler, where the Seventh Circuit held that the injury common to the class was not the payment of the collection fees, but the receipt of defendants' collection letters.  Thus, since the plaintiff in Keele had received a collection letter from defendants, she was a member of the sub-class and could represent the sub-class.  Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998).  The court in Butto distinguished the holding in Keele, noting that "[t]he plaintiff in Keele moved for certification of four separate classes, all defined in some way by the receipt of defendants' collection letters" and therefore, in Keele, plaintiff could serve as the class representative since "the injury common to the class representative was not the payment of the collection fees, but rather the receipt of the defendants' collection letters."  290 F.R.D. at 390.

Plaintiff acknowledges that under Butto, she would not be a member of a sub-class comprised solely of individuals who made payments to defendants.  However, she cites Annunziato v. Collecto, Inc. as support for her argument that she has standing to recover actual

16

damages on behalf of a broader class, "since the violation alleged here – the 'core' of the damages suffered – is the illegal debt collection attempt, whether or not the plaintiff paid and suffered actual damages does not affect his typicality as a class representative."  293 F.R.D. 329, 338 (E.D.N.Y. 2013) (citing Keele v. Wexler, 149 F.3d at 593–94).  In Annunziato, the court certified a Rule 23 class of individuals who were sent collection letters regarding debts that were time-barred, similar to the one the defendant here had sent to plaintiff.  The court held that differences with respect to whether the debt was actually time-barred, and whether members had entered into an agreement authorizing the collection fee, did not defeat class certification.  Id. at 337.

Plaintiff also cites to Ehrich v. I.C. Sys., Inc., in which the court found that plaintiffs, who were English-speakers, had standing to bring an FDCPA class action on behalf of Spanish-speakers, based on the claim that a Spanish sentence contained in a debt collection letter misled consumers of their rights in violation of FDCPA Section 1692g and Section 1692e.  681 F. Supp. 2d 265, 270 (E.D.N.Y. 2010) (citing Keele v. Wexler, 149 F.3d at 594).  The court held that "although plaintiffs themselves were not deprived of notice by the Spanish sentence, their mere receipt of a debt collection letter that potentially violated the FDCPA is sufficient to establish standing," since the FDCPA "'enlists the efforts of sophisticated consumers . . . as 'private attorney generals' to aid their less sophisticated counterparts, who are unlikely to bring suit.'" Id. (quoting Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 96 (2d Cir. 2008)); but see Ehrich v. Credit Prot. Ass'n, L.P., 891 F. Supp. 2d at 416-17 (holding that the plaintiff had not established standing to bring a class action suit, distinguishing Ehrich v. I.C. Sys., Inc. by noting that "[t]he district judge there based a finding of standing on a footnote in a Supreme Court case which observed in dictum that Congress has the power to 'enact statutes creating legal rights, the

invasion of which creates [constitutional] standing, even though no injury would exist without the statute.' However, this passage cannot properly be read to eliminate the injury requirement from standing analysis altogether") (citing Ehrich v. I.C. Sys., 681 F. Supp. 2d at 269–70) (internal citations omitted).

Other courts in this district have granted class certification where a plaintiff did not pay a collection fee or suffer actual damages, but sought both statutory and compensatory damages under the FDCPA on behalf of a class, which included individuals who did pay a collection fee or suffer actual damages. In Kalkstein v. Collecto, Inc., 304 F.R.D. 114 (E.D.N.Y. 2015), the defendant argued that the named plaintiff was not an adequate representative of the proposed class which included members who did pay a collection fee and therefore, may have suffered additional compensatory damages. The court held that plaintiff was an adequate representative since, "even if there were differences with respect to collection fees, the Court can see no reason why this difference would create a conflict of interest between the Plaintiff and other class members because their interests in maximizing the class recovery would be aligned." Id. at 121.

In Madden v. Midland Funding, LLC, plaintiff brought an FDCPA class action on behalf of a proposed class of individuals, seeking actual damages based on allegedly usurious interest payments, although plaintiff herself did not make any interest payments towards the debt at issue. 237 F. Supp. 3d 130, 157 (S.D.N.Y. 2017). Defendants argued that plaintiff's claims were not typical of the class because plaintiff did not make any interest payments pursuant to defendants' collection letter and therefore, was not herself a member of the putative class. Id. The court held that plaintiff met the typicality requirement because "the 'core of the damages suffered" was the illegal debt collection attempt and because defendants had not suggested a defense unique to plaintiff that could become a focus of the litigation. Id. (citing Annunziato v.

18

Collecto, Inc., 293 F.R.D. at 338).

