# Exhibit F

# In The Matter Of:

*Andrew Cox, Lucinda Cox and Stephanie Snyder v.*
*Sherman Capital, LLC, et al.*

*Benjamin W. Navarro*
*June 21, 2013*
*Confidential*

**Stewart** Richardson

www.StewartRichardson.com

Min-U-Script® with Word Index

Case: 1:12-cv-07135 Document #: 236-15 Filed: 10/08/15 Page 3 of 12 PageID #:1518
Case 1:12-cv-01654-TWP-MJD Document 203-15 Filed: 10/08/15 Page 3 of 12 PageID #:1155
Confidential

## Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF INDIANA
 2                  INDIANAPOLIS DIVISION

 3  ANDREW COX, LUCINDA COX and STEPHANIE SNYDER,
    individually and on behalf of others similarly
 4  situated,
                    Plaintiffs,
 5
          vs.   CIVIL ACTION NO. 1:12-cv-1654-TWP-MJD
 6
    SHERMAN CAPITAL, LLC; MEETING STREET PARTNERS II,
 7  INC.; SHERMAN FINANCIAL GROUP, LLC; SHERMAN CAPITAL
    MARKETS, LLC; LVNV FUNDING, LLC; Resurgent Capital
 8  Services, LP; SHERMAN ORIGINATOR, LLC; SHERMAN
    ORIGINATOR III, LLC; SHERMAN ACQUISITION, LLC;
 9  BENJAMIN W. NAVARRO; LESLIE G. GUTIERREZ; SCOTT E.
    SILVER; KEVIN P. BRANIGAN; ROBERT A. RODERICK,
10  KENNETT KENDALL and JOHN DOES 1-50,
                    Defendants.
11
12                      CONFIDENTIAL
13  DEPOSITION OF:   BENJAMIN W. NAVARRO
14  DATE:            June 21, 2013
15  TIME:            12:15 p.m.
16  LOCATION:        A. William Roberts, Jr.
                      & Associates
17                   234 Seven Farms Drive, Suite 210
                     Charleston, SC
18
    TAKEN BY:        Counsel for the Plaintiffs
19
    REPORTED BY:     Patricia T. Morrison,
20                   Registered Professional Reporter
21
22
23
24
25
```

## Page 2

```
 1  APPEARANCES OF COUNSEL:
 2
 3          ATTORNEYS FOR THE PLAINTIFFS
               ANDREW COX, LUCINDA COX
 4             and STEPHANIE SNYDER:
 5          THE LAW OFFICES OF CHEESEBOUROUGH
               & BORUTA, LPA
 6          BY:  ROBERT D. CHEESEBOUROUGH
               543 East Market Street, #1
 7             Indianapolis, IN 46204
               (317) 637-7000
 8             rdc@home-saver.org
 9
            ATTORNEYS FOR THE DEFENDANTS
10             SHERMAN CAPITAL, LLC, et al:
11          REED SMITH, LLP
            BY:  MICHAEL L. DeMARINO
12               GARY S. CAPLAN
               10 South Wacker Drive
13             Chicago, IL 60606-7507
               (312) 207-6425
14             mdemarino@reedsmith.com
               gcaplan@reedsmith.com
15
16  ALSO PRESENT:
17          Michael Bahner
18
19
20
21
22          (INDEX AT REAR OF TRANSCRIPT)
23
24
25
```

## Page 3

1  MR. DeMARINO: One bit of housekeeping
2  before we get underway here. Defendants are
3  designating this deposition as confidential
4  pursuant to the protective order that the judge
5  entered May 17th, 2013.
6  BENJAMIN W. NAVARRO
7  being first duly sworn, testified as follows:
8  EXAMINATION
9  BY MR. CHEESEBOUROUGH:
10 Q. My name is Robert Cheesebourough.
11 I and my partner who is on the phone whose name is
12 Matthew Boruta -- he won't have any questions
13 unless he calls me and says: Hey, you missed this.
14 I thank you for your time. Thank you
15 for being here. I'll try to get you out of here in
16 under an hour easily, I think.
17 A. Great.
18 Q. Please state your name.
19 A. Benjamin Williams Navarro.
20 Q. And Mr. Navarro, have you ever been
21 deposed before?
22 A. Yes.
23 Q. Is that recently or long ago?
24 A. I think it was recently. Maybe within
25 the last year. Not related to a case with me.

## Page 4

1  Related to a case with somebody else.
2  Q. I can't go there anyway. Have you ever
3  been to Indiana?
4  A. Yes.
5  Q. What was the last time you were in
6  Indiana or when was the last time you were in
7  Indiana?
8  A. I lived there for four years growing up
9  and my father was a football coach in the town of
10 Crawfordsville, and we went back for a reunion --
11 maybe it was five years ago.
