UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOVANA MOUKENGESHCAIE, on behalf
of herself and all others similarly situated,

                        Plaintiff,

                -against-

ELTMAN, ELTMAN & COOPER, P.C.,
LVNV FUNDING, LLC, AND
RESURGENT CAPITAL SERVICES, L.P.,
LLC,

                        Defendants.
-------------------------------------------------------X

POLLAK, United States Magistrate Judge:

                                        **MEMORANDUM
                                        AND ORDER**
                                        14 CV 7539 (MKB) (CLP)

On December 29, 2014, plaintiff Jovana Vasquez, formerly known as Jovana

Moukengeshcaie ("Vasquez"), commenced this class action on behalf of herself and other

similarly situated New York consumers, alleging that defendants Eltman, Eltman & Cooper[1]

("Eltman"), their clients, LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, L.P.

("Resurgent"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692, et

seq., by sending Ms. Vasquez a letter falsely threatening to attach her property to satisfy a debt

when the defendants had no intention of doing so.  On August 16, 2019, the parties indicated that

they had reached a proposed settlement and filed a motion with this Court requesting an Order

granting preliminary approval of the proposed settlement as set forth in the Class Settlement

Agreement (the "Settlement Agreement").[2]  (See Sett. Agr.).[3]

---

[1] The firm subsequently became known as "Eltman Law, P.C." and, as of the filing of the
instant motion, is in the process of winding down its operations.  (See discussion infra at 17).
[2] See Consent Motion to Certify Class for Purposes of Settlement Only, Preliminary
Approval of Class Settlement Agreement, and Appointment of Class Counsel, filed August 16,
2019, ECF No. 151.
[3] Citations to "Sett. Agr." refer to the original Settlement Agreement, filed on August 16,

For the reasons set forth below, the Court grants the request for preliminary approval of the settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

Following the filing of the initial Complaint in this matter, plaintiff filed an Amended Complaint on May 8, 2015, adding additional claims on her own behalf and on behalf of a subclass of consumers.[4] The new claims were based on Ms. Vasquez's discovery that the judgment upon which the defendants were attempting to collect from her had not been properly assigned to LVNV and therefore LVNV had no legal right to collect upon the judgment in any manner. (Am. Cmpl. ¶ 1).[5] On March 31, 2016, the court dismissed several of plaintiff's claims but denied defendants' motion to dismiss the case in its entirety.[6] On September 29, 2017, the Court granted plaintiff's motion to file a Second Amended Complaint, which added a demand for actual damages on behalf of the Subclass.[7]

By Order dated April 10, 2018, the case was referred to mediation; mediator Professor Paul Radvany held an all-day mediation session on June 28, 2018. During that session, the parties reached a settlement in principle. This Court then held an additional settlement conference with the parties on March 27, 2019, at their request, to assist in resolving the remaining issues. The case resolved at that conference, and the parties now seek preliminary

---

2019 as Exhibit A to the Consent Motion to Certify Class for Purposes of Settlement Only, Preliminary Approval of Class Settlement Agreement, and Appointment of Class Counsel, filed August 16, 2019, ECF No. 151.

[4] In the Amended Complaint ("Am. Cmpl."), plaintiff voluntarily dismissed claims against certain other corporate defendants, leaving only Eltman, LVNV and Resurgent as defendants in the matter. (See Amended Complaint, ECF No. 47, filed May 8, 2019).

[5] See note 4, supra.

[6] Memorandum and Order, ECF No. 85., dated March 31, 2016.

[7] Order, ECF No. 119, dated September 29, 2019.

approval of the class settlement.

