UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOVANA MOUKENGESHCAIE, on behalf
of herself and all others similarly situated,

                        Plaintiff,

               -against-

ELTMAN, ELTMAN & COOPER, P.C.,
LVNV FUNDING, LLC, AND
RESURGENT CAPITAL SERVICES, L.P.,
LLC,

                    Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
14 CV 7539 (MKB) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

       On December 29, 2014, plaintiff Jovana Vasquez, formerly known as Jovana

Moukengeshcaie ("Vasquez"), commenced this class action on behalf of herself and other

similarly situated New York consumers, alleging that defendants Eltman, Eltman & Cooper[1]

("Eltman"), their clients, LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, L.P.

("Resurgent"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et

seq., by sending Ms. Vasquez a letter falsely threatening to attach her property to satisfy a debt

when the defendants had no intention of doing so.

       On August 16, 2019, the parties indicated that they had reached a proposed Settlement,

and filed a motion with this Court requesting an Order granting preliminary approval of the

proposed Settlement as set forth in the Class Settlement Agreement (the "Settlement

---

[1] The firm subsequently became known as "Eltman Law, P.C." and is in the process of
winding down its operations.  (See discussion infra at 5, n. 10).

Agreement").[2]  (See Sett. Agr.).[3]  On October 15, 2019, this Court issued an Order granting

plaintiff's unopposed motion for provisional certification of a settlement class and preliminary

approval of the Settlement reached with defendants.  (10/15/19 Order[4]).  On March 27, 2020, the

parties submitted a consent motion for final settlement approval.  This Court held a Fairness

Hearing on April 1, 2020.

     For the reasons set forth below, the Court respectfully recommends that the District Court

grant the consent motion in its entirety.

FACTUAL AND PROCEDURAL BACKGROUND

A.  Background

     Plaintiff alleges that she is a resident of Queens, N.Y. and a "consumer" as defined by

Section 1692a(3) of the FDCPA.  (Sec. Am. Compl.[5] ¶ 10).  According to the plaintiff's

proposed Second Amended Complaint ("Complaint"), defendant Eltman, Eltman & Cooper P.C.

("EEC") is a professional corporation, organized under the laws of the State of New York, and

located at 140 Broadway, New York, N.Y.  (Id. ¶ 11).  Plaintiff alleges that EEC is a "debt

collector" as defined by the FDCPA, in that it is regularly engaged in the business of collecting

debts owed by consumers through telephone calls and correspondence.  (Id.)  Plaintiff further

---

[2] See Consent Motion to Certify Class for Purposes of Settlement Only, Preliminary Approval of Class Settlement Agreement, and Appointment of Class Counsel, filed August 16, 2019, ECF No. 151.

[3] Citations to "Sett. Agr." refer to the original Settlement Agreement, filed on August 16, 2019 as Exhibit A to the Consent Motion to Certify Class for Purposes of Settlement Only, Preliminary Approval of Class Settlement Agreement, and Appointment of Class Counsel, ECF No. 151-1.

[4] Citations to "10/15/19 Order" refer to this Court's Order granting preliminary approval of the settlement and provisional certification of settlement class, dated October 15, 2019, ECF No. 152.

[5] Citations to "Sec. Am. Compl." refer to plaintiff's proposed Second Amended Complaint, attached to plaintiff's Notice of Motion, dated October 17, 2016, ECF No. 109-3.

alleges that defendant LVNV Funding LLC ("LVNV") is a limited liability company, organized under Delaware law, with a principal place of business located in Las Vegas, Nevada.  (Id. ¶ 25). According to plaintiff, LVNV is a debt collector as defined by 15 U.S.C. §§ 1692a(4) and (6) because its business consists solely of purchasing, owning, and facilitating the collection of consumer debts.  (Id. ¶¶ 26-29).

Plaintiff alleges that defendant Resurgent Capital Services L.P. ("Resurgent") is a limited partnership organized under the laws of Delaware, with its principal place of business in Greenville, S.C.  (Id. ¶ 14).  Plaintiff further alleges that Resurgent acts as the "master servicer" of all defaulted consumer debt owned by LVNV.  (Id. ¶ 15).  According to the Complaint, defendant Resurgent services, manages, and collects every charged-off consumer debt purchased by LVNV (id. ¶¶ 16-17), and Resurgent has been designated by LVNV as its "attorney-in-fact," retained by LVNV to service, liquidate, and manage accounts receivable on behalf of LVNV. (Id. ¶ 18).