Plaintiff's allegations in the proposed Second Amended Complaint describe the class as individuals who have suffered concrete and particularized injuries as a result of being subjected to threats and collection attempts from defendants which contained material misrepresentations. (Sec. Am. Compl. ¶ 161).  The claim states that "many," rather than all, of the class members have paid funds to defendants as a result of these threats and collection attempts.  (Id. ¶ 162). Unlike the class in Butto v. Collecto Inc., plaintiff's Sub-Class, as defined, is not limited to individuals who made payments to defendants in response to a debt collection letter.  See 290 F.R.D. at 389-90.  Instead, the Sub-Class is a subset of the much more broadly defined class that includes individuals who received one of three types of debt collection letters by defendants, and the Sub-Class itself includes all individuals who received collection letters that allegedly falsely represented that LVNV had a legal right to collect on their assigned judgments.  (Sec. Am. Compl. ¶¶ 164(c), 212-13).  Thus, plaintiff's claim for actual damages, which states that "many," but not necessarily all, of the class members paid funds to defendants as a result of misleading collection attempts, avoids the pitfalls identified by the Butto court – namely, that plaintiff would be attempting to recover damages on behalf of a class of individuals who share no injuries in common with plaintiff.  The crux of plaintiff's class is defined by objective and broad criteria, in which the core of the alleged injuries are the receipt of collection letters that attempted to collect on debts before notice of the assignments of those debts were provided.  See Madden v. Midland Funding, LLC, 237 F. Supp. 3d at 158 (in which plaintiff defined the class by "objective criteria" such as the residence of each putative plaintiff, when and whether defendants sent the putative plaintiff a collection letter, and the interest rate identified on the collection letter).

Moreover, at this early stage in the litigation, the Court is unaware of any potential

conflict of interest between plaintiff and the class members created by the proposed amendment

that would render plaintiff an unsuitable class representative.  Instead, based on the allegations in

the proposed amended complaint, plaintiff's interest as a class representative to "maximiz[e]

class recovery," see Kalkstein v. Collecto, Inc., 304 F.R.D. at 114, appears to be aligned with the

interests of the members of the class and Sub-Class.  Thus, plaintiff's proposed amendment does

not alter the meaning or scope of the class in a way that would affect plaintiff's ability to

represent the class as a whole. Additionally, discovery in this case is still at its initial stages and

therefore, the Court cannot determine at this time whether the class members who made

payments would outnumber the class members, including plaintiff, who did not make payments

so as to undermine the commonality of the claims or plaintiff's adequacy as a class

representative.  See Madden v. Midland Funding, LLC, 237 F. Supp. 3d at 158 (holding that

plaintiff satisfied the adequacy requirement where "only 485 of the 49,870 putative class

members actually paid usurious interest in response to Defendants' demands, so over 99% of

class members, like Plaintiff, would be seeking only statutory damages") (internal citations

omitted).

      Therefore, the Court finds that plaintiff's failure to make payments towards her debt does

not, by itself, defeat an attempt to certify the class so as to render her amendment to add a claim

for actual damages futile.

            b)  <u>Plaintiff's Receipt of the Notice of Judgment</u>

      Defendants also argue that plaintiff is not a member of the proposed amended Sub-Class

because she received notice of the assignment of her judgment to LVNV.  (Defs.' Mem. at 9).

      Defendants rely on the March 31, 2016 Order of the district court in this case, in which

Judge Brodie held that "under New York law, an assignee may not attempt to collect on an

assigned judgment until the consumer has actual notice of the assignment, and it is the assignor's

obligation to provide such notice."  (Order at 26).  In analyzing whether plaintiff had adequately

pleaded violations of FDCPA §§ 1692e(4), e(5), and e(6), the court found that since LVNV

threatened to collect on the assigned judgment in its December 31, 2013 letter, allegedly before

plaintiff received notice of the assignment, and since under New York law, she must have

received notice of judgment from the original creditor, plaintiff had sufficiently pleaded

violations of the FDCPA by alleging that she never received notice of the assignment.  (Order at

25-26 (citing Chase Bank USA, N.A. v. Cardello, 27 Misc. 3d 791, 794, 896 N.Y.S.2d 856, 857-

58 (Civ. Ct. 2010) (finding that "due process requires that notice of the assignment be given to

the debtor by the assignor and not by the assignee. The credit card holder had his or her

agreement with the credit card issuer and not with the unknown third-party debt purchaser so that

receipt of notice from the third-party debt purchaser does not satisfy due process standards")).