12 Q. Crawfordsville. R.R. Donnelley & Sons
13 is located there in Crawfordsville.
14 A. That's right.
15 Q. Your dad worked there?
16 A. No. As I said, he worked for the
17 college. He was a football coach.
18 Q. So growing up -- so like what age were
19 you?
20 A. 13 -- 12 to 16. Something like that.
21 Q. Do you own any real estate in Indiana?
22 A. No.
23 Q. Do you have any other tangible property
24 in Indiana?
25 A. No.

1 Q. Did you have any or own any real estate
2 in Indiana?
3 A. I'm not sure I understand the question.
4 Q. You personally, have you ever sued
5 anyone in Indiana and have a judgment lien against
6 them on any of their personal property or real
7 estate?
8 A. No.
9 Q. Have you ever personally contacted an
10 Indiana consumer regarding an LVNV purchased credit
11 card account?
12 A. No.
13 Q. Have you ever directed any Sherman
14 employee as an agent to contact an Indiana consumer
15 regarding an LVNV purchased credit card account?
16    MR. DeMARINO: Objection; vague,
17 ambiguous. You can answer it, though.
18 A. Yeah. You would have to clarify that
19 question.
20 Q. Have you directed any employee of a
21 Sherman company to have any form of collection
22 activity against any Indiana consumers?
23    MR. DeMARINO: Objection; vague,
24 ambiguous. You can answer that to the extent that
25 you can.

Page 6

1    MICHAEL BAHNER: Just to clarify, are
2 you talking personally?
3    MR. CHEESEBOROUGH: Yes, sir,
4 personally.
5 A. No.
6 Q. Meaning have you personally directed an
7 agent of Sherman to collect against an Indiana
8 consumer? is what the question was.
9    MR. DeMARINO: Right.
10 Q. (Continued) Would your answer still be
11 the same?
12    THE WITNESS: Personally means in my
13 capacity or --
14    MICHAEL BAHNER: So essentially you
15 said: Go sue that person.
16    THE WITNESS: No.
17    BY MR. CHEESEBOROUGH:
18 Q. Then I'll ask the next question, and
19 that is: In your capacity as an officer of any of
20 the Sherman companies have you directed any Sherman
21 agents or employees to collect against Indiana
22 consumers concerning Indiana credit card accounts?
23    MR. DeMARINO: Objection; foundation.
24 Vague and ambiguous. You can answer that.
25 A. I mean, it is too general to answer.

Page 7

1 Do you want to take another shot at it? I guess
2 the way the question was I'll say no. I'll say no.
3 Q. Have you personally transacted business
4 with an Indiana entity?
5 A. Ever in my life?
6 Q. Well --
7 A. The little hamburgers they sell at
8 White Castle? I've been to that place.
9 Q. I understand. How about if I word it:
10 Have you personally transacted any business with
11 Indiana entities concerning collection of consumer
12 credit card accounts?
13 A. No.
14 Q. Have you transacted business with an
15 Indiana entity using an agent or employee of
16 Sherman companies concerning consumer credit card
17 accounts?
18    MR. DeMARINO: Objection; vague and
19 ambiguous and foundation. You can answer that. If
20 you need it read back, she'll read it back.
21    (The court reporter read the pending
22 question.)
23    MR. DeMARINO: You mean personally?
24    MR. CHEESEBOROUGH: I can make the
25 question personally, and then I'll come back and

Page 8

1 ask you.
2 Q. (Continued) That's fine. You can
3 answer it personally.
4 A. No.
5 Q. Now I would ask the same question.
6 I hope I word it correctly.
7    Have you transacted business with an
8 Indiana entity using an agent or employee of the
9 Sherman companies in your capacity as an officer --
10    MR. DeMARINO: Objection.
11 Q. -- of Sherman companies?
12    MR. DeMARINO: Objection; vague and
13 ambiguous. Foundation.
14 A. I would say no again.
15 Q. Are you married?
16 A. Yes.
17 Q. And do you have a direct ownership
18 interest in LVNV Funding, LLC?
19 A. No.
20 Q. Did you ever have a direct ownership
21 interest in LVNV Funding, LLC?
22 A. No.
23 Q. Do you have a direct ownership interest
24 in an entity that owns an interest in LVNV Funding,
25 LLC?

1 A. Ask you ask it one more time.
2   (The court reporter read the pending
3 question.)
4   BY MR. CHEESEBOROUGH:
5 Q. I'm not sure it was typed incorrectly.
6 I'll restate it again.
7   Did you ever have a direct ownership
8 interest in an entity that owns an interest in LVNV
9 Funding, LLC?
10 A. I don't think so.
11 Q. Did you have a direct ownership
12 interest -- did you have -- excuse me.