A. Settlement Agreement

The proposed settlement provides for a fund of $100,000 to cover a statewide class

defined as:

> All consumers with New York addresses, who:  (a) within one year
> of December 29, 2014; and (b) who Defendant EEC claimed owed
> a debt to Defendant LVNV or Defendant Resurgent; (c) were sent a
> debt collection letter by Defendant EEC in a form materially identical
> or substantially similar to the letter attached to Plaintiff's Second
> Amended Complaint as Exhibit A sent to the Plaintiff; or (d) were
> sent a debt collection letter threatening to refer the recipient's account
> to an "asset investigation department"; or (e) were sent a debt collection
> letter implying that real estate, cars, sports utility vehicles, trucks, boats
> motorcycles, and other personal property are non-exempt assets that are subject to
> attachment by creditors; and (f) the letter was not returned by the postal
> service as undelivered.

(the "Class").  (Sett. Agr. ¶ 9).  According to the Settling Defendants,[8] there are approximately

8,000 members of the Class.  (Id.)  The Settlement Fund of $100,000 is to be divided equally

among the 8,000 Class Members except for those who exclude themselves or cannot be located.

(Pl.'s Mem. at 3).[9]

In addition to the monetary payments to be made to Class Members, the Settlement

Agreement also provides for debt-forgiveness benefits of $318,500 to be distributed to the 432

members of the Subclass.[10]  (Id. at 4).  The benefit to the Subclass is in the form of a credit to be

---

[8] During the course of settlement negotiations, plaintiff learned that defendant Eltman
was winding down its operations.  (Plaintiff's Memorandum in Support of the Motion to Certify
Class ("Pl.'s Mem."), attachment 5 to ECF No. 151, filed August 16, 2019, at 4).  Since it has no
remaining assets, and will not be contributing anything of value toward the Settlement, Eltman is
not included as a party to the Settlement Agreement.  (Id. at 4-5).

[9] See note 8, supra.

[10] The Subclass is defined in paragraph 9 of the Settlement Agreement; all members of
the Subclass are also members of the Class.  (See Sett. Agr. ¶ 9; Pl.'s Mem. at 6).

applied to any Subclass Members' balance, and if the balance becomes negative, then those Subclass Members will receive cash rebates in addition to the payments paid out from the Settlement Fund of $100,000. (Id.)

In addition to the amounts to be provided to the Class Members and the Subclass Members, the Settlement Agreement provides for a service award to plaintiff Vasquez in the amount of $15,000. (Id. at 10). The Agreement further contemplates an award of attorneys' fees and costs, of not more than $200,000, which counsel will seek in a separate petition at the time the plaintiff moves for approval of the entry of a Final Approval Order. (Id. at 12). The parties represent that neither the service award to Ms. Vasquez, or the costs of notice, distribution, and payment of the Settlement Administrator's fees will be deducted from the Fund. (Id. at 4, 10). Similarly, any award of fees for Class Counsel will not be deducted from the amount to be set aside for the Fund. (Id. at 4, 12). The Agreement also contains a provision for a *cy pres* award to be given to the National Consumer Law Center; there will be no reversion to the defendants. (Id. at 12).

The parties propose the following schedule:  1) within 30 days of an Order of Preliminary Approval of the Settlement, defendants will provide to the Claims Administrator a final list of Class Members; 2) within 30 days of receiving the final list, the Administrator shall mail by U.S. mail the written Notice to Class Members (attached as Exhibit A to the Settlement Agreement), along with a Claim Form; 3) Class Members then have 90 days from the date of the Preliminary Approval Order to submit a written request for exclusion from the settlement or to file a written objection with the Court; 4) any objections will be forwarded by Class Counsel to counsel for the settling defendants; 5) a final fairness hearing will be held and if approved, the Court will issue a Final Approval Order. (Sett. Agr. ¶¶ 19, 20, 27, 31).

## DISCUSSION

### A. Rule 23 Class Certification

Plaintiff moves pursuant to Federal Rule of Civil Procedure 23 for certification, for purposes of settlement, of the Class and Subclass of consumers from December 29, 2014 to December 29, 2015. (Sett. Agr. ¶ 9).