In her first Amended Complaint, filed on May 8, 2015, plaintiff asserted claims on behalf of a class of New York consumers who allegedly owed debts to LVNV, alleging that in many instances, defendants were seeking to collect on judgments that had not been properly assigned under state law.  Following the filing of the initial Complaint in this matter, plaintiff filed an Amended Complaint on May 8, 2015, adding additional claims on her own behalf and on behalf of a subclass of consumers.[6]  The new claims were based on Ms. Vasquez's discovery that the judgment upon which the defendants were attempting to collect from her had not been properly

---

[6] In the Amended Complaint ("Am. Cmpl."), plaintiff voluntarily dismissed claims against certain other corporate defendants, leaving only Eltman, LVNV and Resurgent as defendants in the matter.  (See Am. Cmpl., ECF No. 47, filed May 8, 2019).

assigned to LVNV and therefore LVNV had no legal right to collect upon the judgment in any manner.  (See Am. Cmpl. ¶¶ 1, 2).[7]  On March 31, 2016, the District Court dismissed several of plaintiff's claims but denied defendants' motion to dismiss the case in its entirety.[8]  On September 29, 2017, the Court granted plaintiff's motion to file a Second Amended Complaint, which added a demand for actual damages on behalf of the Subclass.[9]

By Order dated April 10, 2018, the case was referred to mediation; mediator Professor Paul Radvany held an all-day mediation session on June 28, 2018.  During that session, the parties reached a settlement in principle.  This Court then held an additional settlement conference with the parties on March 27, 2019, at their request, to assist in resolving the remaining issues.  On October 15, 2019, this Court issued an order granting plaintiff's unopposed motion for provisional certification of a settlement class and preliminary approval of the Settlement reached with defendants.

B.  Settlement Agreement

The total proposed settlement amounts to $633,500: 1) $100,000 in cash relief to be distributed among a statewide class; 2) $318,500 in debt forgiveness to the Subclass; 3) a $15,000 service award to plaintiff Vasquez, and; 4) $200,000 in attorney's fees.  Each is discussed below.

The proposed Settlement provides for a fund of $100,000 to cover a statewide class defined as:

> All consumers with New York addresses, who:  (a) within one year
> of December 29, 2014; and (b) who Defendant EEC claimed owed
> a debt to Defendant LVNV or Defendant Resurgent; (c) were sent a

---

[7] See note 6, supra.
[8] Memorandum and Order, ECF No. 85, dated March 31, 2016.
[9] Order, ECF No. 119, dated September 29, 2019.

> debt collection letter by Defendant EEC in a form materially identical
> or substantially similar to the letter attached to Plaintiff's Second
> Amended Complaint as Exhibit A sent to the Plaintiff; or (d) were
> sent a debt collection letter threatening to refer the recipient's account
> to an "asset investigation department"; or (e) were sent a debt collection
> letter implying that real estate, cars, sports utility vehicles, trucks, boats
> motorcycles, and other personal property are non-exempt assets that are subject to
> attachment by creditors; and (f) the letter was not returned by the postal
> service as undelivered.

(the "Class"). (Sett. Agr. ¶ 9). At the time the Settlement was negotiated, the Settling

Defendants[10] estimated that there were approximately 8,000 members of the Class. (Id.) That

number is slightly less based on information obtained by the Claims Administrator. (See n. 14,

infra). The Settlement Fund of $100,000 is to be divided equally among the 8,000 Class

Members, except for those who exclude themselves or cannot be located. (Pl.'s Mem. at 3).

In addition to the monetary payments to be made to Class Members, the Settlement

Agreement also provides for debt-forgiveness benefits of $318,500 to be distributed to the 392

members of the Subclass.[11] (Id. at 4; Defs.' 4/6/2020 Ltr.[12]). The benefit to the Subclass is in

the form of a credit to be applied to any Subclass Members' balance, and if the balance becomes

negative, then those Subclass Members will receive cash rebates in addition to the payments paid

out from the Settlement Fund of $100,000. (Pl.'s Mem. at 4). During the Fairness Hearing,

---

[10] During the course of settlement negotiations, plaintiff learned that defendant Eltman was winding down its operations. (Plaintiff's Memorandum in Support of the Motion to Certify Class ("Pl.'s Mem."), ECF No. 151-5, filed August 16, 2019, at 4). Since it has no remaining assets, and will not be contributing anything of value toward the Settlement, Eltman is not included as a party to the Settlement Agreement. (Id. at 4-5).