Defendants contend that on November 3, 2013, prior to receiving the December 31, 2013

collection letter, plaintiff was sent a letter forwarding a copy of the state court judgment and

informing her that LVNV was the purchaser of the debt.  (Id. at 10).  Defendants argue that

plaintiff properly received notice of the assignment of her judgment to LVNV, and therefore

cannot be a member of the sub-class of individuals who did not receive notice of their

assignment prior to defendants initiating collection on the judgment and who made payments on

the judgment.  (Defs.' Mem. at 9, 15; Boyle Aff.,[6] Ex. A).

Since an assignee may collect on an assigned judgment once the consumer has actual

notice of the assignment (Defs.' Mem. at 10 (citing Order at 26)), defendants argue that plaintiff

---

[6]Citations to "Boyle Aff." refer to the affidavit of James Boyle, CEO of Eltman, Eltman
& Cooper, dated December 16, 2016.

is not part of the class and thus, class certification will eventually be denied.  (Id. at 10 (citing

Bentley v. Verizon Business Global, LLC, No. 7 CV 9590, 2010 WL 1223575, at *4 (S.D.N.Y.

Mar. 31, 2010) (holding that  "[a] determination that the named plaintiff is not a member of the

class or that she fails to meet the typicality requirement is dispositive, and in that event the court

need not consider the other class certification requirements"))).  Defendants assert that if this

case were to proceed as an individual action, plaintiff could not have made a claim for actual

damages because she received notice of the assignment prior to receiving LVNV's December 31,

2013 collection letter.  Thus, defendants argue, for the same reason, she may not represent and

seek damages on behalf of a class of people who made payments to reduce a judgment before

receiving notice of the judgment.  (Id.)

Plaintiff disputes that she received adequate notice of the assignment to LVNV and a

review of defendants' evidence in support of this claim of notice raises a number of questions.

In their papers filed in opposition to plaintiff's motion to amend, defendants provided a copy of

another letter sent to plaintiff, dated November 5, 2013, that states that EEC has been retained by

LVNV for collection of the debt allegedly owed by plaintiff and that "this communication is

from a debt collector."  (Boyle Aff., Ex. A at 2).  However, the "notice" reads more as a

collection letter than a letter notifying plaintiff of an assignment of her debt.  The letter identifies

Capital One as the original creditor, identifies LVNV Funding as the "creditor to whom debt is

owed," and indicates that as of the date of the letter, plaintiff owed $1,178.64.  The letter

provides plaintiff with several payment options, and attaches the June 25, 2009 judgment of the

Queens County Civil Court holding that plaintiff was in default and owed North Star Capital

Acquisitions the amount of $846.99.  (Boyle Aff., Ex. A).  It is not evident either from this letter

or from the attachments that plaintiff's debts were assigned on a particular date to LVNV.  Even

if the letter was a form of notice, the "notice" was not provided before LVNV attempted to collect on the judgment.  Instead, it appears that, in a single letter, LVNV attempted to collect on the judgment against plaintiff at the same time that it attempted to inform plaintiff, through indirect language, that her debt had been reassigned.

Moreover, actual notice requires proof that plaintiff was not only mailed the notice, but received it.  See Musah v. Houslanger & Assocs., PLLC, 962 F. Supp. 2d 636, 639 (S.D.N.Y. 2013) (holding that where defendant's debt collector provided a copy of a letter indicating that plaintiff's debt had been assigned to defendant but did not provide proof that the letter was actually received by plaintiff "a factual dispute exists between the parties as to whether or not Plaintiff received notice of the assignment").  Here, defendants have not provided proof that plaintiff ever received notice from the original creditor of the assignment of the debt.  It is clear that, under New York law

> due process requires that notice of the assignment be given to the debtor *by the assignor and not by the assignee*.  The credit card holder had his or her agreement with the card issuer and not with the unknown third-party debt purchaser so that receipt of notice from the third-party debt purchaser does not satisfy due process standards.  [¶] Allowing the assignee to give notice would enable dishonest debt collectors to search the court records, obtain the names of judgment debtors and send the debtor a letter stating they have purchased the debt from credit card issuers . . . and the debtor should make all payments to the third party.  Requiring the assignor . . . to serve the notice would reduce the incidents of fraud in this regard.

Chase Bank USA v. Cardello, 27 Misc. 3d 791, 794, 896 N.Y.S.2d 856 (Civ. Ct. 2010); accord Moukengeschaie v. Eltman, Eltman & Cooper, P.C., No. 17 CV 4826, 2016 WL 1274541, at *10-11 (E.D.N.Y. Mar. 31, 2016).  Thus, because the letter attached to Mr. Boyle's Affidavit was sent by the defendants and not the original judgment creditor, it could not have satisfied the notice requirements under New York law.