13   Do you have a direct ownership interest
14 in an entity that did own an interest in LVNV
15 Funding, LLC?
16 A. I don't think so.
17 Q. Do you have an indirect ownership
18 interest in LVNV Funding, LLC?
19   MR. DeMARINO: Objection; vague.
20 A. Say it one more time. Do I have --
21 Q. Indirect interest in LVNV Funding, LLC.
22 A. Yes.
23 Q. And what is that?
24   MR. DeMARINO: Objection. That's
25 vague. What is "that?" I don't know what "that"

Page 10

1 refers to.
2 Q. (Continued) What is that indirect
3 ownership interest?
4   MR. DeMARINO: Objection to the term
5 "indirect ownership interest." You can answer.
6 A. I'm actually trying to figure out
7 exactly what you're trying to ask me, but I have an
8 ownership interest somewhere up the line of
9 entities, if that's what you're trying to ask me.
10 Q. Up the line of --
11 A. Different corporate entities. So I
12 have an ownership interest in one of the entities
13 that ultimately owns LVNV.
14 Q. And what is that entity?
15 A. Sherman Capital.
16 Q. Sherman Capital, LLC?
17 A. Yes. Actually I have to change that
18 answer. That's not right. I don't recall the name
19 of it, but it's an S corp. that sits above Sherman
20 Capital.
21 Q. Well, that's fine.
22 A. Yeah.
23 Q. Do you have an indirect ownership
24 interest in an entity that owns LVNV Funding, LLC?
25   MR. DeMARINO: Objection. Asked and

Page 11

1 answered.
2 Q. (Continued) Excuse me. I meant to
3 say: Did you have an indirect ownership interest
4 in an entity that owned LVNV Funding, LLC?
5 A. I think that was answered.
6   MR. DeMARINO: Objection. I think
7 that's still asked and answered. If he currently
8 does, I think that implies that he did.
9   MR. CHEESEBOROUGH: That is correct.
10 Q. (Continued) Do you have an ownership
11 interest in Sherman Originator, LLC?
12 A. No.
13 Q. Did you ever have a direct --
14 A. No.
15 Q. -- ownership interest in Sherman
16 Originator, LLC?
17 A. No.
18 Q. Do you have a direct ownership interest
19 in an entity that owns Sherman Originator, LLC?
20 A. I think so.
21 Q. It is repetitive, but we'll get through
22 each one and hopefully we'll make it through.
23   Did you have --
24   MR. DeMARINO: The witness stated he
25 thought so.

Page 12

1 Q. (Continued) Do you know the name of
2 that entity or interest?
3 A. I don't know exactly how Sherman
4 Originator rolls up, so no.
5 Q. So you do have an ownership interest in
6 Sherman Originator, LLC through another entity that
7 owns it; is that correct?
8   MR. DeMARINO: Objection. Misstates
9 prior testimony.
10 Q. (Continued) I don't understand.
11 A. I'm not sure how Originator rolls up
12 off the top of my head, so I don't know which
13 entity it rolls up to.
14 Q. Do you have an indirect ownership
15 interest in Sherman Originator, LLC?
16   MR. DeMARINO: Objection. "Indirect
17 ownership" -- I object to that term and I think
18 that calls for a legal conclusion, but you can
19 answer that. Do you remember the question?
20   THE WITNESS: I think we answered this
21 question. I'm saying I didn't know how it rolled
22 up.
23   MR. DeMARINO: If you don't know --
24   THE WITNESS: Yes. I'm going to stick
25 with that.

1     MR. DeMARINO: -- the worse thing to do
2 is guess.
3     THE WITNESS: I'm going to stick to my
4 earlier answer. I don't know.
5     BY MR. CHEESEBOUROUGH:
6 Q. Did you ever have an indirect ownership
7 interest in Sherman Originator, LLC?
8 A. Sorry. The answer would be the same
9 because -- for the same reasons.
10 Q. Do you have an indirect ownership
11 interest in an entity that owns Sherman Originator,
12 LLC?
13     MR. DeMARINO: Objection to the term
14 "indirect ownership interest." Also a legal
15 conclusion. You can answer that.
16 A. I think we keep saying the same thing.
17 I don't know -- sorry. I don't know how the entity
18 rolls up, so I'm not a hundred percent where that
19 rolls up to. So I'm not sure.
20 Q. Do you have a direct ownership interest
21 in Sherman Financial Group, LLC?
22 A. No.
23 Q. Did you ever have a direct ownership
24 interest in Sherman Financial Group, LLC?
25 A. I'm not sure.

1 Q. Do you have a direct ownership interest
2 in an entity that owns Sherman Financial Group,
3 LLC?
4 A. No. Ask me the next question, the
5 indirect ownership. That would be yes.