#### 1. Legal Standards

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, plaintiffs also must satisfy one of the three subdivisions of Rule 23(b): (1) that separate actions pose a risk of inconsistent adjudications or would substantially impair the ability of other individuals to protect their interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or fact predominate over individual questions, and a class action is superior to other methods for bringing suit. Fed. R. Civ. P. 23(b). See generally Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997); Annunziato v. Collecto, Inc., 293 F.R.D. 329, 334 (E.D.N.Y. 2013). It is plaintiffs' burden to establish compliance with each of the requirements of Rule 23 by a preponderance of the evidence, In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013), but in analyzing the issue of certification, the court accepts as true the allegations in the complaint regarding the merits of the claim. See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454

5

(E.D.N.Y. 1996) (citation omitted). While courts are required to conduct a "rigorous" analysis, Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465-66 (2013), the court may exercise "broad discretion" and "take a liberal rather than a restrictive approach" when reviewing whether to certify a class. Annunziato v. Collecto, Inc., 293 F.R.D. at 334.

Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." Collier v. Montgomery Cty Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000). For purposes of settlement only, the Settling Defendants do not oppose conditional certification. (See Pl.'s Mem. at 5); see also 4 Alba Conte, et al., Newberg on Class Actions § 11.27 (4th ed. 2002) (providing "[w]hen the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only").

2.   The Requirements of Rule 23(a)

(a) Numerosity

Turning to the Rule 23(a) factors, the court may certify a class only if the class is so numerous that joinder becomes impractical. Fed. R. Civ. P. 23(a)(1). The standard for presuming numerosity is 40 or more members. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

In this case, there are approximately 8,000 potential Class Members, and 432 potential Subclass Members, which is more than sufficient for numerosity. (Pl.'s Mem. at 14). Thus, the allegations in the Second Amended Complaint clearly satisfy the standard of numerosity.

(b) Commonality

In determining whether plaintiff can show that the claims of the potential Rule 23 Class Members share common questions of law or fact, the Rule does not require that "'all questions of law or fact raised be common.'" Savino v. Computer Credit, Inc., 173 F.R.D. at 352 (emphasis in original) (quoting Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)). As long as "common questions . . . predominate," any differences in the circumstances raised by individual members will not defeat the requirement of commonality. In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010). In other words, "there need only be a single issue common to all members of the class," as the "critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged." Savino v. Computer Credit, Inc., 173 F.R.D. at 352.

Here, there are several common legal and factual issues. More specifically, the Class Members' and plaintiff's claims involve whether defendants' debt collection letter failed to conform to the requirements of the FDCPA, and whether defendants violated the FDCPA in their efforts to collect and enforce judgments. (Sec. Am. Cmpl. ¶ 164(b)).[11] As such, the Court finds that there are common legal and factual issues sufficient to satisfy the requirements of Rule 23(a)(2).

(c) Typicality

Rule 23(a)(3) requires that the lead plaintiff's claims be typical of the claims of the class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."

---

[11] Citations to "Sec. Am. Cmpl." refer to plaintiff's Second Amended Complaint, filed October 8, 2017, ECF No. 120.

Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).  Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the Class Members' claims.  Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57).

Here, the claims of the Named Plaintiff satisfy the requirements of the Rule in that they, like other members of the proposed Class, allege claims based on the same collection practices that form the bases of the Class Members' claims.  (Pl.'s Mem. at 14).  Plaintiff's claims are therefore sufficiently typical to warrant certification.

### (d) Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test.  In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992).  First, there must be a showing that class counsel is "'qualified, experienced and generally able' to conduct the litigation."  Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)).  Second, the Class Members' interests may not be "'antagonistic'" to one another.  County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990) (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d at 562).

Pursuant to Fed. R. Civ. P. 23(g), the Court must assess the adequacy of proposed Class Counsel, looking to the work counsel has done in identifying and investigating the potential

8

claims, counsel's experience in handling class actions and claims of the type at issue in the case, and counsel's knowledge of the applicable law.  See Fogarazzo v. Lehman Bros., Inc. 232 F.R.D. 176, 182 (S.D.N.Y. 2005); see also In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (stating: "'(1) there should be no conflict between the interests of the class and the Named Plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation'") (quoting Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 412-13 (S.D.N.Y. 2004)); Babcock v. Computer Assocs. Int'l, Inc., 212 F.R.D. 126, 131 (E.D.N.Y. 2003) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d at 291).  The Court should also consider the resources that counsel is able to commit in representing the Class.