[11] The Subclass is defined in paragraph 9 of the Settlement Agreement; all members of the Subclass are also members of the Class. (See Sett. Agr. ¶ 9; Pl.'s Mem. at 6).

[12] Citations to "Defs' 4/6/2020 Ltr." refer to defendants' April 6, 2020 consent letter to the Court, ECF No. 157. The letter informed the Court that the claims administrator had identified 40 duplicative accounts among the original list of Subclass members, and so had determined that there are 392 Subclass members, not 432 as plaintiff had originally indicated. (Id.) As a result, each Subclass member will receive a benefit of $812.50. (Id.)

Class Counsel represented that Subclass Members would be receiving approximately $142,000 in cash refunds.

In addition to the amounts to be provided to the Class Members and the Subclass Members, the Settlement Agreement provides for a service award to plaintiff Vasquez in the amount of $15,000.  (Id. at 10).  Plaintiff also seeks an award of attorneys' fees of $200,000. (Pl.'s Final Mem.[13] at 14).  Neither the service award to Ms. Vasquez, nor the costs of notice, distribution, and payment of the Settlement Administrator's fees, will be deducted from the Fund.  (Id. at 4, 10).  Similarly, any award of fees for Class Counsel will not be deducted from the amount to be set aside for the Fund.  (Id. at 4, 12).  The Agreement also contains a provision for a *cy pres* award to be given to the National Consumer Law Center should any class members leave their checks uncashed; there will be no reversion to the defendants.  (Id. at 12).

In the Preliminary Approval Order, the Court approved the following schedule:  1) within 30 days of an Order of Preliminary Approval of the Settlement, defendants would provide to the Claims Administrator a final list of Class Members; 2) within 30 days of receiving the final list, the Administrator would mail by U.S. mail the written Notice to Class Members (attached as Exhibit A to the Settlement Agreement), along with a Claim Form; 3) Class Members would then have 90 days from the date of the Preliminary Approval Order to submit a written request for exclusion from the Settlement or to file a written objection with the Court; 4) any objections would be forwarded by Class Counsel to counsel for the settling defendants; 5) a final fairness hearing will be held and if approved, the Court would issue a Final Approval Order.  (10/15/19

---

[13] Citations to "Pl.'s Final Mem." refer to plaintiff's Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Attorney Fees, and Class Representative Award, ECF No. 156, dated March 27, 2020.

Order at 4; Sett. Agr. ¶¶ 19, 20, 27, 31).  On December 13, 2019, in compliance with the

Preliminary Approval Order, the Claims Administrator, Heffler Claims Group, LLC ("Heffler")

mailed Notice to 7,938 Class Members.  (Heffler Decl.[14] ¶¶ 1, 6, 7).

       In granting preliminary approval of the Class Settlement, this Court set forth in its

October 15, 2019 Order a detailed analysis of the legal standards under Rule 23 of the Federal

Rules of Civil Procedure and the application of those standards to the facts and circumstances

surrounding this Settlement.  With respect to class certification, the Court found that the

proposed Class met all of the requirements of Federal Rule of Civil Procedure 23(a) – namely,

numerosity, commonality, typicality, and adequacy of representation.  That analysis is

incorporated by reference herein and repeated only to the extent necessary to address issues

relating to Final Approval of the Settlement.

       For the reasons set forth below, the Court respectfully recommends that the proposed

Class Settlement be approved as fair, reasonable, and adequate under the applicable standards.

DISCUSSION

A.  <u>Approval of the Settlement</u>

       To grant approval of a class settlement under Rule 23(e), the Court must determine that

the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion."  <u>Joel</u>

<u>A. v. Giuliani</u>, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); <u>see</u> Fed. R. Civ. P. 23(e).

Judicial policy favors the settlement and compromise of class actions.  <u>Wal-Mart Stores, Inc. v.</u>

<u>Visa U.S.A. Inc.</u>, 396 F.3d 96, 116-17 (2d Cir. 2005); <u>see also</u> <u>In re Warfarin Sodium Antitrust</u>

---

[14] Citations to "Heffler Decl." refer to the Declaration of Michael Hamer, for Claims Administrator Heffler Claims Group, dated February 25, 2020, ECF No. 156-5.  Heffler determined that 62 of the 8,000 members were duplicative and so removed them from the notice list.  (<u>Id.</u> ¶ 6).