Plaintiff argues that, since the class is not limited to only those individuals who made payments to LVNV without having received notice of the assignment, but includes individuals who received one of various notices intending to collect on a debt that was assigned to LVNV, whether or not they made payments to LVNV, plaintiff does not fall out of the class even if she had received a notice of judgment from LVNV.  (Pl.'s Mem. at 9).

3)   Superiority:  Whether the Sub-Class Damages Are Too Individualized

Finally, defendants oppose plaintiff's motion to amend on the grounds that individual inquiries are required to determine whether individual judgment debtors received notice of the assignments and to calculate the damages owed to each debtor.  (Defs.' Mem. at 15-16). Specifically, defendants argue that several questions must be answered to determine if someone is a member of the Sub-Class, including: 1) whether the debt was converted to a judgment, and whether the judgment was assigned to defendants; 2) whether the judgment debtor received notice of the assignment of judgment; 3) whether the judgment debtor received a letter substantially similar to the collection letter; 4) whether the judgment debtor made payment on the judgment and, if yes, when such payment was made; 5) whether the judgment debtor received notice of the judgment prior to making the payment; and 6) whether any payments were credited against the underlying judgment and if not, what amounts were not credited.  (Id. at 16). Defendants contend that these individualized inquiries predominate and bar class certification where each class member's case cannot be resolved through "generalized proof."  (Id. at 15 (citing UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010))).

Plaintiff argues that the need for individualized inquiries alone will not defeat class certification.  (Pl.'s Mem. at 8 (citing Annunziato v. Collecto, Inc., 293 F.R.D. at 337)).  Plaintiff also contends that the inquiries defendants have listed can be reduced to just three inquiries, the

24

answers to which "can be easily determined from Defendants' electronic records with a few key strokes." (Pl.'s Reply at 10).

Again, the Court notes that the motion before this Court is not a motion for class certification. However, in considering defendants' arguments, the Court notes that under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class. Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 623 (1997). Courts focus on whether there are common questions related to liability. See Smilow v. Southwest Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007). Even if there are defenses that affect class members differently, that alone "does not compel a finding that individual issues predominate over common ones." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000)), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24 (2d Cir. 2006).

Courts have held that individual damage calculations do not, by themselves, predominate over common issues such that class certification would be inappropriate. See, e.g., Roach v. T.L. Cannon Corp., 778 F.3d 401, 408 (2d Cir. 2015) (holding that individualized damages determinations alone did not preclude class certification under the predominance inquiry). In Annunziato v. Collecto, Inc., the Court held that, although defendants believed that there would be a need for individualized determinations and individualized proof of damages, "the non-common questions, such as the question of actual damages, are not more substantial than the common question of whether the form letters were illegal. As such, predominance has been satisfied." 293 F.R.D. at 339-40. See also Kalkstein v. Collecto, Inc., 304 F.R.D. at 122-23 (holding that, where defendant argued that predominance was not satisfied because individual

class members may be subject to individual defenses regarding their payment of collection fees,

"defendant has not explained how its purported agreements with individual class members would

become  a focus of the litigation . . . . [T]he Defendant has not attached or pointed to such an

agreement, rendering its claim regarding the agreements to be entirely speculative at this stage of

the litigation").

Here, the issue before this Court is not whether to certify a class, but simply whether

plaintiff should be allowed to amend her Complaint to add this claim.  Thus, many of the

concerns raised by defendants cannot be addressed at this stage absent discovery.  Nevertheless,

as a preliminary matter, the Court has identified certain questions common to the class, including

whether putative plaintiffs were sent a debt collection letter by defendant EEC that was

substantially similar to the letter plaintiff received, in that it related to the potential referral of an

individual's claims to an "asset investigation department," or represented that certain assets

could be subject to attachment in order to recover on debts owed.  (Sec. Am. Compl. ¶ 201).

As part of the discovery process, defendants would be obligated to produce documents

relating to which debts were owed by potential class members, whether these debts were

converted to a judgment, whether a judgment debtor received a notice of judgment, and whether

notice of assignment of this judgment was provided to potential class members before they made

any payments toward that judgment.  Without this discovery, defendants cannot point to any

specific individual differences among putative plaintiffs which would predominate over general

issues.  See Hallmark v. Cohen & Slamowitz LLP, No. 11 CV 842S, 2014 WL 51322, at *2

(W.D.N.Y. Jan. 8, 2014) (granting class certification and holding that "[d]iscovery, about which

there are ongoing disputes, may reveal that underlying agreements, if they exist, are likely to bar

claims against some class members. Or, if the agreements are produced, it may become clear that

individual differences among them will predominate").  At this stage of the proceedings, the
Court cannot determine whether certain class members had individual agreements with their
original creditors and made payments on these agreements that would require individualized
proof of damages and would be so distinct such that "individual class members would become
the focus of the litigation."  Kalkstein v. Collecto, Inc., 304 F.R.D. at 123.