6 Q. I'll just take your response. And what
7 is the name of that entity or interest?
8 A. That was the answer I gave you before.
9 I don't recall the name of the entity. We just
10 created a new one. It's an S corp. And I don't
11 know the name, but that's it.
12 Q. Do you have a direct ownership interest
13 in Sherman Capital, LLC?
14 A. No.
15 Q. Did you ever have a direct ownership
16 interest in Sherman Capital, LLC?
17 A. Yes.
18 Q. And what is that?
19 A. Up until about six months ago.
20 Q. What did that ownership interest
21 consist of?
22     MR. DeMARINO: Objection; vague,
23 confusing.
24 Q. (Continued) Do you understand my
25 question?

1 A. Like a piece of paper or -- so no.
2 I guess I don't understand the question.
3 Q. A member of that -- were you a member
4 of Sherman Capital, LLC?
5 A. Yes.
6 Q. Do you have an indirect ownership
7 interest in Sherman Capital, LLC?
8 A. Yes.
9 Q. Through what company do you have that
10 indirect ownership interest?
11     MR. DeMARINO: Objection. Asked and
12 answered.
13     MR. CHEESEBOUROUGH: I don't think so.
14     MR. DeMARINO: I promise you.
15     MR. CHEESEBOUROUGH: I was going down
16 the list. I know I didn't ask the question.
17     THE WITNESS: You did. It was the one
18 I was telling you -- it was a recently set up
19 entity, and I don't recall the name of it.
20     BY MR. CHEESEBOUROUGH:
21 Q. There may be the same answer, but it's
22 not the same question. So I have the same answer
23 as before?
24 A. Uh-huh.
25     MR. CHEESEBOUROUGH: That is a head nod

1 yes.
2     BY MR. CHEESEBOUROUGH:
3 Q. The S corp. that you've mentioned that
4 you're unaware of the name of, when was it
5 established?
6 A. I think you asked me that and I
7 answered it.
8 Q. When was it established?
9 A. Six months ago.
10 Q. Six months ago?
11 A. Roughly, yeah. Let's say three to six
12 because I don't remember exactly.
13 Q. Is it an LLC?
14 A. No.
15     MICHAEL BAHNER: Counsel, if it's not
16 one of the named parties how is it relevant?
17     MR. CHEESEBOUROUGH: I wouldn't know if
18 it was or wasn't. I didn't ask, but I can ask
19 that.
20     MR. DeMARINO: We don't need to go down
21 the line on what type of entity it is. He said on
22 the record it's an S corp.
23     MR. CHEESEBOUROUGH: That's fine.
24     BY MR. CHEESEBOUROUGH:
25 Q. Do you have a direct ownership interest

1  in Sherman Originator III, LLC?
2  A. No.
3  Q. Did you ever have a direct ownership
4  interest in Sherman Originator III, LLC?
5  A. No.
6  Q. Do you have a direct ownership interest
7  in Sherman Originator III, LLC -- do you have a
8  direct ownership interest in an entity that owns
9  Sherman Originator III, LLC?
10 A. No.
11 Q. Did you have a direct ownership
12 interest in an entity that owned Sherman Originator
13 III, LLC?
14 A. No.
15 Q. Do you have an indirect ownership
16 interest in Sherman Originator III, LLC?
17    MR. DeMARINO: Objection. Calls for a
18 legal conclusion. You can answer that.
19 A. It sounds like the same question.
20 Q. I said indirect ownership. Do you have
21 an indirect ownership interest in Sherman
22 Originator III, LLC?
23 A. Again, I'm not sure how it rolls up.
24 So I'm not certain.
25 Q. But you're certain that it does not

1  roll up on one of the listed defendants in this
2  case; is that correct?
3  A. Oh, no. I'm not certain of that at
4  all. I'm saying I'm not certain.
5  Q. You're not certain at all?
6  A. Yeah. I'm not certain how the
7  Originator entities roll up.
8  Q. You're aware of all the defendants in
9  this case?
10 A. Yes.
11 Q. But you're not sure if it's one of the
12 listed defendants or if it's the new LLC? Is that
13 what you're saying? I just want to clarify.
14 I just don't want to be confused.
15    MR. DeMARINO: Objection. Asked and
16 answered. The witness has testified, Robert, that
17 he doesn't know where Sherman Originator III, LLC
18 or Sherman Originator, LLC falls with respect to
19 the other entity defendants. You can answer it
20 again.
21    THE WITNESS: I believe that's exactly
22 right. Those are ...
23    MR. CHEESEBOUROUGH: Well, I'll get to
24 that one.
25 Q. (Continued) Do you have a direct

1  ownership interest in Sherman Capital Markets, LLC?