Here, the proposed Class has been represented by experienced attorneys from the Bromberg Law Office P.C. (the "Firm").  (Pl.'s Mem. at 14-15; see also Bromberg Decl.).[12] Mr. Bromberg notes in his Declaration that he is an experienced trial and appellate litigator, and has participated in numerous consumer fraud action cases, listed in his Declaration.  (Bromberg Decl. ¶ 20).  Similarly, Mr. Miller also asserts that he has participated in consumer fraud class action litigation and lists his experience in his Declaration.  (Miller Decl. ¶ 15).  Both attorneys detail numerous awards, service on various committees, and speaking engagements that further

---

[12] Citations to "Bromberg Decl." refer to the Declaration of Brian L. Bromberg in Support of Plaintiff's Motion for Preliminary Approval and Appointment as Class Counsel, dated August 16, 2016, ECF No. 151, attachment 6.  In addition to Mr. Bromberg, plaintiff has been represented in this matter by Jonathan R. Miller, formerly an attorney with the Firm from 2013 until 2017, when he started his own practice, Law Office of Jonathan R. Miller, PLLC, d/b/a Salem Community Law Office, located in Winston-Salem, N.C. (See Attorney Jonathan R. Miller's Declaration in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Class Certification, and Appointment as Class Counsel, dated August 16, 2019 ("Miller Decl.")), ECF No. 151, attachment 7.

qualify them to act as Class Counsel in this matter.  (Bromberg Decl. ¶¶ 21-33; Miller Decl. ¶¶ 16-18).  Thus, counsel appears to be well-versed in the substantive law at issue and is well-qualified to represent the interests of the class.  Moreover, since the inception of this case, plaintiff's attorneys have demonstrated to this Court their ability to prosecute this case diligently and to represent the interests of the potential Rule 23 Class, as shown by the extensive effort that they have engaged in to litigate and settle this action on behalf of all Class Members.  Based on the legal experience of the attorneys involved in this case, particularly their extensive experience in similar cases, the Court agrees that Class Counsel is "well-qualified to serve as lead counsel in this matter."  In re Fuwei Films Sec. Litig., 247 F.R.D. at 439.

Second, the Named Plaintiff does not have any interests that are antagonistic to or at odds with those of the Class Members.  (Pl.'s Mem. at 15).  Rather, the Named Plaintiff seeks the same relief as all other Class Members.  (See id. at 10, 15).  In order for a potential or actual conflict to defeat certification, it "must be fundamental."  In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks and citations omitted).  There is no evidence that the interests of the Named Plaintiff are antagonistic to those of the Class Members.  Based on the nature of plaintiff's claims, the Court finds that the Named Plaintiff's claims are so interrelated with those of the other potential Rule 23 Class Members that she will be an adequate class representative.

3.  The Requirements of Rule 23(b)(3)

(a)  Common Questions Predominate Over Individual Issues

Plaintiff must also establish that the proposed class meets the requirements of Fed. R. Civ. P. 23(b)(3).  Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and

common issues must predominate in order to warrant adjudication as a class. Amchem Prods.,
Inc. v. Windsor, 521 U.S. at 623. Courts focus on whether there are common questions related
to liability. See Smilow v. Southwest Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003);
Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007). Even if there
are defenses that affect Class Members differently, that alone "does not compel a finding that
individual issues predominate over common ones." In re Visa Check/MasterMoney Antitrust
Litig., 280 F.3d 124, 138 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208
F.3d 288, 296 (1st Cir. 2000)), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24
(2d Cir. 2006).

Since the Class Members' core factual allegations and legal theories predominate over
any factual or legal variations among Class Members, the Court finds that common questions
predominate in this case and plaintiff has therefore satisfied Rule 23(b)(3). See Torres v.
Gristede's Corp., No. 04 CV 3316, 2006 WL 2819730 at *16 (S.D.N.Y. Sept. 29, 2006).