7

Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Whether a settlement is fair is a determination within the sound discretion of the court.  Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process.  First, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement.  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116.  Second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable[.]"  Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

1.  Analysis of Procedural Fairness

In determining whether to approve a settlement, the court must consider whether the settlement was procedurally fair – that is, whether the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests."  Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the district court must "determine a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013).  In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'"  Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

In its preliminary approval Order, the Court found that the proposed Settlement was entered into only after plaintiff's counsel had conducted a thorough investigation, and engaged in extensive negotiations and mediation with defendants.  (10/15/2019 Order at 15 (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, for the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery")).  This allowed counsel to thoroughly assess the challenges associated with prosecuting the case through trial, post-trial motions and appeals.  (Id.)

Based on these factors, the Court respectfully recommends a finding that the process of reaching this proposed Settlement was procedurally fair.  (See id.)

2. Analysis of Substantive Fairness

As set forth in its October 15, 2019 Order, the Court must also determine if the Settlement is substantively fair.  In the Order granting preliminary approval of the Settlement, this Court evaluated the nine factors set out by the Second Circuit in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)).  (See 10/15/19 Order at 15 et seq.).  These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation[.]

9

City of Detroit v. Grinnell Corp., 495 F.2d at 463; see also D'Amato v. Deutsche Bank, 236 F.3d at 86; Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

(a)   Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, in the October 15, 2019 Order, this Court found "it is clear that with approximately 8,000 Class Members . . . trial in the case would be complex." (10/15/19 Order at 15 (citing Romero v. La Revise Assocs., L.L.C., 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014); Garland v. Cohen & Krassner, No. 08 CV 4626, 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) ("Given the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense")).  The Court noted that the parties sought to avoid significant expense and delay that would result from continuing the litigation.  (Id.)

Given that this factor has not changed since the Court's July Order, the Court respectfully recommends a finding that the first Grinnell factor of avoiding potential protracted litigation continues to favor settlement of this matter.

(b)   Reaction of Class to Settlement

The second Grinnell factor – the reaction of the Class – could not be evaluated at the time of the preliminary approval stage, but since then, the reaction has been positive.  No class members have objected to or opted out of the Settlement, which weighs in favor of approval. (Pl.'s Final Mem. at 9-10).  See Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 432-33 (S.D.N.Y. 2014) (holding that the fact that "the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate") (quoting Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008)); see also Sewell

10

v. Bovis Lend Lease, Inc., No. 09 CV 6548, 2012 WL 1320124, at *7 (S.D.N.Y. Apr. 16, 2012)

(stating that "[t]he fact that the overwhelming majority of class members have neither objected

nor opted out weighs in favor of settlement approval")).

The Court therefore respectfully recommends a finding that the positive response of the

Class Members to the Settlement weighs in favor of final settlement approval.

(c) The Stage of the Proceedings and Amount of Discovery Completed

This factor also appears to not have changed significantly since the Court preliminarily

approved the Settlement.  This Court previously found that the parties had adequately evaluated

the merits of the case and had participated in an all-day mediation.  (10/15/19 Order at 16).

Given the extensive review conducted in this case and given the Court's experience in

supervising this litigation and assisting in the settlement process, the Court respectfully

recommends a finding that this factor continues to favor final approval of the proposed

Settlement.

(d) Establishing Liability and Damages

The Court previously examined plaintiff's risk of establishing liability and maintaining

class certification through trial, and found that the risks of establishing liability and damages

weighed in favor of settlement.  (Id. at 17)  Defendants have not admitted or conceded fault,

liability, or wrongdoing, and the Court noted that the defendants "have been well represented by

highly competent counsel who would likely pursue all potential defenses and raise multiple

issues in the course of the litigation, making the outcome of plaintiffs' claims uncertain."  (Id.)

Accordingly, the proposed Settlement seeks to eliminate these risks.  Given that this factor has

not changed since the Court's October Order, the Court respectfully recommends a finding that

the risks of establishing liability favor settlement.

11

(e)   Maintaining the Class Through Trial

In its prior Order, this Court noted that the plaintiff faces a risk associated with obtaining

and maintaining class certification through trial, and that if plaintiff were to move for class

certification, defendants would likely oppose the motion and move for decertification.  (Id. at

17).  The Court also noted that this process would entail extensive briefing by both parties, and

thus additional risk, expense, and delay.  (Id.)  Given that this factor has not changed since the

Court's October Order, the Court respectfully recommends a finding that the risks of maintaining

the class favor settlement.