      The Court therefore concludes that it cannot be determined at this time whether
individualized questions relating to damages would predominate over questions that are common
to the proposed class.

### E.  Whether Plaintiff Has Alleged Actual Damages

      Defendants also argue that plaintiff's motion to amend to seek actual damages should be
denied as futile because the payments allegedly made by members of the Sub-Class to reduce
their state court judgments "do not amount to damages."  (Defs.' Mem. at 13).  Defendants argue
that the payments made by the class members are for debts validly due and owing pursuant to
state court judgments and that any challenge to the validity of the underlying judgments would
violate the Rooker-Feldman doctrine.  (Id. at 13 (citing Kropelnicki v. Siegel, 290 F.3d 118, 128
(2d Cir. 2002) (holding that under the Rooker-Feldman doctrine, "lower federal courts lack
subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in
the reversal or modification of a state court judgment"))).

      Plaintiff disputes that the alleged damages do not constitute "actual damages," arguing
that the amounts owed on the debts were owed to the original creditors, not to any of the
defendants, and that therefore, any payments made by the Sub-Class members to defendants did
not reduce any amount that may have been owed by the class members.  (Pl.'s Reply at 9).
Plaintiff argues that the payments were made to LVNV, who "lacked the legal right to collect on

the judgments," and there is the risk that, without proper notice from the original creditor of assignment, the payments would not actually go towards reducing judgments; consequently, the original creditor could still seek to collect on the judgment.  (Id. at 2).  Plaintiff also argues that her claim for actual damages does not seek to reverse or modify any underlying state court judgment, but rather is based on the allegation that defendants falsely represented who was entitled to enforce those judgments.  (Id.)  Plaintiff contends that under McCrobie v. Palisades Acquisition XVI, LLC, No. 16 CV 1264, 2016 WL 6651861, 664 F. App'x 81 (2d Cir. Nov. 10, 2016) (summary order), a plaintiff's attempts to raise claims that a defendant violated a federal statute in collecting on a state court judgment does not violate the Rooker-Feldman doctrine. (Id.)

Under the Rooker-Feldman doctrine, certain federal court actions brought by plaintiffs who lost in an underlying state court action are barred if four requirements are met:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., Rooker–Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 281 (2005)).

In McCrobie, a consumer brought an action against a creditor and a law firm, alleging that the law firm violated the FDCPA by making false, deceptive, and misleading communications in the course of attempting to collect on a judgment.  2016 WL 6651861, at *2. The Second Circuit reversed the district court's decision dismissing the action on the grounds that it was barred by the Rooker-Feldman doctrine.  The Court held that "[r]uling on the question

of whether the Defendants violated the FDCPA does not, in most cases, require review of the state-court judgment. The underlying state-court judgment can be perfectly valid, and the Defendants can still have violated the FDCPA by making false, deceptive, or misleading communications or using unfair or unconscionable means in the course of attempting to collect on the judgment." Id.

In this case, plaintiff's claims are based on alleged violations of the FDCPA that took place after the state court judgments were entered and in conjunction with defendants' debt collection practices.  Plaintiff argues that the members of the Sub-Class were injured not because of the entry of state court judgments, but because they made payments to defendants who allegedly failed to provide adequate notice in advance of collecting payments towards the judgments (Sec. Am. Compl. ¶ 209), and because defendants' collection letters allegedly misled members of the class as to the means the debt collector could use to collect on the debts owed. (Id. ¶¶ 201, 207-10, 211-13).  Thus, in evaluating plaintiff's claims in this case, the court would not have to review and reassess the underlying state court judgments in order to adjudicate whether defendants used proper, legal means to collect on the debts owed.

Therefore, the Court finds that plaintiff's amendments seeking damages based on payments made by members of the Sub-Class would not be futile under the Rooker-Feldman doctrine.

<u>CONCLUSION</u>

In light of the foregoing, the Court grants plaintiff's Motion for Leave to File a Second

Amended Complaint.

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated:  Brooklyn, New York
        September 29, 2017

                                           /s/ Cheryl L. Pollak
                                           Cheryl L. Pollak
                                           United States Magistrate Judge
                                           Eastern District of New York

30