2  A. You asked me that. Capital Markets?
3  Q. Yes, sir. Capital Markets, LLC.
4  A. Yes. You said "direct;" right?
5  Q. Yes, sir.
6  A. Yes. I should say it's either direct
7  or indirect. How is that? Can you go with that
8  answer? Because I'm not positive of nothing about
9  that.
10 Q. You have some ownership interest in
11 Sherman Capital Markets, LLC?
12 A. Yes.
13    MR. DeMARINO: Objection. That
14 misstates prior testimony. He said he doesn't know
15 if he owns directly or if there is another entity
16 above it, in which case he may own it.
17    MR. CHEESEBOUROUGH: Very good,
18 counsel.
19    BY MR. CHEESEBOUROUGH:
20 Q. Do you have a direct ownership interest
21 in Sherman Capital Group, Inc.?
22 A. Sherman Capital Group, Inc.? They're
23 not on there. I don't know.
24    MR. DeMARINO: If you don't know, you
25 have to answer truthfully.

1     THE WITNESS: I don't know. Sherman
2  Capital Group, Inc.?
3     BY MR. CHEESEBOUROUGH:
4  Q. Have you ever heard of Sherman Capital
5  Group, Inc.?
6  A. I don't think so.
7  Q. Do you have a direct ownership interest
8  in Alegis Group, LLC?
9  A. No.
10 Q. Did you ever have a direct ownership
11 interest in Alegis Group, LLC?
12 A. No.
13 Q. Do you have a direct ownership interest
14 in an entity that had ownership interest in Alegis
15 Group -- that has ownership interest in Alegis
16 Group, LLC?
17    MR. DeMARINO: Objection. Asked and
18 answered.
19 Q. (Continued) You may answer the
20 question if you understand it.
21 A. Do I have -- can you ask one more time.
22 Q. Sure. Do you have a direct ownership
23 interest in an entity that owns Alegis Group, LLC?
24 A. No.
25 Q. Did you have a direct ownership

1  interest in an entity that owned Alegis Group, LLC?
2  A.  I don't think so, but I'm not positive.
3  Q.  Do you have an indirect ownership
4  interest in Alegis Group, LLC?
5     MR. DeMARINO: Objection to the term
6  "indirect ownership interest." It calls for a
7  legal conclusion. You can answer that.
8  A.  Yes. If I understood the question,
9  yes.
10 Q.  What does that ownership interest
11 consist of?
12    MR. DeMARINO: Same objection, and I'll
13 add that it's vague and confusing. You can answer.
14 A.  It would consist of stock in an S corp.
15 You're talking about the indirect interest?
16 Q.  That's correct, sir.
17 A.  Yes.
18 Q.  What is the name of that company?
19 A.  I don't remember.
20 Q.  Do you have a direct ownership interest
21 in Resurgent Capital Services, LP?
22 A.  No.
23 Q.  Did you ever have a direct ownership
24 interest in Resurgent Capital Services, LP?
25 A.  No.

1  Q.  Do you have a direct ownership interest
2  in any entity that owns Resurgent Capital Services,
3  LP?
4  A.  No.
5  Q.  Did you have a direct ownership
6  interest in an entity that owned Resurgent Capital
7  Services, LP?
8  A.  No.
9  Q.  Do you have an indirect ownership
10 interest in Resurgent Capital Services, LP?
11    MR. DeMARINO: Objection to the term
12 "indirect ownership interest." It calls for a
13 legal conclusion. You can answer.
14 A.  Yes.
15 Q.  What does the ownership interest
16 consist of?
17    MR. DeMARINO: Objection; vague,
18 confusing.
19 A.  Stock in an S corp. I don't remember
20 the name.
21 Q.  Is this S corp. the same S corp. that
22 you've mentioned in the previous responses with
23 regard to the indirect ownership interest?
24 A.  Yes.
25 Q.  Do you have a direct ownership interest

1  in Sherman Acquisition, LLC?
2  A.  No.
3  Q.  Did you ever have an --
4  A.  No.
5  Q.  -- ownership interest in Sherman
6  Acquisition, LLC?
7  A.  No.
8  Q.  Do you have a direct ownership interest
9  in an entity that owns Sherman Acquisition, LLC?
10 A.  No.
11 Q.  Did you have a direct ownership
12 interest in an entity that owned Sherman
13 Acquisition, LLC?
14 A.  No.
15 Q.  Do you have an indirect ownership
16 interest in Sherman Acquisition, LLC?
17    MR. DeMARINO: Objection. The term
18 "indirect ownership interest" calls for a legal
19 conclusion. You can answer that, Mr. Navarro.
20 A.  It sounded like you already asked that
21 one.
22 Q.  Do you have an indirect ownership
23 interest in Sherman Acquisition, LLC?