(b)  Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiff must demonstrate that "a class action
would achieve economies of time, effort, and expense, and promote uniformity of decision as to
persons similarly situated, without sacrificing procedural fairness or bringing about other
undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal
quotation marks omitted). The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the
> prosecution or defense of separate actions; [(2)] the extent and
> nature of any litigation concerning the controversy already begun by
> or against class members; [(3)] the desirability or undesirability of

concentrating the litigation of the claims in the particular forum; and
[(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, because there is a predominance of common questions, and because the individual Class Members' alleged damages may be relatively small, the expense and burden of individual litigation would make it impossible for all of the Class Members to individually redress the alleged harm done to them. Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012). Finally, proceeding as a class will preserve judicial resources by consolidating common issues of fact and law, and avoid repetitive proceedings and inconsistent adjudications. See Aponte v. Comprehensive Health Mgmt, No. 10 CV 4825, 2011 U.S. Dist. LEXIS 60882, *34 (S.D.N.Y. June 2, 2011).

As a result, the Court accepts that a class action is the superior method of resolution in this case.

B.  Preliminary Approval of the Class Settlement

Plaintiff seeks preliminary approval of the proposed settlement, as memorialized in the Settlement Agreement.

1.  Legal Standards

To grant preliminary approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e).  Judicial policy favors the settlement and compromise of class actions.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin

12

Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Whether a settlement is fair is a

determination within the sound discretion of the court.  Levitt v. Rodgers, 257 Fed. App'x 450,

453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process:  first, the

court preliminarily approves the proposed settlement by evaluating the written submissions and

informal presentation of the settling parties and the negotiating process leading to the settlement,

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at 116; and second, the court holds a

fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable .

. . ." Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5,

2012).  In evaluating a proposed settlement in order to grant preliminary approval, the court need

only find that there is "probable cause" to submit the settlement to the Class Members and to

hold a fairness hearing.  Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL

5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d

631, 634 (2d Cir. 1980)).

For procedural fairness, the court must determine if the settlement was "achieved through

arms-length negotiations by counsel with the experience and ability to effectively represent the

class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999)

(citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche

Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the district court must "determine[] a

settlement's fairness by examining the negotiating process leading up to the settlement as well as

the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10

CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013).  In reviewing a proposed

settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a

product of collusion, and that the class members' interests [were] represented adequately.'"

Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted)

(quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

For substantive fairness, the Second Circuit has enumerated nine factors to guide courts

in evaluating a proposed settlement:

> (1) [T]he complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted),

abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see

also D'Amato v. Deutsche Bank, 236 F.3d at 86; Garcia v. Pancho Villa's of Huntington Village,

No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).  Although the Court is not

required to make a finding of fairness as to the underlying settlement at this time, the Grinnell

factors are instructive.  See Torres v. Gristede's Operating Corp., Nos. 04 CV 3316, 08 CV

8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that "[p]reliminary

approval of a settlement agreement requires only an initial evaluation of the fairness of the

proposed settlement on the basis of written submissions and an informal presentation by the

settling parties") (internal quotation marks and citations omitted).

2.  Analysis of Procedural Fairness

The parties represent that the proposed settlement was entered into only after plaintiff's

counsel thoroughly investigated the events and transactions underlying Plaintiff's and the Class

Members' claims." (Pl.'s Mem. at 21). This included investigating the potential claims in this

case, reviewing the letter received by the Named Plaintiff, reviewing and researching similar

claims, and engaging in extensive arms-length negotiations with an independent mediator and

this Court that resulted in substantial recovery for the Class Members. (Id. at 21-22). This

allowed counsel to thoroughly assess the challenges associated with prosecuting the case through

trial, post-trial motions and appeals. (Id.)

Given the presumption of fairness when a class settlement has been reached after "arm's-

length negotiations between experienced, capable counsel after meaningful discovery," see Wal-

Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that the process of

reaching the proposed settlement in this case was procedurally fair.