(f)   Ability of Defendant to Withstand a Greater Judgment

Plaintiff argues that this is a "significant factor in determining the fairness of the

settlement," as defendant Eltman has already gone out of business, and there is no guarantee that

LVNV, one of the largest debt-buyers in the country, will survive the coming recession.  (Pl.'s

Final Mem. at 12).  Plaintiff argues that there is greater urgency now for finalizing this

Settlement given the current pandemic-driven economic turmoil.  (Id.)

The Court agrees.  Even if the defendants could withstand a greater judgment, a

defendant's ability to withstand a greater judgment does not necessarily detract from the

approval of a settlement.  See, e.g., Berni v. Barilla G. e R. Fratelli, S.p.A., 332 F.R.D. 14, 32

(E.D.N.Y. 2019).  In this case, the Court respectfully recommends a finding that, as that ability

of the defendants to withstand a greater judgement is increasingly unknown, this factor favor

settlement.

12

(g)   Range of Reasonableness of Settlement Fund

The Court previously found that the total award in this case was fair and reasonable.  (Id. at 18).  The Settlement Agreement states that defendants will pay $100,000 toward the Class and provide $318,500 in debt forgiveness.  (Pl.'s Mem. at 3-4).  In its October 15, 2019 Order, the Court noted that "[a]lthough plaintiff acknowledges that it is possible that they could recover a greater amount at trial, plaintiff also recognizes the inherent risks of trial."  (10/15/19 Order at 18).  Plaintiff's counsel contended that based on their calculations, the Settlement represents 84% of the Class' statutory damages.  (Id.)  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).  When the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiffs' claims with respect to damages in particular, the agreement is reasonable.  See In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Even absent the risk of establishing damages at trial, the Court maintains that the value of the Settlement Fund justifies settling this case.  Under the Settlement Agreement, Class Members will each receive their proportionate share of the $100,000 settlement fund.  (Pl.'s Mem. at 10).  Even though the Class Members will not be receiving 100% of their statutory damages, the Court continues to find that the total award is fair and reasonable.  The Court thus respectfully recommends a finding that that the Settlement Remains fair and reasonable, considering all of the relevant factors.

13

On the basis of the foregoing discussion of the Grinnell factors, the Court respectfully recommends a finding that that the proposed settlement is fair and reasonable under the circumstances present in this case.

C.  Attorneys' Fees

Plaintiff's attorneys seek a separate award of $200,000 in attorneys' fees to Class Counsel, which will be paid separately from the Settlement award.  (Pl.'s Final Mem. at 14).  In considering the fee request in a common fund fee award, the Court considers the Goldberger factors:  1) counsel's time and effort in connection with the litigation; 2) the quality of the representation; 3) the complexity of the litigation; 4) the risks of litigation; 5) the relationship of the fee to the settlement; and 6) public policy concerns.  See United States v. City of New York, No. 07 CV 2067, 2016 WL 3417218, at *2 (E.D.N.Y. June 16, 2016) (citing Masters v. Wilhelmina Model Agency. Inc., 473 F.3d 423, 436 (2d Cir. 2007)).

Counsel represents that they have spent approximately 306 hours on this case, totaling fees of $125,855[15] in fees.  (See Bromberg Billing Worksheet;[16] Miller Billing Worksheet[17]).  Mr. Bromberg, who is based in New York City, requests a fee of $550 per hour, and Mr. Miller, based in St. Louis, Missouri, requests a fee of $350 per hour.  (Pl.'s Final Mem. at 24).  Counsel argues that these fees represent the prevailing rates for attorneys prosecuting complex consumer fraud cases in their respective markets.  (Id. at 24-25).  Class Counsel's requested fee thus

---

[15] Counsel's memorandum states that their total accrued fees equal $128,555.  (Pl.'s Final Mem. at 27).  However, the billing records show that Mr. Miller accrued $23,380 and Mr. Bromberg $102,475, which totals $125,855.  The Court assumes that the total fees listed in the memorandum is a typographical error, and bases its recommendation on the billing records provided.

[16] ECF No 156-2.