24 A.  Again, I'm not sure because I'm not
25 sure how it rolls up. The same as Originator.

1  Q.  Is it still rolled through the same LLC
2  that you referred to in the past?
3     MR. DeMARINO: Objection. Vague and
4  confusing. It assumes facts that aren't in
5  evidence. You can answer.
6  A.  I'm not sure. I'm not sure if it rolls
7  up in the same LLC. That's right.
8  Q.  But you believe that there is an
9  indirect ownership interest and you possess one in
10 Sherman Acquisition, LLC?
11 A.  No. I'm not sure.
12 Q.  You're not sure?
13 A.  Correct.
14 Q.  Do you have an indirect ownership
15 interest in an entity that -- you said you do and
16 you're just not sure. Let me stop. I apologize.
17    MR. DeMARINO: Objection. To the
18 extent --
19    MR. CAPLAN: There is no question.
20 Q.  (Continued) Do you have a direct
21 ownership interest in Meeting Street Partners II,
22 Inc.?
23 A.  No.
24 Q.  Did you ever have a direct ownership
25 interest in Meeting Street Partners II, Inc.?

1 A. I'm not sure. There were a couple of
2 Meeting Street Partners, and I'm not sure which one
3 this is.
4 Q. I was only referring to -- meaning
5 there was a Meeting Street Partners II with some
6 other form, like an LLC or -- besides that Inc.?
7 A. I'm not sure.
8 Q. So there were -- was it just two, or
9 was it more than two companies with that name?
10 A. I'm not sure.
11 Q. You're not sure?
12 A. No.
13 Q. Do you have a direct ownership interest
14 in an entity that owns Meeting Street Partners II,
15 Inc.?
16 A. I'm not sure.
17 Q. Did you have a direct ownership
18 interest in an entity that owned Meeting Street
19 Partners II, Inc.?
20 A. I'm not sure.
21 Q. Do you have an indirect ownership
22 interest in Meeting Street Partners II, Inc.?
23 A. I'm not sure.
24 Q. Did you ever have an indirect ownership
25 interest in Meeting Street Partners II, Inc.?

Page 26

1     MR. DeMARINO: Objection to the term
2 "indirect interest."
3 A. I'm not sure.
4     MR. DeMARINO: This is watching a
5 surgeon take off an arm.
6     THE WITNESS: I'm doing the best I can.
7     BY MR. CHEESEBOUROUGH:
8 Q. I've always wanted to ask: Where did
9 you get the name Sherman from?
10    MR. DeMARINO: Objection. Assumes
11 facts that aren't in evidence. You can answer.
12    MR. CAPLAN: I'm not sure it's all that
13 relevant to this inquiry, but if you have an
14 answer --
15 A. It was my dog when I was a kid.
16 Q. Are you an officer of LVNV Funding,
17 LLC?
18 A. Sorry. I don't know.
19 Q. Have you ever been an officer of LVNV
20 Funding, LLC?
21 A. I don't know.
22 Q. Did you ever hold a title with LVNV
23 Funding, LLC?
24 A. I don't know.
25 Q. Are you a director of LVNV Funding,

Page 27

1 LLC?
2 A. I don't know.
3 Q. Were you a director of LVNV Funding,
4 LLC?
5 A. I don't know.
6     MR. DeMARINO: Objection. Asked and
7 answered.
8     BY MR. CHEESEBOUROUGH:
9 Q. Are you a manager of LVNV Funding, LLC?
10    MR. DeMARINO: Objection. Asked and
11 answered.
12    MR. CHEESEBOUROUGH: He can answer it.
13    MR. DeMARINO: Yes, he can, but is
14 there any prudence of asking him if he's ever held
15 a title and then go through a list of different
16 titles?
17    MR. CHEESEBOUROUGH: There is officer,
18 director and possibly manager. I just want to know
19 if he's one of those. He can say I don't know if
20 he was an officer, director or manager.
21 Q. (Continued) Were you a manager?
22 A. What does that mean?
23 Q. Well, LVNV Funding is an LLC. It has
24 members.
25 A. Was I a member?

Page 28

1 Q. Well, it has members and usually there
2 is a managing member to an LLC.
3 A. I see. I don't know.
4 Q. Well, I just wanted to know. But you
5 don't know whether you were any of these --
6 A. Any of those.
7 Q. Did you hold the position as chief
8 executive officer of Sherman Financial Group, LLC?
9 A. Yes.
10 Q. Did you hold a position as president of
11 Sherman Financial Group, LLC?
12 A. I don't know. I was CEO. I don't know
13 if I was president, too. We're not big on titles.
14 It's not that kind of organization.
15 Q. I understand.
16    What position do you hold as president
17 of Sherman Financial Group, LLC?