3.  Analysis of Substantive Fairness

    (a)  Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, it is clear that with approximately 8,000 Class Members

and 432 Subclass Members, trial in the case would be complex. See Romero v. La Revise

Assocs., L.L.C., 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014); Garland v. Cohen & Krassner, No. 08

CV 4626, 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) ("Given the complexity of any

class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued

litigation would have required extensive time and expense"). Thus, the parties seek to avoid

significant expense and delay that would result from continuing the litigation.

Thus, this factor of potential protracted litigation favors settlement.

15

(b)   <u>Reaction of Class to Settlement</u>

Although notice of the Settlement has not yet been issued to the Class Members,

plaintiff's counsel notes that given that Eltman is not participating in the Settlement, the Class

Members and Subclass Members are not relinquishing any claims that they may have against

Eltman. (Pl.'s Mem. at 19).  Moreover, the release as negotiated is fairly narrow in that the Class

Members will not be giving up their right to use facts and legal theories as defenses to the

Settling Defendants' efforts to execute upon judgments.  (<u>Id.</u>)  Thus, the Settlement provides for

meaningful payments to the Class Members for damages that may be difficult to prove, without

giving up these other rights.  (<u>Id.</u>)  Thus, although there is no information available at this time

regarding the Class' reaction to the Settlement, it seems likely that the reaction will be favorable

and therefore, this factor weighs slightly in favor of settlement.

(c)   <u>The Stage of the Proceedings and Amount of Discovery Completed</u>

The parties believe they meet this standard. (<u>See id.</u> at 1-5) (describing the course of this

litigation to date).  They have adequately evaluated the merits of the case, and participated in an

all-day mediation.  (<u>Id.</u> at 3)

In addition, there is a risk should the case proceed.  As plaintiff's counsel notes, the Class

will be receiving approximately 84% of the maximum statutory damages allowable in an

FDCPA case, without the risks associated with a complex, expensive and lengthy litigation, and

the risks of maintaining a class action through trial, including the difficulties in establishing both

liability and damages.  (<u>Id.</u> at 20).  While counsel is confident and experienced, the inevitable

process of trial and appeal is uncertain in terms of outcome and duration.

When counsel has sufficient information to appreciate the merits of the case, settlement

is favored.  <u>Velez v. Novartis Pharm. Corp.</u>, No. 04 CV 09194, 2010 WL 4877852, at *13

16

(S.D.N.Y. Nov. 30, 2010); In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537.  Thus, this

factor favors approval of the settlement.

### (d)  Establishing Liability and Damages

The risk of establishing liability also favors settling this dispute.  Although plaintiff's

counsel have expressed confidence in the merits of their claims, the defendants have not

admitted or conceded fault, liability, or wrongdoing.  (Sett. Agr. ¶ 3).  Thus, plaintiff's

likelihood of success should be evaluated in light of the risks of trial and appeal and the

prolonged nature of this type of litigation.  The defendants have been well represented by highly

competent counsel who would likely pursue all potential defenses and raise multiple issues in the

course of the litigation, making the outcome of plaintiffs' claims uncertain.

Therefore, the risks of establishing liability and damages weigh in favor of settlement.

### (e)  Maintaining the Class Through Trial

Plaintiff's counsel acknowledges that there is a risk associated with obtaining and

maintaining class certification through trial.  (Pl.'s Mem. at 20).  If plaintiff was to move for

class certification, defendant may well oppose the motion and move for decertification.  This

process would require extensive briefing by both parties and inherently involves risk, expense,

and delay.  Since the proposed settlement would eliminate the aforementioned risk, expense, and

delay, the Court finds that this factor favors approval.

### (f)  Ability of Defendant to Withstand a Greater Judgment

The parties do not address this issue in their papers, although plaintiff does note that one

defendant, Eltman, has ceased operations and has no assets.  (Pl.'s Mem. at 4-5).  Thus, even if

the litigation were to continue, plaintiff would be unlikely to recover any judgment awarded

17

against Eltman. (Id.)  Moreover, this factor standing alone does not mean that the settlement is unfair.  (Id.); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005).