[17] ECF No. 156-4.

represents a multiplier of 1.59 above their lodestar.  Utilizing the percentage method, counsel's

requested fee is equivalent to 32% of the common fund of $633,500.  (Pl.'s Final Mem. at 18).[18]

In its October 15, 2019 Order, this Court found that class counsel "have performed

substantial work in this litigation, identifying, investigating, prosecuting, and settling the claims

on behalf of the affected individuals."  (10/15/19 Order at 19).  The Court has found counsel's

representation to be high-quality, as evidenced by their successful settlement result in this

complex and risky case.  Based on the percentage of the total value of the settlement – $633,500

– the Court finds that the $200,000 fee is reasonable in relationship to the settlement.  Finally,

awarding fees here would support the goals of the FDCPA.  As Class Counsel notes, "Congress

fostered enforcement of the FDCPA by enacting statutory damages and mandating that debt

collectors pay 'reasonable attorney's fees as determined by the court.'"  (Pl.'s Final Mem. at 15,

n. 20 (quoting 15 U.S.C. § 1692k(a)(3))).

Given the above analysis of all the relevant factors, the Court respectfully recommends

awarding Class Counsel the attorneys' fee requested as part of the Settlement.

D.  Approval of Service Award for Plaintiffs

Plaintiff seeks approval of an incentive award of $15,000 to Named Plaintiff Vazquez.

(Pl.'s Mem. at 10).  Defendants do not object to that request.  (Pl.'s Final Mem. at 13).  An

"incentive" or "service" award is common in class actions and serves to compensate plaintiffs for

their time and effort in the pursuit of litigating the claim.  See In re Nissan

---

[18] Counsel has also accrued $2,145.53 in costs to pay for filing fees, postage, mediation costs, and attorney travel to the mediation.  (Pl.'s Final Mem. at 27; Bromberg Billing Worksheet at 7-8; Miller Billing Worksheet at 7).  Counsel does not seek separate reimbursement for these costs, but rather includes these costs in the $200,000 overall requested fee.

15

Radiator/Transmission Cooler Litig., 2013 WL 4080946, at *15; Capsolas v. Pasta Res. Inc.,

2012 WL 4760910, at *9.  The general "guiding standard" is, broadly, "the existence of special

circumstances including the personal risk (if any) incurred by the plaintiff[] in becoming and

continuing as a litigant . . . [or] any other burdens sustained by that plaintiff in lending himself or

herself to the prosecution of the claim, and, of course, the ultimate recovery."  Gay v. Tri-Wire

Eng'g Solutions, Inc., No. 12 CV 2231, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014)

(quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

Courts often grant named plaintiffs in class action cases an enhanced award, either in the

form of a flat fee or a multiplied amount of their share of the settlement fund.  Compare Capsolas

v. Pasta Res. Inc., 2012 WL 4760910, at *10 (awarding a service award of $20,000 to one

Named Plaintiff and $10,000 for the remaining named plaintiffs), with Velez v. Majik Cleaning

Serv., Inc., No. 03 Civ. 8698, 2007 WL 7232783, at *7 (June 25, 2007) (awarding named

plaintiffs "twice the amount of the award that other class members will receive").

In seeking a Service Award of $15,000 for the Named Plaintiff, plaintiff's counsel

explains that the award is "compensation for her damages and as an incentive award in

recognition of her services as Class representative."  (Sett. Agr. ¶ 10(c); Pl.'s Mem. at 10).[19]

Class Counsel elaborates that Ms. Vasquez has been "a model class representative," as

demonstrated by her active involvement in this case, including attending a settlement conference

and "following up with counsel to assure that they were actively prosecuting the case."  (Pl.'s

Final Mem. at 13).

---

[19] Defendants do not object to the Service Award.  (Sett. Agr. ¶ 10(c)).

The Court believes this service award to be fair and reasonable compensation for Ms. Vasquez' efforts in this litigation, and respectfully recommends approval of the service award.

CONCLUSION

Having considered the parties' submissions and presentations during the Fairness Hearing, and having considered the Class' positive reaction to the proposed Settlement, the Court respectfully recommends granting final approval of the Settlement Agreement, and granting final approval of Class Counsel's attorneys' fees.  The Court further respectfully recommends granting the parties' request to give the claims administrator 60 days to mail the settlement checks, in light of the difficulties presented by the current COVID-19 pandemic crisis.  The Court respectfully recommends that the parties be given 30 days after final entry of judgment to file a stipulation of dismissal.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
April 21, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York

18