18    MR. DeMARINO: Objection. Assumes
19 facts that aren't in evidence.
20    MR. CHEESEBOROUGH: That's fine. You
21 can object, but he can answer.
22    MR. DeMARINO: Your question assumes
23 that he was the president, and he said he didn't
24 know.
25    MR. CHEESEBOUROUGH: I'm sorry.

1  MR. DeMARINO: That's all. It's hard
2  to answer that.
3  (The court reporter read the pending
4  question.)
5  BY MR. CHEESEBOUROUGH:
6  Q. My question is: What position did you
7  hold at Sherman Financial Group, LLC?
8  A. You asked me if I was CEO, and I said
9  yes a couple of questions ago.
10 Q. Do you hold any other positions at
11 Sherman Financial Group, LLC?
12 A. I don't know.
13 Q. And were you ever a general manager of
14 LVNV Funding, LLC?
15 A. I think you asked me that and I said no
16 -- I said I wasn't sure.
17 Q. So your answer is I'm not sure?
18 A. Yeah.
19 Q. Does Sherman Originator have any
20 employees?
21 A. Not that I recall.
22 Q. Does Sherman Originator III have any
23 employees?
24 A. Not that I recall.
25 Q. In general terms what does Sherman

1  Originator, LLC do?
2  A. It's an entity that purchases debt from
3  large institutional sellers.
4  Q. In general terms what does Sherman
5  Financial Group, LLC do?
6  A. You would have to be more specific with
7  the question.
8  Q. What does the company do? What is
9  their function?
10 A. What does your company do?
11 Q. Mine?
12 A. Come on. That's a broad question.
13 We're a financial services company.
14 Q. I'm not trying to pick on you here.
15 A. And I'm not trying to be difficult.
16 That's a hard question.
17 Q. It's like watching paint dry, too, but
18 I just want you to know I do appreciate your
19 responses and I appreciate your time.
20 In general terms what does Sherman
21 Capital, LLC do?
22 A. It's an entity that owns Sherman
23 Financial Group.
24 Q. What do they do in the business world?
25 A. Nothing other than own Sherman

1  Financial Group.
2  MICHAEL BAHNER: Again, Robert, in
3  general terms all these companies just
4  self-perpetuate, if you want to get general.
5  BY MR. CHEESEBOUROUGH:
6  Q. In general terms what does Sherman
7  Originator III, LLC do?
8  A. The same as Sherman Originator, which
9  is purchases distressed consumer debt from
10 institutional sellers, large banks and such.
11 Q. In general terms what does Alegis
12 Group, LLC do?
13 MR. DeMARINO: Objection. I think this
14 is outside the scope of personal jurisdiction,
15 Robert. Alegis Group isn't even a named defendant
16 in this case.
17 MR. CHEESEBOUROUGH: However, you've
18 had some time here and I've learned that Alegis is
19 connected and has dealt with operations of other
20 Sherman companies that are; i.e., Resurgent. And I
21 think they are part of what goes on, and I just
22 want to clarify what that is. I don't think it's
23 -- just because it's not a named defendant that
24 it's not relevant. I just want to in general know
25 what it is that Alegis does. I understand your

1  objection, but I also understand you can answer the
2  question.
3  MR. DeMARINO: It isn't relevant to
4  personal jurisdiction. They're not a named
5  defendant. You can answer that, but this is going
6  outside the scope of personal jurisdiction, Robert.
7  We're not here to explore what other
8  possible defendants you may potentially want to
9  bring into this lawsuit. There is very specific
10 defendants. They're named here. You should be
11 exploring relationships with those entities, and I
12 think this is going to read poorly on the
13 transcript when we go before the magistrate.
14 We're not going to instruct him not to
15 answer, but that is our objection.
16 MR. CHEESEBOUROUGH: Counsel, I will
17 respect your statement and I will ask the next
18 question.
19 BY MR. CHEESEBOUROUGH:
20 Q. In general terms what does Resurgent
21 Capital Services do?
22 A. These are so open-ended questions --
23 ask you ask a more specific question maybe?
24 Q. Well, what do they do in the business
25 world? They have some function, and I'm trying to

|  |  |
|---|---|
| Page 33 | Page 35 |

Page 33

1  understand what is the function of Resurgent
2  Capital Services and what it does.
3  A.  They provide operational support to
4  those activities that need it.
5  Q.  What type of activities do they provide
6  operational support for?
7  A.  The different business activities that
8  we conduct within Sherman.
9  Q.  In general terms what does Sherman
10 Acquisition, LLC do?
11 A.  The same as Originator. Do you want me
12 to repeat it?
13 Q.  Sure, please.
14 A.  It is an entity responsible for
15 purchasing distressed consumer debt from
16 institutional sellers.