(g)   Range of Reasonableness of Settlement Fund

The Settlement Agreement provides that defendants will pay $100,000 toward the Class and $318,500 in debt forgiveness.  (Pl.'s Mem. at 3-4).  Although plaintiff acknowledges that it is possible that they could recover a greater amount at trial, plaintiff also recognizes the inherent risks of trial.  Plaintiff's counsel contend that based on their calculations, the Settlement represents 84% of the Class' statutory damages.  (Id. at 18).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).  When the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiffs' claims with respect to damages in particular, the agreement is reasonable.  See In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Even absent the risk of establishing damages at trial, the value of the Settlement Fund justifies settling this case.  Under the Settlement Agreement, Class Members will each receive their proportionate share of the $100,000 settlement fund.  (Pl.'s Mem. at 10).  Even though the Class Members will not be receiving 100% of their statutory damages, the Court finds that the total award is fair and reasonable.

On the basis of the foregoing discussion of the Grinnell factors, the Court finds that the proposed settlement is fair and reasonable under the circumstances present in this case.

18

C.  Appointment of the Class Counsel

The Court appoints plaintiff's counsel to act as Class Council in this matter.   In

evaluating the adequacy of Class Counsel, Rule 23(g) requires the Court to consider:  (1) the

work done by counsel in investigating the potential claims in the case; (2) counsel's experience

in handling similar class actions and other complicated litigation; (3) counsel's knowledge of the

applicable law; and (4) the resources counsel will expend to represent the class.  Fed. R. Civ. P.

23(g).  In this case, as noted supra, Class Counsel have extensive experience litigating and

settling consumer cases, and thus they are well-versed in the applicable law.  (Bromberg Decl. ¶

20; Miller Decl. ¶ 15).  Moreover, plaintiff's counsel have performed substantial work in this

litigation, identifying, investigating, prosecuting, and settling the claims on behalf of the affected

individuals.  (See Pl.'s Mem. at 1-5.).

Accordingly, the Court finds that proposed Class Counsel satisfy the criteria of Rule

23(g), and appoints Jonathan Robert Miller and Brian L. Bromberg as Class Counsel to represent

the Class Members in this matter.

D.  The Proposed Notice

Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.

23(e)(1).  Under Rule 23(e)(1)(B), the "'[c]ourt has virtually complete discretion as to the

manner of giving notice to class members.'"  In re MetLife Demutualization Litig., 689 F. Supp.

2d at 345 (quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)).  In a

Rule 23(b)(3) class action such as this, "the best notice that is practicable under the

circumstances, including individual notice to all members who can be identified through

reasonable effort" must be provided to the class.  Fed. R. Civ. P. 23(c)(2)(B).[13]  In Eisen v.

Carlisle & Jacquelin, the Supreme Court held that individual notice, as opposed to general

published notice, is required by Rule 23(c)(2) for Class Members who are identifiable through

reasonable effort.  417 U.S. at 173-76 (holding that "individual notice to identifiable class

members is not a discretionary consideration" but rather, is an "unambiguous requirement of

Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177.  Notice is adequate if it

"'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement

and of the options that are open to them in connection with the proceedings.'"  Wal-Mart Stores,

Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).

Notice need not be perfect, but must be the best notice practicable under the circumstances, and

each and every class member need not receive actual notice, so long as class counsel acted

reasonably in choosing the means likely to inform potential Class Members.  See Weigner v.

City of New York, 852 F.2d 646, 649 (2d Cir. 1988).