17     MICHAEL BAHNER: Counsel, we've had
18 four depositions and we bring in the chairman and
19 you're going to ask him the board chart?
20     MR. CHEESEBOUROUGH: I only have a few
21 questions on this line.
22     BY MR. CHEESEBOUROUGH:
23 Q.  In general terms what did Meeting
24 Street Partners II, LLC do?
25 A.  I'm not sure.

Page 34

1  Q.  In general terms what does Sherman
2  Capital Group, Inc. do?
3      MR. DeMARINO: Objection. Robert,
4  before he had stated he doesn't know if that entity
5  exists. He's not familiar with it.
6      MR. CHEESEBOUROUGH: I'll let him state
7  that.
8  A.  You're not asking Sherman Capital, LLC?
9  Sherman Capital, Inc.?
10 Q.  Yes, sir.
11 A.  I'm not sure.
12     MR. CHEESEBOUROUGH: I'm going to stop
13 right here.
14     (Short recess taken.)
15     THE WITNESS: Can I clarify that?
16 After thinking about that, Sherman Capital, Inc.
17 sits on top of Sherman Capital Markets, LLC.
18 That's -- I don't really know that entity because I
19 don't deal with it. So that's how that is.
20     BY MR. CHEESEBOUROUGH:
21 Q.  That's consistent with some other
22 testimony I've heard so far. You had some trouble
23 remembering the name of this new LLC.
24 A.  Yes. We just named them. We use
25 streets in Charleston. I don't remember.

Page 35

1  Q.  I just don't have a lot here. I just
2  want to try to understand about -- I'm so
3  intrigued. I can't help it.
4      This new company that was created six
5  months ago, you're not sure what the name is. You
6  know it's named after a street, but which one? Is
7  there a way to have an answer? Can you call
8  someone at your office right now to find the answer
9  to the name of that company?
10 A.  Yeah.
11     MR. CAPLAN: No. We would object.
12     MR. DeMARINO: We object to that.
13     MR. CAPLAN: You can put out a
14 discovery request and we'll take it into account.
15     MR. DeMARINO: This deposition is based
16 on the witness's personal knowledge at this time.
17     MR. CHEESEBOUROUGH: That's fine.
18     BY MR. CHEESEBOUROUGH:
19 Q.  Is there a reason why you're unable to
20 remember that? You don't have something -- you
21 seem like a very bright person. There is nothing
22 that is preventing you from physically being able
23 to remember that?
24 A.  I turned 50 this year. We have a lot
25 of -- as you can see, a lot of different entities,

Page 36

1  and I just don't happen to recall the name of it.
2  I don't know why that is material to you, but I'm
3  not going to name that entity.
4      MR. CHEESEBOUROUGH: I just want to
5  thank you for the time that you spent here.
6  I didn't need to take up very much of your time,
7  but I'm done.
8      MR. DeMARINO: Defendants don't have
9  any questions at this time. This concludes the
10 deposition.
11     (Deposition concluded at 1:40 p.m.)

Page 37

1  SIGNATURE OF DEPONENT
2  DEPONENT: BENJAMIN W. NAVARRO
   DEPOSITION DATE: June 21, 2013
3  REPORTER: Patricia T. Morrison
   CASE CAPTION: ANDREW COX, LUCINDA COX and
4  STEPHANIE SNYDER vs. SHERMAN CAPITAL, LLC, et al
5
6
7      I, the undersigned, BENJAMIN W. NAVARRO, do
8  hereby certify that I have read the foregoing
9  deposition and find it to be a true and accurate
10 transcription of my testimony.
11
12
13
14
15
16
17
18      _____
19           BENJAMIN W. NAVARRO
20
21
22
23
24
25

Page 38

1  CERTIFICATE OF REPORTER
2
3      I, Patricia T. Morrison, Registered
4  Professional Reporter and Notary Public for the
5  State of South Carolina at Large, do hereby certify
6  that the foregoing transcript is a true, accurate
7  and complete record.
8
9      I further certify that I am neither related
10 to nor counsel for any party to the cause pending
11 or interested in the events thereof.
12
13     Witness my hand, I have hereunto affixed by
14 official seal this 25th day of June 2013 at
15 Charleston, Charleston County, South Carolina.
16
17
18
19
20
21
22     _____
       Patricia T. Morrison
23     Registered Professional Reporter
       My Commission Expires
24     October 19, 2015
25

Page 39

1           I N D E X
2                                    Page  Line
3  EXAMINATION
       By Mr. Cheesebourough        3     8
4
5
6  Certificate of Reporter          37    1
7
8
9
10
11     (NO INFORMATION REQUESTED.)
12
       (NO EXHIBITS PROFFERED.)
13
14
15
16
17
18
19
20
21
22
23
24
25