 Here, the Notice provides an overview of the claims, a definition of the proposed class to

be certified, and the date, time, and location of the Fairness Hearing.  (See Proposed Notice).[14]

The Notice also sets forth the options available to Class Members, including what will happen if

---

[13] The Rule further provides that, for any class certified under Rule 23(b)(3), the notice must "concisely and clearly state . . . (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

[14] Citations to "Proposed Notice" refer to plaintiff's proposed Notice of Class Action Lawsuit and Fairness Hearing, filed on August 16, 2019, attached as Exhibit 2 to the Consent Motion to Certify Class for Purposes of Settlement Only, Preliminary Approval of Class Settlement Agreement, and Appointment of Class Counsel, ECF No. 151.

a Class Member does nothing in response to the Notice, excludes himself or herself from the Settlement, or objects to the Settlement.  (Id.)  Moreover, the Notice also provides an explanation as to how the settlement amount is to be allocated to each Class Member.  (Id.)

The Court finds that the Notice fairly and adequately advises Class Members of the terms of the Settlement, as well as the right of Class Members to opt out of or to object to the Settlement, and to appear at the Fairness Hearing.  Thus, the Court approves the Proposed Notice.

E.  Approval of Service Award for Plaintiffs

Plaintiff seeks approval of an incentive award of $15,000 to Named Plaintiff Vazquez. (Pl.'s Mem. at 10).  An "incentive" or "service" award is common in class actions and serves to compensate plaintiffs for their time and effort in the pursuit of litigating the claim.  See In re Nissan Radiator/Transmission Cooler Litig., 2013 WL 4080946, at *15; Capsolas v. Pasta Res. Inc., 2012 WL 4760910, at *9.  The general "guiding standard" is, broadly, "the existence of special circumstances including the personal risk (if any) incurred by the plaintiff[] in becoming and continuing as a litigant . . . [or] any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery." Gay v. Tri-Wire Eng'g Solutions, Inc., No. 12 CV 2231, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014) (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

Courts often grant named plaintiffs in class action cases an enhanced award, either in the form of a flat fee or a multiplied amount of their share of the settlement fund.  Compare Capsolas v. Pasta Res. Inc., 2012 WL 4760910, at *10 (awarding a service award of $20,000 to one Named Plaintiff and $10,000 for the remaining named plaintiffs), with Velez v. Majik Cleaning

21

Serv., Inc., No. 03 Civ. 8698, 2007 WL 7232783, at *7 (June 25, 2007) (awarding named

plaintiffs "twice the amount of the award that other class members will receive").

      In seeking a Service Award of $15,000 for the Named Plaintiff, plaintiff's counsel

explains that the award is "compensation for her damages and as an incentive award in

recognition of her services as Class representative" (Sett. Agr. ¶ 10(c); Pl.'s Mem. at 10).[15]

However, beyond stating that the award is in recognition of the Named Plaintiff's services,

plaintiff has failed to provide any factual basis for the Service Award. As such, the Court

declines to grant preliminary approval to the Service Award at this time. The Court will consider

the basis for the Service Award at the Fairness Hearing (scheduled infra at 23).

F.   Approval of the Requested Attorneys' Fees and Costs

      Plaintiff's counsel represent that they will seek no more than $200,000 in attorneys' fees.

(Pl.'s Mem. at 12). The parties have indicated that Class Counsel will petition the Court for an

award at the Final Fairness Hearing, and the application for attorneys' fees will be considered

separately from the Court's consideration of the Settlement. (Pl.'s Mem. at 12). Defendants will

not oppose plaintiffs' counsel's application for attorneys' fees. (Sett. Agr. ¶ 12). The Court

therefore reserves decision on the fairness of the attorneys' fees until after the Final Fairness

Hearing.

CONCLUSION

      Accordingly, for the reasons stated above, the Court grants plaintiff's motion for

preliminary approval of the proposed settlement as articulated in the Settlement Agreement and

certification of the class for the purposes of settlement be approved. The Court further Orders

---

[15] Defendants do not object to the Service Award. (Sett. Agr. ¶ 10(c)).

that:  (1) Jonathan Robert Miller and Brian L. Bromberg be appointed as Class Counsel, and (2) the proposed Notice of Class Action Lawsuit Settlement be approved and distributed to the Class.  A Fairness Hearing is scheduled for **March 17, 2020 at 11:00 a.m.**

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      October 15, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

23